UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

THE DRAGONWOOD CONSERVANCY, INC.,
f/k/a/ The Cullen Vivarium Wildlife Conservancy
  A Florida 501c3 Corporation
  28035 Hosea Lane,  Eustis, FL  32736
RA:  Jane Flint, 10335 W. Oklahoma Ave.,
West Allis, WI  53227                                   **COMPLAINT**

                                                         *CASE NO:*

PLEGUAR CORPORATION,
A Domestic Corporation whose registered agent and address is
Jane Flint,
5714 W. Vliet St.,
Milwaukee, WI  53208


TERRY CULLEN
3443 S. 17th St.
Milwaukee, WI

                                                    Plaintiffs,

vs.


PAUL FELICIAN∗
PHIL SIMMERT II∗
c/o Police Administration
749 W. State St.
Milwaukee, WI  53233


JANE AND JOHN DOE(S)∗
[addresses unknown]


*∗Individually and In Their Respective Official Capacities,*


CITY OF MILWAUKEE
A Wisconsin Municipality
c/o City Clerk
200 E. Wells Street, Room 205,
Milwaukee, WI 53202

1

And

**ABC INSURANCE COMPANY**
An unidentified insurance company
[Address unknown]

Defendants

_____

COMPLAINT

_____


NOW COME THE PLAINTIFFS –AND EACH OF THEM– BY

UNDERSIGNED COUNSEL, as and for their respective Complaints against the

Defendants, and each of them, allege as follows upon information and belief:


## I. NATURE OF ACTION

101.  Plaintiffs bring this action for damages caused by the violation of

their civil (constitutional) rights per 42 U.S.C. §1983, against the Defendants,

and each of them;  Plaintiffs now allege:

A.    widespread, unconstitutional damage and destruction to their four

buildings and personal property contained therein, committed by Defendants

during and/or after the execution of *search warrants* thereupon; and

thereafter,

B.      unconstitutional seizures and permanent deprivations without due

process nor reasonable compensation, of a *world-class* reptile inventory,

under circumstances reflecting Defendants' utter incompetence and reckless

disregard for the Plaintiffs' rights and interests under a specialized area of

law.

C.      damages exceeding $4.425 million dollars, caused or contributed

to by the Defendants' unconstitutional searches, seizures, permanent

deprivations, and other actionable conduct as alleged herein.

D.      Plaintiffs specifically allege the police conduct violated Plaintiffs'

rights under (the Fourth, Fifth, and/or Fourteenth Amendments to the United

States Constitution and) Federal Civil Rights Statutes.

102.   The individual Defendants, as more particularly alleged herein,

include supervisory-level officers Phil Simmert II and Paul Felican.

103.   Presently unidentified defendants identified as Jane(s) and/or

John(s) Doe(s) are adult residents of the State of Wisconsin who are proper

and/or necessary parties hereto; and may include non-law-enforcement

personnel; and/or may include City of Milwaukee Police Department officers,

employees, or other such persons including local housing and zoning officers,

local animal welfare (apparent) agent(s), and any others having caused damage to Plaintiffs.

104.   The City of Milwaukee is named as a direct-liability Defendant, and as an indemnification Defendant.

## II. JURISDICTION AND VENUE

### A.   JURISDICTION:

201.   This court has jurisdiction over this action pursuant to 28 U.S.C §1343(a)(3) and 28 U.S.C. §14141 -- *e.g.,*  42 U.S.C.§1983 jurisdiction.

### B.   VENUE:

202.   The United States Federal Court for the Eastern District of Wisconsin is the proper venue for this action, because Plaintiffs' claims arose within the geographical boundaries thereof, within the meaning of 28 U.S.C.§1391(b).

## III. PARTIES

### A.   PLAINTIFFS:

301.   The Plaintiff **Terry Cullen** ("Cullen") is an adult resident of the State of  Wisconsin who at all times material hereto, resides at 3443 S. 17th

Street, Milwaukee, WI; who has the capacity to sue and be sued; and that he

owned personal property damaged and/or destroyed as alleged herein; and

owned

the real property located with the City of Milwaukee, Wisconsin.

<u>3443 South 17th St.</u>  ("17th Street");

<u>3401 South 16th Street</u> ("16th Street");

<u>3448 South Kinnickinnic Avenue</u> and connected
          2308-10 E. Malvern Place ("South KK");


302.  Plaintiff **Pleguar Corporation** ("Pleguar") is a Wisconsin

corporation whose principal office is located at 2323 South 13th St.,

Milwaukee, WI 53215; and whose registered agent and address for service

of process is Jane Flint, 5714 W. Vliet St., Milwaukee, WI 53208 ("Flint");

and that Plaintiff Cullen is the majority shareholder thereof;

303.  At all times mentioned herein, Pleguar owned the real property

(and items of personal property) located at <u>2319-2323 South 13th Street</u>,

Milwaukee, Wisconsin ("South 13th St."); Pleguar is in the event-staffing

business and it holds a private detective agency license.

304.  Plaintiff **THE DRAGONWOOD CONSERVANCY, INC.,**

("Dragonwood") is a Florida not-for-profit ["501c3"] corporation and is

formerly known as The Cullen Vivarium Wildlife Conservancy; whose

business address is 28035 Hosea Lane, Eustis, FL 32736; and whose Wisconsin registered agent and address for service of process is: c/o Jane Flint, 10335 W. Oklahoma Ave., Ste. 205, West Allis, WI 53227; and as alleged herein, Dragonwood owned certain real property and personal property (including reptiles and other living creatures), which were damaged, destroyed, and/or permanently seized by Defendants; and that Plaintiff Cullen is the principal director thereof.

