UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**THE DRAGONWOOD CONSERVANCY, INC.,**
**PLEGUAR CORPORATION, &**
**TERRY CULLEN**

Plaintiffs.

Vs *CASE# 16-534*

**PAUL FELICIAN***
**PHIL SIMMERT II***
**JANE AND JOHN DOE(S) &**
**CITY OF MILWAUKEE, *et. al.*,** Defendants

---

**AFFIDAVIT OF JANE FLINT**

---

STATE OF WISCONSIN
)ss
MILWAUKEE COUNTY)

JANE FLINT, being first duly sworn, states on oath:

1. I am an adult resident of the State of Wisconsin, and I make this Affidavit in support of Plaintiffs' opposition to the Defendants' Motion for Summary Judgment.

2. I am a dear friend and co-worker of Plaintiff Terry Cullen, and the resident-occupant at the "13th Street" Property (now, and as of the date of the warrant-raids, as more particularly described below.

3. Prior to this instant lawsuit, I was the Plaintiff *Flint v. City of Milwaukee, et. al.*, (E.D. Wis.) as Case #14 CV 333; wherein I sought damages for the shooting of "our" (Terry Cullen's and my) purebred dogs – cherished family members, really. In that predecessor case I retained John Larsen as an expert (he is a retired-to-private-practice, FBI crime-scene-reconstructionist). The case was ultimately settled by the parties after summary judgment was granted and denied the parties by the Honorable JP Stadtmueller, by Order of March 20, 2015.



Case 2:16-cv-00534-NJ Filed 01/31/18 Page 1 of 4 Document 44

4. Det. Simmert called me right before the search warrants were executed (apparently) on May 12, 2010; he advised me of the impending search warrant raids; and in response, I told Simmert I would (and I did) leave work immediately, to meet him the at the 13th Street property, in order to secure our four Tibetan Mastiffs (expensive, rare breed dogs and greatly beloved family members).

5. Many, many items of personal property "went missing" and/or were "damaged" during the police execution of the search warrant at S. 13th Street[1]. (Meaning that the property was there and in good order, when I left for work that morning; and when the Plaintiffs were finally restored to possession, the property was no longer there, and/or was significantly damaged); which included, as a representative sample:

*$4500.00 of cash in my "underwear drawer"
*jewelry missing (black opal necklace in gold and silver; gold earrings; opal ring; gold bracelet, and others) estimated value $4800.00
*Diesel Generator new in box $4500.00
*several guns were seized (and not returned)

6. On the date of the search warrant raid [May 12. 2010], the 13th Street property where I lived was clean and habitable, albeit somewhat 'cluttered' and 'cramped'; certainly not "filthy" as now described by Det. Simmert. Additionally, as to the Plaintiffs' other (three) properties in issue, they were likewise habitable not filthy, clean, cluttered, and/or cramped; I was taking care of those properties while Mr. Cullen was out of town and had been in each of them in the days preceding the execution of the search warrants thereupon. I have reviewed

---

[1] Other items of my personal property –and Plaintiffs' personal property- were damaged or "went missing" from the other three properties beyond 13th Street; but 13th Street was the worst and is used for representative purposes (as Plaintiffs' claims at trial would extend to property loss suffered at the other residences).

the "damage lists" offered by Plaintiffs [exhibit 1 to Cullen Affidavit] and I concur - those are the damages resulting from the execution of the search warrants. Moreover at 13th Street:

*the MPD tore-out the front, 8x10 window to create a huge hole;
*the basement stairs leading to the courtyard were busted-up;
*the place (and the others properties) were left in a state of devastation.
* the dogs did use the courtyard as a bathroom but no, one would not need to 'shovel a path' through feces to get through the courtyard to the garage; thus, Det. Simmert's description of the amount of dog "feces" in the courtyard is a gross overstatement.
* when I was in the back of a police car at 13th Street, I observed the police beginning preparations to "cut" the garage door at with a power-metal-saw; I told the officer there was easier "way" to get into the garage (and told him that they could enter through the unlocked interior, courtyard garage door; I was ignored).

7. As for Defendants' attempt to "green board" the properties: first, visible "gaps" remained after the board-up was completed; and second, one window [on the north side of 17th Street] and one door [the inner-courtyard door at 13th Street leading down to the basement] were left *completely open*. The properties became infested with vermin and the like (where the properties were not infested with vermin and others, prior to the execution of the search warrants; and appeared to be free therefrom for all practical purposes).

8 I was "excluded" from (my residence at) 13th Street –and Plaintiffs excluded from their Properties- for periods of weeks and months. In fact I had to arrange –by counsel- to retrieve personal items from 13th Street in the weeks following the raids, so long as I agreed to being searched on the way out. Eventually I was allowed to enter without being searched on the way out (only for a few hours) to collect personal items only. I was not allowed into my property until July 2010 and allowed ONLY to make repairs and clean up; but given a curfew and forced to leave my own property – in addition during this time (July to October) I was not allowed to cook, eat, or sleep there. Finally, after Halloween and before Thanksgiving (2010), I was allowed to move back into my home at 13th Street without restrictions or supervision.

I have read the foregoing and it is true and accurate to the best of my present knowledge.

JANE FLINT

*Subscribed to and sworn before me*
*This 30th day of January, 2018*

*Mark P. Murphy*
*Notary Public, State of Wisconsin*
*My commission is permanent.*