# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**THE DRAGONWOOD CONSERVANCY, INC.,**
  *formerly known as The Cullen Vivarium Wildlife Conservancy,*
**PLEGUAR CORPORATION,** and
**TERRY CULLEN,**

      Plaintiffs,

    v.                                                  Case No. 16-CV-534

**PAUL FELICIAN,**
**PHIL SIMMERT II,**
**JANE AND JOHN DOE(S),**
**CITY OF MILWAUKEE,** and
**ABC INSURANCE COMPANY,**

      Defendants.

---

# DECISION AND ORDER ON
# DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
# CERTAIN COMPENSATORY DAMAGES

---

In May 2010, officers from the Milwaukee Police Department seized hundreds of animals that belonged to Terry Cullen, his conservancy, and his employee-tenant, after having searched four properties owned or maintained by Mr. Cullen for evidence relating to the unlawful transportation or possession of endangered and threatened species. Mr. Cullen attempted to contest the seizure, but the Milwaukee County Circuit Court denied his motion seeking the return of the animals and authorized that the animals be disposed of by the animal welfare agency that was holding them. Mr. Cullen never saw the animals again.

About six years later, Mr. Cullen, his conservancy, and the owner of one of the properties sued two of the executing officers, unnamed officers or agents, the City of Milwaukee, and the City's insurance provider under 42 U.S.C. § 1983, alleging violations of their Fourth Amendment right to be free from unreasonable searches and seizures and their Fifth and Fourteenth Amendment rights to due process. The plaintiffs' unreasonable-seizure claim survived summary judgment; however, their due-process claims have been dismissed.

Before proceeding to trial on the remaining claims, the defendants seek summary judgment on the plaintiffs' claim for damages relating to the value of the seized animals. According to the defendants, that claim must be dismissed for lack of subject-matter jurisdiction and because it is not the proper remedy for the alleged constitutional violation. The Court respectfully disagrees. Because Mr. Cullen did not have a reasonable opportunity to contest the seizure of the animals during the state-court proceedings, his unreasonable-seizure damages claim is not barred by the *Rooker-Feldman* doctrine. Moreover, those damages are tailored to the alleged injury the plaintiffs' suffered. The Court will therefore deny the defendants' motion for summary judgment on certain compensatory damages.

## I. Background

In May 2010, MPD executed several search warrants at Mr. Cullen's properties and seized over 200 of his animals, including a few dead animal carcasses. *See* Plaintiffs' Additional Proposed Findings of Fact ¶¶ 29a–c, ECF No. 48; Exhibit 5 to Affidavit of Attorney Mark Murphy, ECF No. 46-5; Attachment L to

Affidavit of Jan A. Smokowicz, ECF No. 31-12. On May 13, 2010, the Milwaukee Area Domestic Animal Control Commission (MADACC) informed Mr. Cullen that the agency was holding his animals "for cause" on behalf of MPD. *See* Attachment J to Smokowicz Aff., ECF No. 31-10 at 13–14.

Mr. Cullen was subsequently charged in Milwaukee County Circuit Court with several crimes relating to the animals seized from his properties. *See* Defendants' Proposed Findings of Fact ¶ 36, ECF No. 30. The State assured Mr. Cullen that the animals would not be relocated without notice and an opportunity to be heard. Smokowicz Aff. Attach. J, at 18. A few days later, however, the State filed a petition with the Circuit Court seeking approval to relocate all animals except for the carcasses and two endangered turtles, which were being held as evidence. *See* Smokowicz Aff. Attach. J, at 15. The Circuit Court did not address the petition. Nevertheless, a number of animals were relocated. *See* Exhibit 1 to Plaintiffs' Brief Opposing Defendants' Motion for Partial Summary Judgment, ECF No. 67-1.