B.     DEFENDANTS:

305.  Defendant Paul Felician is an adult resident of the State of Wisconsin, whose personal address is unknown; however his business address for service of process is c/o Police Administration, 749 W. State St., Milwaukee, WI 53233; and who at all times mentioned herein, was employed by and/or was an agent or apparent agent of, the City of Milwaukee Police Department, acting within his scope of employment and under the color of law; and has the capacity to sue and be sued; and that based upon the allegations herein he is a necessary and proper party hereto.

306.  Defendant Phil Simmert II is an adult resident of the State of Wisconsin, whose personal address is unknown; however his business address for service of process is c/o Police Administration, 749 W. State St.,

Milwaukee, WI 53233 and who at all times mentioned herein, was employed by and/or was an agent or apparent agent of, the City of Milwaukee Police Department, acting within his scope of employment and under the color of law; and has the capacity to sue and be sued; and that based upon the allegations herein he is a necessary and proper party hereto.

307.   Defendants Jane(s) and/or John Doe(s) are presently unidentified adult residents of the State of Wisconsin having the capacity to sue and be sued; whose addresses and occupations are likewise presently unidentified; and who at all times mentioned herein, were acting: (1) individually; (2) under the direction, control, and supervision of the named–Defendants; (3) as an agent or apparent agent of (and/or under the direct control and supervision of), the City of Milwaukee and/or its Police Department or another governmental unit or agency; (4) within the scope of his or her employment; and/or (5)  under the color of law; and that –based upon the allegations herein–  he, she, it, and/or they are a necessary and proper party/parties hereto.

308.   The Defendant City of Milwaukee is a Wisconsin municipality and unit of local government, whose agent and address for service of process is c/o City Clerk, 200 E. Wells Street, Room 205, Milwaukee, WI 53202; and has the capacity to sue and be sued in this Court; and is directly liable to

7

Plaintiffs –and each of them– for the damages caused by its unconstitutional policy, practice, and/or custom alleged herein below; and is otherwise obligated to defend this action against the Defendants and to satisfy any judgment entered against any or all of them, by virtue of sec. 895.46, Stats.; and that based upon the allegations herein it is a necessary and proper party hereto.

309. Defendant ABC INSURANCE COMPANY is an unidentified insurance company who would provide defense and indemnification (insurance coverage) for persons or entities for part or all of the Plaintiffs' claimed damages herein and/or who is otherwise a necessary and/or proper party herein.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. At all times mentioned herein: Plaintiff Cullen has been and is a self-employed conservationist, herpetological researcher, and reptilian specialist working and coordinating with zoos, federal wildlife agencies, humane organizations, and international conservation groups to rehabilitate, breed, and conserve amphibians and reptiles (such as crocodiles, alligators and snakes); and is considered among the top herpetologists and conservationists in the field, including being a senior member of the "*IUCN*

*SSC Crocodile Specialist Group"*, a prestigious international conservation
organization.

402. As one function of his many specialties, Plaintiff Cullen
undertakes "rescue" or "conservation" operations for reptiles and amphibians
whereby he accepts critically ill, diseased, or injured reptiles and amphibians
and nurses them back to good health; and that Cullen had such an operation
in progress (and temporarily located) at Plaintiffs' South 13th and South 17th
Street addresses at all times relevant hereto (which would explain any
appearance of "neglect" regarding any reptiles and/or amphibians on-site as
reported by Defendants to the judicial and prosecutorial arms of the State of
Wisconsin), as alleged herein below.

403. At all times mentioned herein, Jane Flint was Cullen's friend,
employee, and tenant who resided at the South 13th Street property.

404. In early May of 2010 a person (purporting to be Detective
Simmert) contacted both Flint and Cullen by telephone and made general
inquiries of each of them, including where they lived, what they did, who they
worked for, and the like; in one conversation Flint confirmed for Simmert,
that she was "taking care of the dogs" at the 13th Street residence; in another
phone conversation, Flint confirmed that she was an employee of Cullen's,
and also verified that she lived at the 13th Street residence.

9

405.  In a separate phone conversation with Plaintiff Cullen, Simmert was advised that Cullen was out of state at the time (for a couple of weeks); and that Simmert did not undertake any reasonable investigations or inquiries designed to confirm Plaintiffs' legal authority to possess a "Chinese Alligator" and/or the other creatures, whether endangered or not; nor did Simmert undertake any other reasonably-expected investigation into the legality and licensing of Plaintiffs' operations.

406.  Instead, on or about May 12th, 13th, and 15th, 2010, Defendant Simmert applied for several *Search Warrants* relating to Plaintiffs' properties; and that, on the same day (respectively), a Milwaukee County Circuit Court Commissioner granted Simmert's applications and issued (three) *Search Warrants* authorizing police entry, search, and seizures relative to Plaintiffs' property (as alleged herein).

407.  The (three) *Search Warrants* contained identical language identifying the specific "**objects of the search**", as being:

> "Reptiles including but not exclusive of Chinese Alligators or Chinese Crocodiles.
>  Python or Anaconda snakes.
>  Spiders and Turtles.
>  Items commonly associated with the breeding, transport, and care of the above listed animals.  This would include items like heat lamps, cages, and warming rocks.
>  Other endangered or threatened species not included in this list"

"which thing(s) (were used in the commission) or (may constitute evidence) of a crime, to wit:

DESCRIBE CRIME OR CRIMES:
"(1) Endangered and threatened species protected. Committed in violation of sections 29.604 of the Wisconsin Statutes, respectively." (Underline original).