On July 13, 2010, Mr. Cullen moved the Circuit Court to return the seized animals, appoint a receiver to care for the animals while the criminal case was pending, and restrain any movement of the animals until further order of the court. *See* Attachment H to Smokowicz Aff., ECF No. 31-8. Following a hearing, *see* Exhibit 9 to Murphy Aff., ECF No. 46-9, the Circuit Court denied the motion, finding that it was not properly before the court because it should have been filed in civil court, not in Mr. Cullen's criminal proceedings, *see* Attachment I to Smokowicz Aff., ECF No. 31-9. The court further determined that Mr. Cullen had "waived his

right to request return of said animals by failing to petition the circuit court for return of the seized animals *within seven days of confiscation* as required by statute. *See* Wis. Stats. § 173.19,[1] 173.22."[2] *Id.* Finally, the court held that, because no petition had been timely filed, "said animals are deemed, by operation of statute, to be '*unclaimed*,' and therefore . . . MADACC . . . has lawful authority over said animals and may dispose of and/or distribute said animals as it see[s] fit, consistent with law." *Id.* The court denied Mr. Cullen's request to stay its ruling pending an appeal. *See* Murphy Aff. Ex. 9, at 60:2–20. Most of the remaining animals were relocated following the Circuit Court's ruling. *See* Pls.' Br. Ex. 1.

On September 15, 2010, Mr. Cullen moved for reconsideration, arguing that the Circuit Court had misapplied state law. *See* Smokowicz Aff. Attach. J. Mr. Cullen asked the court to vacate its decision that he lost his claim to his animals and to allow him to file a petition in civil court seeking the return of his animals. *Id.* at 8. The Circuit Court held two non-evidentiary hearings on the reconsideration motion. *See* Exhibit 10 to Murphy Aff., ECF No. 46-10; Exhibit 11 to Murphy Aff.,

---

[1] "[A] political subdivision or person contracting under s. 173.15 (1) may treat any animal taken into custody under s. 173.13 (1) (a) 1., 3., 4., or 9. as an unclaimed animal subject to s. 173.23 (1m) if, within 7 days after custody is taken of the animal, it is not claimed by and returned to its owner under s. 173.23 (1), except that an animal taken into custody under s. 173.13 (1) (a) 3. or 4. may not be treated as unclaimed if its owner files a petition under s. 173.22 (1) within 7 days after custody is taken." Wis. Stat. § 173.19 (2010).

[2] "A person claiming that an animal that he or she owns was improperly taken into custody under s. 173.13 (1) (a) 3., 4., 5., 6., or 8. or is wrongfully withheld under s. 173.21 (1) may seek return of the animal by petitioning for an order from the circuit court for the county in which the animal was taken into custody or in which it is held." Wis. Stat. § 173.22(1) (2010).

4

ECF No. 46-11. By that time, only twenty-four animals remained in MADACC's custody. *See* Murphy Aff. Ex. 10, at 17:20–18:9. The Circuit Court vacated its previous decision but still denied Mr. Cullen's motion. *See* Attachment K to Smokowicz Aff., ECF No. 31-11. The court determined that "[t]he animals were seized under Wis. Stat. §173.13(1),"[3] that "[t]he animals were and are held by . . . MADACC . . . under Wis. Stat. §173.21(1)(a)," and that "under Wis. Stat. §173.22(3)(1)[4] there are reasonable grounds to believe the owner has mistreated the animals in violation of Wis. Stat. ch. §951." *Id.* The court therefore ordered, pursuant to Wis. Stat. § 173.23,[5] that "the animals may be sold, destroyed or disposed of as determined by MADACC." *Id.* The court issued its order "nunc pro tunc," meaning it was effective as of the date of its previous order. *Id.* The court also declined Mr. Cullen's requests for a temporary restraining order and to stay the order pending an appeal. *Id.*

---

[3] "[A] humane officer, on behalf of a political subdivision in which the humane officer has jurisdiction under s. 173.03 (3), or a law enforcement officer, on behalf of a political subdivision, may take custody of an animal if the humane officer or law enforcement officer has reasonable grounds to believe that the animal is one of the following: . . . 4. An animal not licensed in compliance with any ordinance. . . . 8. An animal mistreated in violation of ch. 951." Wis. Stat. § 173.13(1)(a) (2010).