408. Plaintiffs' possession of said "Chinese Alligator" was not illegal under either Federal and/or Wisconsin Law.

409. Nonetheless, Defendants Simmert and Felician forged ahead with the search warrants they obtained −in reckless disregard and deliberate indifference to the law and Plaintiffs' rights and interests; and Simmert and Felician each became responsible for the planning and giving of assignments for the execution of the search warrants; and/or were personally involved with −and personally supervised− the physical searches of the Plaintiffs' properties, the seizures of Plaintiffs' property therefrom, the damage and destruction committed therein, and the permanent deprivation of Plaintiffs' property, as alleged herein.

410. On May 12, 2010, at 1:34pm, Defendants Simmert and/or Felician planned and executed the search at 2323 S. 13th Street, along with MPD Officer Jamie Hewitt, Tactical Officers Kenneth Daugherty and Andrew

Moutry from the Tactical Enforcement Unit; and Conservation Warden Blankenheim.

411. Shortly before executing the search warrant at the 13th Street property, Simmert phoned an employee of Mr. Cullen's to advise that the police were going to execute a warrant at 13th Street; and that the employee then immediately called Flint to pass-on the message and relay Simmert's phone number.

412. Flint immediately called Simmert and told him she would immediately leave work and come there promptly (*e.g.*, she could arrive within approximately ten to fifteen minutes) and asked Simmert to please wait so that she could confine the dogs or have a friend pick them up so the dogs would not be present during the search.

413. Flint then called a friend and asked him to head to South 13th Street immediately (in case he could get there before her) and he agreed and departed therefor.

414. At the time of Defendants' execution of the first search warrant at the South 13th Street residence, the Defendants knew (or should have known) that the Plaintiffs' properties would not be occupied upon the execution of search warrants (however dogs would be present at South 13th Street).

415.  Upon arrival at 13th Street for the execution of the search warrant, the Defendants still had no reasonable plan to contain, capture, or subdue the dogs in the property.

416.  Once on-scene, the Defendants called the Milwaukee Area Domestic Animal Control Council ("MADACC") to request its response to the scene, so its officers could control the dogs;  and multiple MADACC officers arrived within approximately ten to fifteen minutes of the original call.

417.  Defendants did not wait for MADACC's arrival and forced-entry into the 13th Street premises via its north door, *to wit*:  MPD Tactical Officer Moutry (and/or others) ripped the door out of its framing  and broke-into the house;

418.   Prior to executing the search warrants at 13th Street, the Defendants had the luxuries of:  (1) advance knowledge that dogs would be present but nobody else was expected to be home; (2) abundant time to plan for that dynamic including having Flint meet at the property or having animal control present to control the dogs; and (3) no exigency, reasonable apprehension of danger, or threat of evidence destruction all as alleged herein; accordingly the warrants were not requested –nor issued– as "no knock" warrants and were properly categorized as "low risk" threat level

(*e.g.*, the subjects were <u>not</u> believed armed and did <u>not</u> pose a threat to law enforcement officers, amongst others);

419.  The Defendants (selectively) videotaped their entry into the 13th Street property; the videotape reflects that, upon police-entry, the dogs were barking in another room, but did not approach the officers in an aggressive or threatening manner and were actually wagging tails; however the videotape then abruptly stops – because the operator turned it off.

420.  Thereafter -off camera-  an MPD tactical opened-fire on two of the larger dogs (at near point-blank range, approximately 11 shots total) with his department-issued assault rifle; and then radioed that "two dogs were down"; and the two dogs "bled-out" on the kitchen floor (throughout the kitchen and into dining room/flooring).

421.  After the dogs were shot to death the video operator turned the video recorder back "on" – on and the dogs were then seen dead on the floor, lying in their own blood; the bodies of the dead dogs had been staged to appear as though the dogs had attacked the entry team – whereas the dogs were actually in a retreating position when shot according to an FBI-crime scene reconstructionist who has concluded that the dogs were shot while retreating.

Case 2:16-cv-00534-NJ   Filed 05/03/16   Page 14 of 45   Document 1

422. No Milwaukee Police Department Officer created a (contemporaneous account per a) "use of force" report after having discharged a firearm multiple times and having killed the dogs, which was a required report under MPD protocol; and in fact the MPD originally denied killing the dogs; and it was not until many months later after demand and discovery, that one was created.

423. Also on May 12, 2010, after executing the warrant at 13th Street, the same Defendants, executed the search warrant at the 17th Street property.

424. During the searches of the 13th Street and 17th Street properties, the Defendants (and/or other agents/apparent agents of Defendants including those under their direction and control) seized Plaintiffs' **entire reptile inventory** which was "world class" and numbered into the hundreds – including reptiles and animals which were clearly <u>not</u> illegal – such as the generically-described "snakes", "turtles" , "reptiles", "python", "anaconda", and "items for care" and "transportation";

425. Attached hereto and incorporated by reference herein, is a *representative* LIST of the inventory seized (this list apparently having been compiled by MADACC post–seizure; which is not wholly accurate, but merely representative of nature and scope of the seizures).

426.  The seized inventory included animals, reptiles, and amphibians, which were clearly not illegal, nor were they evidence of criminal wrongdoing nor contraband, *to wit:* "spiders", "turtles", "crocodiles" and others; and the unconstitutional seizure and deprivation included otherwise-perfectly legal equipment necessary to care therefor; and that Plaintiffs were permanently deprived of their possession and ownership thereof; and that Plaintiffs owned many of these creatures for over twenty five years;  and that, after their seizures and deprivation, many of them died due to rough handling, improper capture, substantially inadequate and/or inappropriate care;

427.  On or about May 21, 2010, a (fourth) *Search Warrant* was issued by a Milwaukee County Circuit Court Commissioner, to enter, search and seize the "skeletal remains" of a crocodile, which was located within the 2323 South 13th Street premises, which purportedly constituted evidence of the crime of "*mistreatment of animals*" in violation of sec. 951.02, Stats.; the underlying application was by MPD Officer Ivan Wick.