[4] "If the animal was taken into custody under s. 173.13 (1)(a)8. or is withheld under 2. 173.21 (1), the court shall order the animal returned to the owner unless it determines that one of the following conditions is satisfied: 1. There are reasonable grounds to believe that the owner has mistreated the animal in violation of ch. 951." Wis. Stat. § 173.22(3)(a)1. (2010).

[5] "A political subdivision may petition the circuit court for an order doing any of the following with respect to an animal taken into custody by a law enforcement officer or a humane officer or withheld under s. 173.21 (1): . . . Authorizing the sale, destruction or other disposal of the animal." Wis. Stat. § 173.23(3)(a)3.

On May 3, 2016, Mr. Cullen, his conservancy, and the owner of one of the properties sued two of the executing officers, unnamed officers or agents, the City of Milwaukee, and the City's insurance provider. *See* Complaint, ECF No. 1. An Amended Complaint, ECF No. 13, was filed on December 5, 2016. The plaintiffs claim that the defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution when they searched the plaintiffs' properties and seized the plaintiffs' animals, as well as other items. The matter was reassigned to this Court in March 2017 after all parties consented to magistrate-judge jurisdiction. *See* Order, ECF No. 17; *see also* Consent to Proceed Before a Magistrate Judge, ECF Nos. 15, 16 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)).

The defendants moved for summary judgment on the plaintiffs' claims. On January 24, 2019, the Court issued a written decision granting the motion in part and denying it in part. *See* Decision and Order on Defendants' Motion for Summary Judgment, ECF No. 62. The Court determined that the defendants were entitled to summary judgment on the plaintiffs' probable-cause claim, due-process claims, and municipal-liability claim. However, the plaintiffs' unreasonable-seizure claims and property-damage claim survived summary judgment.

On March 22, 2019, the defendants filed a motion for partial summary judgment as to damages with respect to the value of the plaintiffs' animal inventory. *See* Defendants' Motion for Partial Summary Judgment on Certain Compensatory Damages, ECF No. 65. That motion is now fully briefed and ready

6

for disposition. *See* Defendants' Brief in Support, ECF No. 66; Plaintiffs' Brief Opposing Defendants' Motion for Partial Summary Judgment, ECF No. 67; Defendants' Reply Brief, ECF No. 68.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*,

7

351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## III. Discussion

The defendants argue that, under the *Rooker-Feldman* doctrine, this Court lacks subject-matter jurisdiction over the plaintiffs' damages claim for their animal inventory. They further argue that, even if jurisdiction is not lacking, the value of the animal inventory is not the proper remedy for the alleged unreasonable-seizure because the state court determined that Mr. Cullen was not entitled to his animals.

### A. *Rooker-Feldman*

According to the defendants, the state court's determination that Mr. Cullen was not entitled to the animals precludes the plaintiffs from seeking compensation for the value of those animals in federal court. *See* Defs.' Br. 2–4; Defs.' Reply 1–6. The plaintiffs maintain that *Rooker-Feldman* simply does not apply here because Mr. Cullen was ultimately acquitted of the criminal charges. *See* Pls.' Br. 11.

8

### 1. Applicable law

"The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Sykes v. Cook Cty. Circuit Court Probate Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citing *Exxon-Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The initial inquiry, then, 'is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim.'" *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)). In making this determination, courts "ask whether the federal claims either 'directly' challenge a state court judgment or are 'inextricably intertwined' with one." *Id.*

"Claims that directly seek to set aside a state court judgment are *de facto* appeals that are barred without further analysis." *Jakupovic*, 850 F.3d at 902 (citing *Taylor*, 374 F.3d at 532). "But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment." *Jakupovic*, 850 F.3d at 902 (citing *Sykes*, 837 F.3d at 742). "The 'inextricably intertwined' determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes*, 837 F.3d at 742 (citing *Taylor*, 374 F.3d at

532). A claim is inextricably intertwined if there is "no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Sykes*, 837 F.3d at 742 (citing *Exxon-Mobil*, 544 U.S. at 293).