428.  The Defendants further justified their seizures of various crocodiles, reptiles, and/or amphibians, by reporting that they were in horrible condition, neglected, and without food; however, the subject crocodiles, reptiles and/or amphibians seized from Plaintiffs were in good

condition after having been originally received poor condition and/or having been nursed back to health per the rescue/conservation operations.

429.  After the seizure of their inventory, the Plaintiffs attempted to assert their objections thereto and to regain possession of the creatures, in a variety of ways both on the record and off; even having offered Defendants and others, several different "neutral" parties to hold and competently care for the creatures during pendency of litigation – which offer was rejected and the creatures were instead held locally by persons and facilities (lacking competent care and knowledge in many regards); and that many of the creatures died from neglectful and perhaps even abusive "care" provided by Defendant's local caretakers; and that Plaintiffs were misled and lied to at times by Defendants and/or other authorities  which prevented Defendants from meaningfully exercising their due process rights seeking the return of the inventory, amongst others; all of which resulted in Plaintiffs being permanently deprived of the creatures, in an unconstitutional manner.

430.  As yet another example of Defendants' utter incompetence and reckless disregard for the Plaintiffs' rights and interests at the time (and after) the warrants were executed --  the Defendants immediately euthanized four "pouch rats" at the 13th Street residence because of their visibly apparent poor condition (*e.g.*, balding, frail, no food); where in fact

those "pouch rats" had effectively *doubled the world record* for longevity (which was a bit over 7 years old) whereas each of the pouch rats were over <u>fourteen</u> years old; thereby, and figuratively speaking, they were the equivalent of a foursome of 200 year old persons; and –as to the "lack of food" reported by Defendants – it was intentional and was required care, because food left standing will develop mold which will kill these delicate creatures.

431. However because the Defendants very seriously misunderstood these wonderfully *ancient* creatures (and failed to undertake even the most basic investigation as to their care) they were summarily killed.

432. As another example of Defendants' bias and incompetency, the crocodile skeleton which was the subject of the (fourth) search warrant for South 13th Street, was an intentional "skeletonization" via *dermestid* beetles for a high school biology teacher – which Defendants apparently mistook as evidence of criminal mistreatment of an animal.

433. Defendants also unconstitutionally seized (and permanently deprived) Plaintiffs' **other personal property** which was clearly <u>not illegal</u> nor contraband nor evidence of criminal activity; and/or which was clearly outside the scope of the warrants – including guns, papers, computers, tools, currency, jewelry, and cash.

18

434. The searches and seizures, the destruction and damages, and the permanent deprivation of property, were undertaken by Defendants, and each of them, in violation of the Plaintiff(s)' clearly established constitutional rights and under the color of law.

435. Defendants' actions and inactions as alleged herein, reflect *base incompetency* as to the relevant law and their willful and wanton lack of respect for Plaintiffs' rights, *to wit*:

A.   Plaintiffs were <u>legally entitled to posses</u> the subject "Chinese Alligator" and the other reptiles and creatures in their properties (along with the items of personal property necessary for their care and transportation).

B.   Defendants made no reasonable efforts to comprehend (1) the specialty law and licensing involved; nor (2) the nature of Plaintiffs' "rescue" and "conservation" operations;  all Plaintiffs needed was an opportunity to explain to the Defendants, that the licensing and permit status would easily be confirmed by the Chief of Permits, Officer of Management Authority, Fish & Wildlife Service (US Department of Interior), amongst others.

C.   Instead Defendants deliberately and recklessly rushed to conclusions and took actions that were patently unfair and which violated Plaintiffs' clearly established constitutional rights including their rights to due

process, and freedom from unreasonable searches, seizures and permanent deprivations; amongst others.

D.    The Defendants' applications for Search Warrants to the court commissioner misrepresented with deliberate and reckless indifference, that the "objects" of the search were illegal – where they were *clearly not illegal, not evidence of criminal activity, not contraband*; and not of a size/manner *subject to secretion or ease of destruction*; including the referenced: snakes (python, anaconda), alligators, crocodiles, spiders, turtles, and the "items commonly associated therewith" like cages, warming lamps, and equipment.

E.    That Defendants therefore unconstitutionally seized, damaged, destroyed, and/or permanently denied Plaintiffs of their property in this respect, in clear violation of the U.S. Constitution and federal laws, amongst others; all of which caused Plaintiffs monumental damages alleged herein.

436.   The Defendants positioned themselves to be in *exclusive control* of the subject four properties upon the execution of the respective search warrants (and thereafter); and forbid entry by –and actively excluded– Plaintiffs and/or their representatives for a period of weeks and/or months; in violation of the Plaintiff(s)' clearly established constitutional rights; and thus Defendants were the only ones who knew what was occurring during and after their searches, seizures, and their *exclusive control*.

20

437.  Additionally, Defendants kept surveillance of the Plaintiffs'

properties immediately following the searches and seizures (and/or the

property damage and destruction) – for a period of weeks and/or months –

during which time Defendants (by their representatives/apparent agents)

would not let the Plaintiffs nor their representatives enter the properties –

even where entry and inspection had been formally pre-approved by the

parties' counsels (meaning the attorneys agreed to the entry and inspection,

but Defendants did not comply).

438.  "Coincidentally" – after the foregoing catastrophic damage was

inflicted– certain unknown persons forced-entry into Cullen's locked car

[accomplished without physical damage apparently by a professional

possessing the necessary equipment and know-how]; yet valuable tools and

property in plain view were not taken and left behind; and *the only item

stolen* was Cullen's "evidence bag" which contained photographs and

evidence Cullen was collecting in support Plaintiffs' claims herein; and that

the reasonable inference is that Defendants or their designees were the

perpetrators of the break-in and theft in order to interfere with Plaintiffs'

legal relief.