Once it is determined "that a claim is inextricably intertwined with a state-court judgment—that is, that the former indirectly seeks to set aside the latter—" the court must then analyze "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic*, 850 F.3d at 902 (citing *Taylor*, 374 F.3d at 533). "If so, the claim is barred." *Jakupovic*, 850 F.3d at 902. "If not, the suit is free to proceed in federal court (subject to any claim preclusion defenses)." *Taylor*, 374 F.3d at 533. "To establish that they did not have a reasonable opportunity to raise an issue in state court, federal litigants must 'point[] to some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings.'" *Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999)). This typically involves "either some action taken by the state court or state court procedures in place . . . that the litigants are incapable of overcoming in order to present certain claims to the state court." *Id.*

"Because *Rooker* itself arose from a constitutional challenge to the state court's use of procedures, the *Rooker-Feldman* doctrine applies to procedural state court rulings as well as substantive ones." *Sykes*, 837 F.3d at 742 (citing *Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014)). The Seventh Circuit has also held that "interlocutory orders entered prior to the final disposition of state court lawsuits are

10

not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Sykes*, 837 F.3d at 742 (citing *Harold*, 773 F.3d at 886). Nevertheless, "the *Rooker-Feldman* doctrine is a narrow one." *Jakupovic*, 850 F.3d at 902 (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

### 2. Analysis

The defendants imply that, in seeking damages for the alleged unreasonable seizure of their animals, the plaintiffs are directly challenging the state court's order authorizing MADACC to sell, destroy, or dispose of the animals. *See* Defs.' Br. 1–4. Not so. While the plaintiffs frequently criticize the state court's actions, their unreasonable-seizure claim does not seek to set aside the court's order. Thus, the defendants' reliance on *Hestekin v. Belay*, 17-cv-869-wmc, 2018 U.S. Dist. LEXIS 204551 (W.D. Wis. Dec. 4, 2018), is misplaced.

Nevertheless, the defendants persuasively argue that the plaintiffs' damages claim relating to their animals is a product of that order. *See* Defs.' Reply 3–6. The plaintiffs allege that they suffered two distinct deprivations concerning their animals: "(1) the initial seizures, followed by (2) the 'refusal to return' the seized property." *See* Pls.' Br. 6. That may be true. But the plaintiffs have not alleged that they suffered any damages as a result of the initial seizure by law enforcement. *See* Am. Compl. ¶¶ 601–07. And, in contrast to *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001) and *Walters v Wolf*, 660 F.3d 307 (8th Cir. 2011)—two cases relied upon by the plaintiffs—there is no evidence that the defendants named here were involved in the continued deprivation of the animals. Mr. Cullen was informed, the

11

day after the initial seizure, that his animals were held for cause and that he could petition the circuit court for their release. Consequently, whether to return the animals was a decision for the circuit court, not the individual officers.[6]

The Circuit Court determined that MADACC could dispose of the animals, and all the plaintiffs' claimed damages stem from that decision. They seek $2 million for the reasonable value of the "reptile inventory" and another $2 million for lost "incomes, profits, rental incomes, earning capacities, and/or reputations." Am. Compl. ¶¶ 605–06. The plaintiffs' opposition brief lists three sources of damages: the value of the animal inventory, the value of lost breeding rights, and the loss of fundraising and exhibition value. *See* Pls.' Br. 1–2.