439.  Plaintiff's residence was also "coincidentally" burglarized after

the catastrophic damage to the properties – where:  forced-entry was used

to gain access; Cullen's office was ransacked; valuable property was left behind (like computers, TVs, electronics, tools, etc.); and the only items stolen were photographs, paperwork (and a digital recorder); and that the reasonable inference —again— is that Defendants or their designees were the perpetrators of the break-in and theft in order to interfere with Plaintiffs' legal relief.

440. Plaintiff Cullen, Ms. Flint, and other third-party witnesses were personally present in all the Plaintiffs' buildings prior to the execution(s) of the search warrants therein; and they observed the satisfactory condition of the premises and property – e.g., although somewhat cluttered and crowded, the residences were in proper and fully habitable condition; they were clean and sanitary; and they lacked the significant damage and destruction which suddenly existed upon Defendants' surrendering their exclusive control of the premises and Plaintiffs resuming possession thereof.

441. Furthermore, after having searched, seized, damaged and destroyed the Plaintiffs' personal and real property as alleged herein, the Defendants purportedly "secured" each of the four premises by screwing green "plywood" and/or "particle boards" over the doors and windows damaged by Defendants during (and/or after) their execution of the search warrants; however the particle-board-repairs left "gaps" which allowed

rodents and vermin to enter the residences and infest same; and/or

Defendants left various doors and/or windows open and unsecured, which

also caused infestations into the premises; and that accordingly, Defendants'

failure to secure the premises in a reasonable fashion caused independent

and significant, excessive and unreasonable damage to Plaintiffs' property

(both personal and real); which violated Plaintiffs' clearly established

constitutional rights.

442. Defendants also undertook other unconstitutional conduct as

alleged hereinbelow, in violation of Plaintiffs' clearly established

constitutional right, which caused Plaintiffs damages they now allege.

443. As the result of the significant property damage which occurred

during and/or after the warrant–searches, the DNS "placarded" the 13th

Street residence and declared it unfit for human habitation, and attempted to

have it condemned through legal process (which attempt was ultimately

unsuccessful); and during that process the Plaintiff(s) and others were

continued to be forbidden from entering the property, which continued to

unconstitutionally deprive Plaintiff(s) of (the use and enjoyment of) their

properties.

444. Defendants have intimidated potential witnesses (including fellow

officers and those from the Department of Neighborhood Services);

Defendants are expected to honor the customary *code of silence*; and Defendants and others have tampered with and manipulated evidence and witnesses in this case as alleged herein; which has unconstitutionally interfered with and affected the legal relief available to Plaintiff.

445. As a check-and-balance against Defendant's local authority and powers, the Plaintiffs alerted the United States Bureau of Federal Investigation (immediately after discovering the catastrophic damage caused by Defendants); and have kept it abreast of developments including the filing of this Complaint, to minimize any further "coincidences" attributable to the Defendants or their allies.

## V.  VIOLATIONS OF LAW

[Plaintiffs re-allege and incorporate by reference the foregoing allegations, as

though fully set forth herein].

501. The clearly-established constitutional rights of Plaintiffs' were violated by the Defendants' actions and inactions, and/or the actions and inactions of the Defendants' agents, apparent agents, and/or persons under their direct supervision and control (and each of them) as alleged herein.

502.  The methodology and the manner of the: application for search warrants; the issuance of search warrants; the subsequent execution of search warrants; the damage and destruction of property; and/or the (permanent) deprivation of Plaintiffs' property – pursuant to the warrants all as alleged herein – caused Plaintiffs damages under the law and facts.

503.  Defendants' actions and inactions occurred "under the color of law" (including custom, policy and/or practice); and proximately caused significant financial loss to Plaintiffs, and each of them; and all of which renders the Defendants, and each of them, liable to Plaintiffs, and each of them, for the damages alleged herein below

## A.    Fourth and Fourteenth Amendment:   Violations

### 1.    Excessive Property Damage & Seizures Beyond Scope of Warrant

504.  Defendants, and each of them, were active participants in the searches of the Plaintiffs' premises, and in the seizures of Plaintiffs' property including personal property beyond the scope of the warrant; and/or including items of personal property which were clearly not illegal, not contraband nor evidence of any criminal activity (*e.g.*, snakes, turtles, spiders, crocodiles, and their storage containers; and including Plaintiffs' papers, guns, tools and cash; and Cullen's passport, amongst others); and

were personally involved in the permanent and unconstitutional deprivation thereof.

505. Defendants (and/or other agents/apparent agents including others those under Defendants' direction and control) personally committed significant, excessive and/or unreasonable damage and destruction to Plaintiffs' property (both personal and real); and that the destruction and damage inflicted by Defendants was not "incidental" to the searches nor reasonably necessary to effectively execute the search warrant nor the performance of official duties.

506. Defendants, and each of them, failed to reasonably secure the premises after the execution of the search warrants, as alleged herein; which proximately caused Plaintiffs substantial infestations and damages.

507. The property damage inflicted upon the Plaintiffs' properties by Defendants (and/or persons under their direct supervision and control) are itemized on the attached LISTS; those damages are realleged herein by reference as though fully set forth.

508. Accordingly, Defendants, and each of them, have violated Plaintiffs' clearly established constitutional rights and are now liable for Plaintiffs' damages and monetary relief, as alleged herein.

## 2. Fraudulent Search Warrant & False Arrest

509. The applications for the subject search warrants were based upon Wisconsin Statute section 29.604 – which is civil in nature (absent an allegation of "intent" – which was not alleged in the application).