Thus, the injuries the plaintiffs complain about—damages relating to the permanent deprivation of their animals—were not complete until the Circuit Court's return-of-property order. If the Circuit Court had sided with Mr. Cullen and ordered that the animals be returned to him (or, as he requested, be placed in receivership), the plaintiffs likely would not have suffered the injuries for which they now seek to be compensated. Accordingly, to obtain damages relating to the deprivation of their animals, the plaintiffs would inevitably be forced to challenge the validity of the state court's order. *See Long*, 182 F.3d at 556–57 (finding due-process claim inextricably intertwined with state-court eviction action because,

---

[6] Indeed, less than four weeks after the first search—and prior to seeking the return of his animals—Mr. Cullen was informed that only two animals (and several carcasses) were still being held as evidence. *See* Smokowicz Aff. Attach. J, ECF No. 31-10 at 15.

12

absent the eviction order, the plaintiff would not have been deprived of her home and all her possessions inside).

Whether the plaintiffs had a reasonable opportunity to pursue their claims in state court is a closer call. The State initially assured Mr. Cullen that his animals would not be relocated without notice and an opportunity to be heard. *See* Smokowicz Aff. Attach. J, ECF No. 31-10 at 18. However, just a few days later, the State filed a petition in Circuit Court seeking approval to find new homes for the animals. *See id*. at 15. Although the State promised that no action would be taken until the matter was resolved in court, *id.*, a number of animals were shipped away prior to the petition being heard, *see* Pls.' Br. Ex. 1, ECF No. 67-1. A few weeks later, Mr. Cullen filed a motion pursuant to Wis. Stat. § 968.20 and § 173.22, requesting that the animals be returned to him, that a receiver be appointed to care for the animals while his criminal case was pending, and that all entities be restrained from moving any other animals until the merits of his motion were heard and decided. *See* Attach. H, ECF No. 31-8.

The Circuit Court later admirably acknowledged that it had misapplied state law in denying Mr. Cullen's motion. The court erroneously believed that Mr. Cullen had waived his right to request the return of his animals because his request was untimely. *See* Attach. I, ECF No. 31-9. Based on that error, the court deemed the animals "unclaimed" according to Wis. Stat. § 173.19 and permitted MADACC to dispose of them. Consistent with that misguided order, MADACC shipped away the

bulk of the remaining animal inventory. *See* Murphy Aff. Ex. 10, at 17:20–18:9; *see also* Pls.' Br. Ex. 1.

In fact, the seven-day time limit relied upon by the Circuit Court did not apply because law enforcement seized the animals believing that they were mistreated in violation of state law. *Compare* Wis. Stat. § 173.13(1)(a)8. (2010) *with* Wis. Stat. § 173.19 (2010). State law at the time did not provide a time limit for petitioning for review of a seizure under § 173.13(1)(a)8. or a withholding under § 173.21(1). *See* Wis. Stat. § 173.22(1) (2010). Consequently, the state court's error effectively precluded Mr. Cullen from contesting the seizure and withholding of his animals prior to pursuing such claims in federal court. *See, e.g.*, *Long*, 182 F.3d at 557–60.

The fact that the Circuit Court eventually acknowledged its error and vacated its decision was too little, too late. It was too little because the court's subsequent decision was procedurally flawed as well. The court determined that the animals shouldn't be returned to Mr. Cullen because there were reasonable grounds to believe that he was mistreating them. *See* Attach. K, ECF No. 31-11. That finding was based solely on a court commissioner's decision to bind Mr. Cullen over for trial, *see* Murphy Aff. Ex. 11, ECF No. 46-11 at 5:1–20, meaning there was probable cause to believe that he had committed a felony, *see* Wis. Stat. § 970.03. But the animal-mistreatment charges were all misdemeanors; the felony bindover decision was based on unrelated charges of sexual assault and false imprisonment. *See*

https://wcca.wicourts.gov (search Milwaukee County Case Number 2010CF2659).[7] Moreover, Mr. Cullen waived his preliminary hearing, and the Circuit Court denied his requests to present evidence on the mistreatment issue or to allow him to petition the civil division for relief. Mr. Cullen was therefore never provided a reasonable opportunity to demonstrate that his animals were improperly taken or wrongfully withheld. *See* Wis. Stat. § 173.22(2) (requiring circuit court to "hold a hearing on the issue of whether the animal was improperly taken into custody or is wrongfully withheld").