510. Section 29.604(6)(c), Stats., specifically excludes animals on the US Endangered Species List from the requirements of that statute – unless native to Wisconsin; and therefore –because a "Chinese alligator" is on said US Endangered Species List but not native to Wisconsin, *the Plaintiffs' possession thereof was not illegal under sec. 29.604, Stats.*, and/or was otherwise legal under the authority granted to Cullen by federal authorities (and/or was legal under federal law, as not possessed for use in interstate commerce).

511. Defendants' applications for the subject *Search Warrants* contained materially false statements of fact and/or omitted material facts, which included Defendants (mis)representation –under oath– that the "objects" of the searches were "endangered or threatened" species under Wisconsin Law, and/or that they were "used in the commission" or "may constitute evidence" of a **crime**, and/or "committed in violation of" sec. 29.604, Stats.; and/or that the applications fraudulently sought the authority

to seize Plaintiffs' property which was clearly not illegal, not evidence of a crime, and not contraband.

512. Defendants did not have probable cause to arrest Plaintiff Cullen for violation of 29.604, Stats., and did not have probable cause to seize the foregoing otherwise-legal items from Plaintiffs; and that Defendants falsely arrested Plaintiff Cullen for the crimes *alleged* in the search warrants/applications; all in violation of Plaintiffs' clearly established constitutional rights.

### 3.    Failure to Intervene

513. Defendants Simmert and/or Felician had actual knowledge of – and/or deliberate indifference to– the egregious and malicious property damage and destruction and violation of Plaintiffs' constitutional rights being committed during the execution of the search warrants (including that caused by subordinate law enforcement officers and/or others under Defendants' direction and control); and/or otherwise knew of and acquiesced therein (by "turning a blind eye" to) said property damage and destruction; and/or knew that Defendants John and/or Jane Doe(s) had a practice of exceeding their legal authority during and after the execution of search warrants (as alleged hereinabove); all being violations of Plaintiffs' clearly established constitutional rights.

514.   Therefore Defendants Simmert and Felician were each obligated –yet failed– to intervene and prevent others – including Jane(s) and John(s) Doe–

from engaging in clear violations of Plaintiff's' constitutional rights

515.   Said failure to intervene occurred under circumstances where (1) an objectively reasonable  officer would have understood that fellow officers' conduct violated Plaintiffs' clearly established constitutional rights, (2) said Defendants, and each of them, had a realistic opportunity to intervene and/or to protect such harm from occurring (3) Defendants failed to take reasonable steps to prevent said harm from occurring, which failure to act caused Plaintiffs to suffer harm (4) Defendants purposely ignored, condoned, acquiesced, and/or assisted the seizure, damage, and/or destruction of Plaintiffs' property (5)all under color of law.

## 4.   Supervisor Liability:

516.   As alleged herein, Defendants Simmert and/or Felician, and each of them, were the supervisors of other law enforcement officers during the execution of the subject search warrants; and each Defendant failed to properly supervise the execution of the search warrants, and aftermath including the securing of the premises after the search and seizures; all of which caused the Plaintiffs' damages as alleged herein.

517. The widespread and extensive property damage and destruction occurring during (and/or after) the execution of the search warrants was obvious, flagrant, extensive, consistent between premises, and of continued duration -- making it impossible for Defendants Felician and/or Simmert to have been unaware that such property damage was being conducted in violation of Plaintiffs' clearly established constitutional rights; and/or said Defendants had knowledge of their subordinate's behavior(s) violating Plaintiffs' clearly established constitutional rights and/or acquiesced therein, after the fact.

518. Defendants Simmert and /or Felician otherwise set in motion a series of events that each supervisor knew or reasonably should have known, would cause fellow officers to deprive the Plaintiffs of clearly established constitutional rights.

B. Fifth and Fourteenth Amendments: Violations – Deprivation of Property Without Due Process

519. Based upon the allegations contained herein the Defendants, and each of them, have likewise violated the clearly established constitutional rights of the Plaintiffs under the 5th and 14th Amendments to the U.S. Constitution as it relates to the deprivations and damages caused by

Defendants under color of law, in violation of their rights to due process and/or reasonable compensation.

## C.   Municipal Liability (42 USC 14141) and Indemnification – Wis. Stats. §895.46

520.   Plaintiffs' damages have been caused or contributed to, by Defendants' (City of Milwaukee's, Felician's, and/or Simmert's) policy, practice or custom whereby –*during and/or after the execution of search warrants* – such Defendants (1) seize personal property clearly beyond the scope of the search warrant and/or property, and/or property which is clearly not evidence of crime or contraband; and/or (2) unnecessarily and/or unreasonably destroy, damage, and/or *meaningfully interfere* with personal property of its citizenry (*including:* thoroughly and unnecessarily "trashing" the areas being searched; and illegally damaging personal property).

521.   Said policy, practice, or custom is further evidenced by: (1) Defendants' *modus operandi*; (2) the extent and similarity of the damages occurring between Plaintiffs' properties on different dates; (3) similar claims and complaints by third parties against the MPD and/or its officers and agents arising from the execution of search warrants; and/or (4) the damages

having occurred under the watch and supervision of high-ranking MPD officers vested with final decision-making authority and discretion.

522. The circumstances reflect that the Defendant City of Milwaukee has failed to properly train Defendants as to proper search warrant protocols, obligations, and/or limitations – and/or failed to adequately supervise and discipline its officers, agents, and/or apparent agents in that regard; and that such failure caused or contributed to the Plaintiffs' damages); therefore such failure to train also renders the City of Milwaukee directly liable to Plaintiffs under this Complaint.

523. Defendants City, Simmert, and/or Felician knew or reasonably should have known that it was highly predictable that the constitutional violations alleged herein would occur without further, adequate training, supervision, and/or discipline of its officers, agents, and/or apparent agents.

524. Defendants Felician and/or Simmert are considered *final decision makers* for the purposes of municipal liability and therefore, Defendant City of Milwaukee is liable for their unconstitutional actions.

525. Defendant City of Milwaukee is otherwise liable to defend this action against the Defendants, and to satisfy any judgment entered against them, by virtue of Wis. Stat.§895.46.

VI.    CAUSATION, DAMAGES  and EQUITY

601.   By virtue of unlawful actions/inactions alleged above, Defendants (and each of them) have caused Plaintiffs' damages and are now liable to the Plaintiffs –and each of them– for the financial losses and other damages they have caused, which shall be determined by the fact finder in an amount deemed as reasonable compensation for the following items of damages caused by Defendants:

602.   Plaintiff Cullen was falsely arrested and denied freedom; the reasonable value thereof for the purposes of compensation by money damages, is unknown at this time.

603.   Many persons (including Cullen) worked to repair the damage inflicted upon the Plaintiffs' properties – day after day, for several during the summer (mid–July and August) of 2010; and in some respects, continue to do so now (and will continue to do so into the future); for which Plaintiffs are entitled to a reasonable damage award estimated to be no less than *$150,000.00 (one hundred and fifty thousand dollars).*

604.   The Plaintiffs have suffered significant out of pocket expenses and liability for repairs and mitigation of damages; and many items of repair are still required (due to cost versus a lack of resources); and Plaintiffs

estimate their losses in this regard to exceed <u>$200,000.00 (two hundred thousand dollars)</u>;

605.  The "reptile inventory" illegally seized, taken, killed, and/or permanently denied Plaintiffs is reasonably valued at over <u>$2,000,000.00 (two million dollars)</u>.

606.  Plaintiffs have suffered damage to their respective incomes, profits, rental incomes, earning capacities, and/or reputations, in an amount to be set by the fact finder but in any event, no less than <u>$2,000,000.00 (two million dollars)</u>.

607.   The anticipated cost for electronic "repair" and restoration of Plaintiffs' professional reputations relative to the internet and/or social media monitoring and affirmative intervention, amongst others, is estimated to be <u>$75,000.00 (seventy five thousand dollars)</u>.

## VII.   PUNITIVE DAMAGES.

701.   The Defendants, and each of them, intentionally, maliciously, and/or recklessly disregarded the law, public trust, limitations of the search warrants, their official duties, and/or the Plaintiffs' constitutional rights; and Defendants intentionally caused unjustified and unreasonable damage and destruction to the Plaintiffs' property; and intentionally deprived Plaintiffs of

their property; all of which violated the Plaintiffs' clearly established, constitutional rights.

702. All of which entitles Plaintiffs (and each of them) to an award of punitive damages as provided by law, against Defendants, and each of them, to punish the offenders and to deter them and others similarly situated, from similar wrongful acts in the future.

## VIII.   CONDITIONS PRECEDENT

801. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## IX.    DEMAND FOR JURY TRIAL

901. The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## X.    STAUTORY ATTORNEYS FEES

1001. Plaintiffs are entitled to an award by federal law, for the costs of prosecuting this Complaint including all reasonable attorneys fees and costs related thereto (experts, investigators, paralegals, and the like).

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request money judgment in their favor, and against the Defendants, and each of them, for a reasonable amount of damages including:

1101.   Monetary damages in an amount that will fairly compensate Plaintiffs for their respective injuries in the minimum amount of $4,425,000.00 (four million, four hundred twenty five thousand dollars); plus

1102.   Punitive damages in amount that will justly punish the individual Defendants for their actions and deter others, provide by law;

1103.   The Plaintiffs' statutory costs, and a statutory award to Plaintiff for the reasonable attorneys' fees and litigation expenses (including expert witness fees),  and

104.  Any other additional relief –in law or equity– to which the Plaintiffs are entitled to under this or subsequent pleading.

Date:   May 3, 2016
By:
 /s/Attorney Mark P. Murphy
SBN 01017745
Attorney For Plaintiffs
657 S. 72nd Street
Milwaukee, WI 53214
414-453-5555
414-453-5520 fax
attorneymarkmurphy@sbcglobal.net

# SOUTH 13th Street

## EXTERIOR DAMAGES

*Entire front panel of the building (inside and outside) ripped out including 8x10 foot ornate plate glass window leaving giant hole in front of building (green-boarded);

*all exterior doors damaged/busted open: including heavy front wooden doors and ornamental wrought iron security door (primary entrance) entirely ripped out framing;

*custom dutch stone and brickwork busted up;

*alley door ripped out; rollup door badly damaged; commercial garage door in alley with interprone latches cut out with saw (even though it was unlocked via courtyard access)

*items thrown out upstairs door onto (and damaging) foam roof – requiring repair and recoating

## Courtyard/shed/garage

*garden-sitting area: plants, furniture, garden ripped apart,

*courtyard door: unlocked but still busted-up – leaded glass window damages and frame damaged; ornamental wrought iron security door damaged

*large commercial generator, new "in box" purposely damaged

*courtyard stairs up from basement literally ripped out;

*courtyard window busted out, door destroyed

Case 2:16-cv-00534-NJ   Filed 05/03/16   Page 37 of 45   Document 1

*personal property including jewelry/clothes, piled in courtyard; destroyed

*commercial shelving and "rodent racks" which were stored in garage, were put in courtyard and ruined by the elements


## INTERIOR DAMAGES

*entry room trashed:  sink, island cabinets and drawers badly damaged; virtually every room or other space in the house was entirely torn apart ("trashed")

*physical damage to floors – all interior hardwood floors ruined & redone; walls, gouged and knocked apart; walls smeared with unknown substance – "gunk"

*Vinyl tile kitchen floor ruined:  bullet holes & soaked with rotting blood from dogs, leading to mold under carpet

*heavy interior doors to kitchen and basement damaged; wrecked multiple interior doors

*marble counters scratched and separating

*knocked stove off base causing natural gas leak  at the supply pipe connection.

*dining room and most any areas of walls and ceilings:  re-plastered and repainted;  all carpeting in house was damaged by the search-raids, and replaced.

* two skylights – damaged and leaking

*dumped liquid/ solvents on floor in workroom and additional cans of chemicals (stored on-site by Plaintiffs) dumped including upstairs damage from (likely) tile-flooring epoxy;  all hardwood floors required extensive repairs including refinishing, plugging bullet holes;

* cover plates of light switches opened & damaged (wire and connections)

*custom curio cabinet glass smashed, leaded glass bookcase doors smashed & damaged; and items strewn


## WATER DAMAGE

*drainage plugs on the big tanks were pulled in the large "animal room" – instead of using available hoses to drain; literally thousands of gallons of water went out of tanks onto and through the floor, under/through walls (and crept up walls); water ran down the stairs and flooded basement; causing affected wall(s) to rot and buckle

*Broke pipe in radiator and caused water damage to floor and baseboards

*basement (back) door to courtyard was damaged and left open– led to rodent infestation/feces

*black mold creeping everywhere, seeping up through the floors into bedroom

*New washer/dryer in basement ruined; power tools stolen

*Floor drain intentionally plugged – with shards of steel and pieces of plumbing materials– causing a backup of (what became) putrid water, which took days to clear (drain)

*main storage room floor & walls ruined by water damage;  large floor-shelf destroyed

*Bathrooms damaged:  mount for toilet broken leading to rotting the floor and under floor, and dripped into basement; cracked seal around tub, piled items in tub; kicked in water heater

*Workroom:   totally trashed, items dumped; ceiling peeled from water rot, constant seepage; (hundreds of) Nicholsen files rusted; cans of solvent and paint dumped

*tremendous loss of personal items / soft goods (clothes, etc)

*Security cameras, wires, and hard drive badly damaged rendering devices inoperable

*personal property piled into piles several feet tall on both floors

*Aquariums holding rodents were smashed, power shut off to freezers x2 and contents ruined

# South 17th St.

## EXTERIOR DAMAGES

*brick porch busted up, cement caps knocked off brick;  additional areas of brickwork maliciously damaged

*foundation, stone sill, window framing (south side of building) smashed out; interior plaster & lathing destroyed

*entire side doorway ripped out of frame

*north side basement window (middle window) left open (rodent infestation)

## INTERIOR DAMAGES

*house was thoroughly trashed − mounds of stuff piled up

*linoleum on kitchen floor, hallway, and rear stairway ruined:  floor rotten & moldy

*walls/plaster gouged, busted and/or smeared:   requiring replaster

*interior doors broken/damaged

*chair jammed into toilet (apparent attempt to break toilet)

*sun room ceiling fixture pulled out, caused wiring to burn out which required new wiring to be run for entire circuit throughout house

*basement floor drain intentionally plugged ; basement work room destroyed − drawers dented − tools stolen − solvents dumped − battery operated tools and battery packs went bad due to moisture/water; mold everywhere

*basement window north side, left open (causing rodent infestation)

*solvent poured on floors (including next to furnace, creating explosion risk)

## <u>Anaconda room</u>

*dumped anaconda tank-water (hundreds of gallons)
*Urothane flooring – virtually new – ruined by the water
*Baby anacondas all killed
*Busted-out foundation and basement window

# 3348 South KK

## EXTERIOR DAMAGE

*brick porch busted up, cement caps knocked off

*front door:  beveled glass heritage wood door and frame, along with storm door badly damaged;  door framing busted out;

*Kitchen:   door:   damaged from forced entry; items strewn throughout house

*outer porch:  door frame smashed; window smashed

*garage doors busted open although unlocked


## INTERIOR DAMAGE

*linoleum kitchen floor ruined

*office:  computer taken files ransacked, office damaged

*cabinets ripped down, one still down

*bedroom – mirror shattered, mattress & box spring destroyed; dozens of CDs destroyed; warped doors, tile in bathroom came loose

*Broke Plumbing:  for bathroom -- backside closet access –water left running for weeks onto floor, caused significant water damage to flooring, virtually soaked the entire first level (and basement);  water ended up in basement; basement ceiling damaged, along with stairs down which became rotten; then covered in mold

*hand made custom tools in display damaged

*extensive herpetological and medical (and other) library – damaged/destroyed

Case 2:16-cv-00534-NJ   Filed 05/03/16   Page 43 of 45   Document 1

## BASEMENT

*tiled basement and workroom floor (virtually new) badly damaged

*thousands of dollars of tools damaged by moisture (and/or went missing from raid)

*acoustic ceiling caved in from water from upstairs

*basement bathroom damaged

*smashed door to upstairs tenant (who was home)

*Ripped apart storage area in basement

## MISC:

*Clothing/ bedding/ bed/ stamp album / large book collection – damaged or destroyed

*mold everywhere

*tools stolen; computer taken;   not inventoried

*stationary power tools rusted from humidity

*Freezer left open and burned out, contents spoiled

*antique ornaments smashed

*tenant upstairs taken away in handcuffs, never seen again;  entry door to upstairs unit busted out, floor/woodwork damaged in his bedroom

# <u>South 16th St.</u>

*large front custom door (was unlocked yet) badly damaged – sunk screws through door which split door;  ruined medeco compression lock

* >1 gallon of tangle foot poured & tracked everywhere

*number of valuable guns taken (willed to Plaintiff Cullen)