The Circuit Court's reconsideration decision was also too late. By that time only twenty-four animals remained in MADACC's custody, and there was little chance of Mr. Cullen recovering the other animals, which were scattered throughout the country. As such, Mr. Cullen's failure to appeal either Circuit Court decision does not alter the reasonable-opportunity analysis—the damage was already done. This is especially true given that the Circuit Court denied Mr. Cullen's requests to stay its decisions pending an appeal. *See* Murphy Aff. Ex. 9, ECF No. 46-9 at 60:2–20; Attach. K.

In sum, the Court finds that the *Rooker-Feldman* doctrine does not preclude the plaintiffs from seeking damages relating to the unreasonable seizure of their

---

[7] A court may take judicial notice of public records available on government websites. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (collecting cases).

15

animals, as the plaintiffs did not have a reasonable opportunity to contest their seizure or withholding in state court.

## B. Proper remedy

The defendants further argue that the plaintiffs' remedy should be limited to any unreasonable damage caused during the initial seizure of the animals and not the value of the animals because the state court determined that Mr. Cullen forfeited his rights to them. *See* Defs.' Br. 4–7; Defs.' Reply 6–7. The defendants principally rely on two cases. First, *Covington v. Winger* involved a man who filed a civil rights action against the police, claiming that they unreasonably seized his firearms in violation of the Fourth Amendment. 562 F. Supp. 115, 117 (W.D. Mich. Feb. 15, 1983). The district court determined that the plaintiff could not seek the return of the firearms because he was a convicted felon and, thus, even if the seizure was unlawful, he had no right to possess them. *Id.* at 119. For the same reason, the court found that "it would be illogical to allow Plaintiff to use the value of the guns as a measure for his recovery should he prove that his Fourth Amendment rights were violated." *Id.* The court therefore held that "the measure of damages must be otherwise determined." *Id.*

The Court finds *Covington* to be distinguishable from the instant action. The plaintiff in *Covington* could not possess the property at the time of the allegedly unlawful seizure based on his felon status. However, in this case, Mr. Cullen's ownership rights were terminated after his animals were seized via a process that did not provide him a reasonable opportunity to contest that seizure. Given the lack

16

of procedural safeguards during those state-court proceedings, the Court will not limit the plaintiffs' damages as requested by the defendants.

The defendants also rely on *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, a civil forfeiture action wherein the Seventh Circuit determined that the claimant's damages were limited to "the profits of which [he] was deprived during the period of illegal seizure." 58 F.3d 1181, 1193 (7th Cir. 1995). According to the court, this approach was consistent with "the responsibility of the courts to construct a remedy for a constitutional violation that is tailored to the injury caused by the violation." *Id.* (citing *Milliken v. Bradley*, 418 U.S. 717, 744 (1974)).

Permitting the plaintiffs in this case to seek damages relating to the value of the animals is a remedy tailored to the alleged constitutional violation. The plaintiffs' claims of lost breeding rights and loss of fundraising and exhibition values are akin to the lost profits potentially recoverable in *West Side Building Corp.* At this time, the Court declines to limit those damages—as well as the value of the animal inventory never returned—to the period immediately following the allegedly unlawful seizure and prior to any state-court action because a reasonable jury could conclude that the permanent deprivation of the animals was a foreseeable consequence of the officers' seizure.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the plaintiffs are not precluded from pursuing damages related to the alleged unlawful seizure of their

animals. The defendants' motion for partial summary judgment on certain compensatory damages will therefore be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment on Certain Compensatory Damages, ECF No. 65, is **DENIED**.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2019.

BY THE COURT:

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge
