UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

    Plaintiffs,

v.                                Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

    Defendants.

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 702 MOTION TO STRIKE THE REPORT OF PLAINTIFF'S EXPERT WITNESS, MITCHEL KALMANSON AND TO PRECLUDE HIM FROM TESTIFYING**

---

## INTRODUCTION

On July 13, 2020, Defendants filed a Rule 702 Motion to Preclude Plaintiffs' Expert, Mitchel Kalmanson, from Testifying at Trial and Strike His Report; Motion to Preclude Authors of Untimely "Peer Review Letters" from Testifying at Trial and Strike the Three Peer Review Letters. (Dkt 95.) On August 3, 2020, Plaintiffs filed their response brief. (Dkt 102.) Defendants, the City of Milwaukee, Paul Felician, and Phil Simmert II, hereby file their reply brief in support of their motion to strike the report of Plaintiffs' "reptile valuation" expert, Mitchel Kalmanson, and preclude him from testifying at trial.

# ARGUMENT

**I.  Mr. Kalmanson's insurance background is irrelevant and an unreliable foundation for him to qualify as a reptile market valuation expert.**

Plaintiffs characterize Mr. Kalmanson as a "non-scientific expert" (Pls' Resp. Br., Dkt 102 at 4) as if that affected the legal analysis in this case and assert that his experience alone should qualify him as an expert witness in the valuation of the reptile portfolio subject to this lawsuit.  The *Daubert* standard applies to all expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on other technical or specialized expertise. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

Mr. Kalmanson's deposition testimony, supporting documents, and expert report fail to assert relevant reptile market valuation or reptile breeding experience for him to serve as an expert in this capacity.  Plaintiffs are correct that experience alone may qualify a witness as an expert to satisfy *Daubert*. Plaintiffs accurately cite, "genuine expertise may be based on experience or training." *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002), (quoting *Tyus v. Urban Search Mgmt,* 102 F.3d 256, 263 (7th Cir. 1996).  However, "courts have frequently precluded a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject." 28 Wright & Gold, *Federal Practice and Procedure* § 6205, quoted by *Ty Inc. v. Publications Int'l, Ltd.*, No. 99 C 5565, 2004 WL 5025744, at 3 (N.D. Ill. June 30, 2004).  "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3rd 1342, 1351 (6th Cir. 1994). A large portion of Mr. Kalmanson's report is spent opining as to the breeding success of various reptiles at issue in this case and the value of the progeny. Mr. Kalmanson's insurance,

transport and other qualifications do not provide a foundation for him to answer specific questions as to breeding patterns of reptiles or the value of the alleged progeny, nor does his experience qualify him to answer specific questions as to the market value of particular reptile species.

While Mr. Kalmanson might qualify as an expert regarding insurance policies or other areas related to his experience as an insurance salesman, he is not qualified to serve as an expert on reptile market valuation or opine as to breeding patterns of reptiles. Plaintiffs argue that Mr. Kalmanson's "opinions are based upon his decades-long, worldwide involvements in valuing and insuring exotic animals, including reptiles." (Dkt 102 at 4). Plaintiffs highlight Mr. Kalmanson's experience with insurance policies related to animals and argue that as an insurance agent and claims adjuster, he is required to perform valuations of any given species of animal, including reptiles. To say an insurance agent or claims adjuster providing insurance policies for various exotic animals is qualified to opine on the market value of very specific reptile species is akin to asserting that a homeowner's insurance agent would be a qualified expert to opine on the market value of pieces of artwork. It is that far-fetched.

Mr. Kalmanson may have knowledge of insurance practices. However, he himself stated that to place insurance mortality value on any animals, or to determine liability for those animals, he relies on "good faith" information from those persons seeking policies for liability or mortality. (Kalmanson Dep. 9:2-4, 14:22-25, Dkt. 97-5.) Mr. Kalmanson described liability coverage as protecting "the insured for third-party claims for bodily injury and/or property damage in case somebody is hurt by one of his animals or trips and falls at his facility or if the insured were to take animals off the premises and somebody were to get hurt." (Kalmanson Dep. 9:23-25, 10:1-4, Dkt. 97-5.) His experience with liability coverage involving an animal appears

3

no different than any other liability policy and does not depend on any specialized knowledge of the market value of the reptile that may potentially cause bodily injury against another person. Determining a monetary amount to cover the risk should someone be injured by an animal is distinctly different than establishing the value for the animal itself. Experience selling liability policies covering bodily injury caused by a person's reptile does not give Mr. Kalmanson experience with the buying, selling, and/or breeding of reptiles.

Mr. Kalmanson described mortality coverage as follows, "Mortality coverage is insuring animals for life insurance like I would do a human for life insurance." (Kalmanson Dep. 12:13-16, Dkt. 97-5.) When asked if there was a value set by the insurance industry for an alligator, Mr. Kalmanson replied, "No. I'm one of the few – I have to add this and I normally don't, but there's very few in the world that deals with exotic animals." (Kalmanson Dep. 13:7-9, Dkt. 97-5.) Mr. Kalmanson's experience in the insurance industry is irrelevant because first, according to his testimony, there is no industry standard for reptile insurance values, and second, insurance value is different than market value.

If Mr. Kalmanson had extensive experience in the market of buying, selling and/or breeding reptiles, his experience alone may qualify him to serve as an expert in this capacity. However, that is not the case. Mr. Kalmanson's experience only lies within insuring various animals, and even this experience is not specific to the reptiles that are a subject matter of this case.

**II.      Mr. Kalmanson's talent agency background is irrelevant and an unreliable foundation for him to qualify as a reptile market valuation expert.**

Plaintiffs assert in their response that Mr. Kalmanson's experience as the owner of the Worldwide Exotic Animal Talent Agency that supplies animal talent for special events and

4

circuses qualifies him as an expert. However, his experience here has little, if nothing, to do with the market valuation of reptiles. Mr. Kalmanson testified as follows:

> Q Approximately how many reptiles do you deal with through Worldwide Exotic Animal Talent Agency?
> A The last two or three years, not many. Prior to that we had a couple of people with cobras. And people like to have private parties where they brought a guy out with a flute and played to the cobra that comes out of a basket. So it was more of an entertainment.
> Some of the snakes that we supply, like the circuses, they'll come in with pythons or big snakes for photo ops. and for performance purposes.

(Kalmanson Dep. at 36: 3-14, Dkt. 97-5.)

> Q Which -- can you list the animals that are owned by the agency?
> A By Kalmanson would be lions, tigers, cougars, porcupines, I got a liger, yak.
> Q Does Worldwide Exotic Animal Talent Agency own any reptiles?
> A No.
> Q Does the Lester Kalmanson Agency own any reptiles?
> A No.
> Q Do you personally own any reptiles?
> A No.
> Q Have you ever?
> A No.
> Q Getting back to the questions I was asking about approximately how many reptiles have you used or you've worked with in your capacity with the Worldwide Exotic Animal Talent Agency, you said none in the last two to three years, correct?
> A I haven't placed any. I haven't brokered any. I haven't gotten any calls for reptiles.

(Kalmanson Dep. at 37:18-25; 38:1-14, Dkt. 97-5.)

Mr. Kalmanson testifies that this agency only owns lions, tigers, cougars, porcupines, ligers and a yak – none of which are animals subject to this lawsuit. If Mr. Kalmanson had

extensive experience as the owner of an exotic animal talent agency in the market of buying, selling and/or breeding reptiles, his experience might qualify him to serve as an expert in this capacity. However, that is not the case. Mr. Kalmanson's talent agency background relates to providing venues with large mammals and can hardly be construed as specific to experience in the market valuation of reptiles or knowledge regarding breeding of reptiles.

**III. Mr. Kalmanson's professional engagement background is irrelevant and an unreliable foundation for him to qualify as a reptile market valuation expert.**

Plaintiffs response brief highlight Mr. Kalmanson's alleged experience as it relates to "professional engagements related to reptiles" (Dckt 102 at 8). Plaintiffs assert that moving alligators recently provide him with experience to overcome a *Daubert* challenge. However, this is merely a repeat of information provided regarding his experience as an insurance broker and not as a true market valuation related to what he provided in his report. Mr. Kalmanson listed hundreds of professional engagements on the curriculum vitae provided to this Court (Dkt 75-4). When asked to clarify if any of those professional engagements related to reptiles within the past five years he replied that he transported some alligators and provided an oral quote for insurance coverage (Kalmanson Dep. 67: 6-25, 68: 2-13, Dkt. 97-5), and was interviewed on the news about liability for some cobras that had escaped captivity in Florida and New York (Kalmanson Dep. 69:16-23, Dkt. 97-5.) Neither of the professional engagements Mr. Kalmanson participated in over the course of the last five years relate at all to being able to provide expert witness testimony on reptile market valuation, breeding success of reptiles, and value of speculated progeny.

Beyond the last five years, Mr. Kalmanson had little to add as to additional professional engagements involving reptiles and none involving reptile market valuation that he participated

6

in that would help formulate his reptile market valuation report. In the last ten years, Mr. Kalmanson stated his involvement in the following professional engagements related to reptiles:

1. Transporting and insuring a turtle (Kalmanson Dep. 71: 14-22, Dkt. 97-5.) It should be noted that Mr. Kalmanson incorrectly identified a turtle as an amphibian. In fact, when asked about his professional experience related to reptiles, he responded by identifying a turtle, but incorrectly stated that a turtle is an amphibian. (See Kalmanson Dep. 71: 14-15, Dkt. 97-5.)

2. Supplying a list of snakes and turtles that could be transported to South Korea (Kalmanson Dep. 75:1-18, Dkt. 97-5.)

3. Serving as an expert witness for five cases in South Florida post-Hurricane Andrew, insurance flood overage issues, one involving an alligator (Kalmanson Dep. 76:1-25, 77:1-16, Dkt. 97-5.) In his capacity as an expert witness for this case, Mr. Kalmanson testified that he "was helping the law firms…more on the claims standpoint…. If it is covered or not a covered coverage." (Kalmanson Dep. 77: 3-12, Dkt. 97-5.)

Plaintiffs highlight these professional engagements in their response brief (Dkt 102 at 8) to bolster their assertion that Mr. Kalmanson's experience qualifies him to serve as an expert witness on the market valuation of a reptile portfolio. Yet none of these professional engagements would provide Mr. Kalmanson with additional knowledge or qualifications to determine the value of the reptiles owned by Plaintiffs in this case. Transportation, insurance, list-making and opining on coverage would not further Mr. Kalmanson's knowledge of what a particular species of reptile is worth, and certainly does not qualify him as an expert as to the breeding patterns of reptiles, or value of speculated progeny.

**IV. Mr. Kalmanson's insurance appraisal of exotic animals is unreliable and irrelevant.**

Plaintiffs return to Mr. Kalmanson's insurance experience to assert that he is experienced to provide a reptile market valuation report. Mr. Kalmanson testified that for insurance policy and appraisal purposes, "there's a lot of underwriting guidelines that I go by." (Kalmanson Dep. 12:20-21, Dkt. 97-5.) However, Mr. Kalmanson's testimony reflects that his expert reptile market valuation report is not based upon these guidelines in any way and in fact, there is no set value set by the insurance industry for an alligator (Kalmanson Dep. 13:5-7, Dkt. 97-5.) Mr. Kalmanson himself testified that "appraisal versus values is a big difference." (Kalmanson Dep. 229:5-6, Dkt. 97-5.)

**V. Mr. Kalmanson's expert report lacks foundation.**

Plaintiffs state that "Kalmanson's knowledge of reptile value and breeding has accrued over decades, from his training and business-endeavors…" (Dkt 102 at 11). Mr. Kalmanson has failed to demonstrate his experience is from any first-hand knowledge of reptile breeding, or pertains to the actual market value of a reptile.

Plaintiffs assert that because Mr. Kalmanson spoke with others to confirm his opinions, this Court should deem him an expert on market valuation. Plaintiffs' response brief provides sources including Plaintiff Terry Cullen as individuals he relied upon to verify his report (Dkt 102 at 11). Plaintiffs believe that because Mr. Kalmanson consulted these sources, this qualifies Mr. Kalmanson's report as an expert reptile market valuation report. This, too, fails to establish a foundation for Mr. Kalmanson to testify or submit an expert report. "An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert." *Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 820 (10th Cir. 2010). Under Rule 703, the facts or data relied upon must themselves be the kind that "experts in the particular

8

field would reasonably rely on ... in forming an opinion on the subject." Fed. R. Evid. 703 (cited by *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017). Plaintiffs offer no evidence that individuals engaging in the market of buying, selling, or breeding reptiles rely upon the values Mr. Kalmanson sets forth in his calculations. Mr. Kalmanson's reliance on others to verify his report should not be a consideration to deem Mr. Kalmanson an expert on reptile market valuation.

In their response, Plaintiffs then provide an extensive breakdown of how Mr. Kalmanson derived his values to argue that his report should not be stricken (Dkt 102 at 12-19). Understanding Mr. Kalmanson's calculations does nothing to further any advocacy for his testimony to be allowed. These calculations have no foundation upon which to be introduced to a jury. The calculations are not provided by an individual who has any background, experience or training in the buying, selling, trading or breeding of any reptile species. The calculations are not provided by an individual who has scientific knowledge of reptile species, knowledge of breeding patterns, or conducted any extensive research on very specific reptile species. Mr. Kalmanson's novel formula for deriving reptile market value is, quite simply, unsupported speculation and not based upon a foundation of expertise in the reptile industry, reptile breeding, or market value of reptiles.

**VI. Mr. Kalmanson fails to establish a foundation for which he can provide an expert report or expert testimony on loss of income generated by using the reptile portfolio at special events.**

Plaintiffs assert that Mr. Kalmanson is qualified to serve as an expert witness to opine on the loss of income generated by using the reptile portfolio at special events. Plaintiffs state that Mr. Kalmanson's ability to expertly opine on the loss of income is based upon "his experience with insurance." (Dkt 104 at 20). Mr. Kalmanson testified that he derived his figure from what

9

he was told by the Plaintiff Terry Cullen.  Mr. Kalmanson testified he came up with this figure as follows:

> Q	So this is addendum 3, Loss of Income From Loss
> of Animal Inventory.
> So you used this formula to come up
> with a damages figure of 24 special events
> times 80 percent equals rounded 19 events.
> What does that mean?
> A	So [Terry Cullen] indicated he's doing about one or two a
> month.  So if we have 12 months, obviously 24
> events; [Terry Cullen]'s going out and making an average of
> $2,500 an event.  I took 80 percent of that
> because you're not always going to make the
> same money -- sometimes you're going to make
> more, sometimes you're going to make less –
> and you may get a rain date or we do a
> Saturday/Sunday event and therefore we work
> Saturday and not Sunday or we were able to work
> Sunday and not Saturday.  So I took the
> 20 percent off, one, to be conservative and not
> just throw it up in high numbers; and second,
> to say, okay, [Terry Cullen]'s going to have a loss, but
> he's going to be active if he works.  And we
> may take off for, quote, Christmas or some
> other religious holidays.

(Kalmanson Dep. 153:13-25, 154:1-10, Dkt. 97-5.)

Mr. Kalmanson derived the value of $2,500 solely upon what Plaintiff Terry Cullen told him (Kalmanson Dep. 156:8-10, Dkt. 97-5.)  Mr. Kalmanson failed to request specific information as to what events Plaintiffs participated in (Kalmanson Dep. 154:11-24, Dkt. 97-5.) Mr. Kalmanson asked for no supporting documentation (Kalmanson Dep. 154:25, 155:1-11, Dkt. 97-5.)  Mr. Kalmanson did not review any receipts (Kalmanson Dep. 156:8-10, Dkt. 97-5.)  In fact, Mr. Kalmanson did not consult with any written documentation reflecting income generated from reptile events to prepare this portion of the report (Kalmanson Dep. 157:9-19, Dkt. 97-5) and solely relied on the Plaintiff's verbal assertion that the events generated a certain amount of

10

income. "An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful." *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014); see also *Benson*, 941 F.2d at 604 ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury."). Having Mr. Kalmanson testify to Plaintiffs' allegations of damages with no foundation, background, documentation, or objective data is not expert testimony, it is merely a recitation of Plaintiffs' allegations from someone the plaintiff would call an "expert" witness and should be barred by this Court.

**VII. Mr. Kalmanson should be disqualified as an expert and his shortcomings are not just credibility determinations.**

Plaintiffs assert that Mr. Kalmanson's testimony and report should not be disqualified, but instead, any shortcomings should determine credibilty. To support this assertion, Plaintiffs cite to two cases outside of the 7th Circuit (Dkt 102 at 24). Plaintiff's first case cited stems from the Eastern District of Michigan and Plaintiffs response indicates that this case holds that an expert's unfamiliarity with statutory definitions was not grounds for disqualification See *Zuzula v. ABB Power T&D Co.*, 267 F. Sup.2d 703 (E.D. Mich. 2003). An expert's unfamiliarity with statutory definitions is distinguished from an alleged expert's unfamiliarity with the actual field in which he asserts expertise. Further, this cited case has nothing to do with an expert's unfamiliarity with statutory definitions. *Zuzula* examines if an expert opinion offered by a manufacturer qualified as expert testimony for accident equipment design features and employee's comparative fault. See *Id*. Plaintiffs then offer a 4th Circuit case, *Friendship Heights Associates v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154 (4th Cir. 1986) to assert the notion that the "failure of a witness to define or explain [a] profession's appropriate standard of care in [a] satisfactory manner was relevant to witness' credibility as [an] expert and not [the] witness'

11

qualifications to testify." (Dkt 102 at 24). Defendants fail to understand how this case is relevant to support Mr. Kalmanson's qualification to serve or not serve as an expert witness. This case provides, "If a witness qualifies on any of the grounds listed in Rule 702, he should be allowed to testify as an expert." *Id*. at 1162. The 702 Motion in this case is requesting that this Court determine if this witness qualifies based upon Rule 702. Defendants fail to understand how citing this case is relevant to Plaintiffs' argument. Plaintiffs include a footnote in their response that states "Kalmanson must be considered an expert when viewed under the lens of approved 'detective experts' in the 7th Circuit" and ask this Court to refer to *United States v. Shankle*, 756 F. App'x 633 (7th Cir. 2019). (Dkt 102 at 24). Again, Defendants fail to understand how this case is relevant to support Mr. Kalmanson's qualification to serve or not serve as an expert. *Shankle* is an order granting a motion to withdraw and dismissing an appeal. Defendants assert that these citations included for the assumed purpose of persuading this Court to allow Mr. Kalmanson to testify because this court should not rule on qualification and instead allow a jury to determine credibility should be disregarded by this Court because they provide no relevant support to Plaintiff's argument.

## CONCLUSION

Mr. Kalmanson's opinions are formed on the basis of incomplete information and presented as an expert opinion. Mr. Kalmanson is not an expert in the reptile trade by any means and certainly not qualified to opine on the values derived from the purchase, sale or breeding of reptiles. Mr. Kalmanson is an insurance salesman who happens to work with animals. He has provided no scientific or nonscientific experience or knowledge to establish a foundation for his report or testimony. Mr. Kalmanson is not qualified to invent a formula to assign value to reptiles he has no personal and very little professional knowledge of. Mr. Kalmanson's

12

experience in a variety of enterprises are unrelated to any relevant experience in the buying, selling, marketing or breeding of reptile species and his report and testimony should be stricken.

Dated and signed at Milwaukee, Wisconsin this 17th day of August, 2020.

TEARMAN SPENCER
City Attorney


s/Heather Hecimovich Hough\_\_\_
HEATHER HECIMOVICH HOUGH
Assistant City Attorney
State Bar No.1092637
JENNY YUAN
Assistant City Attorney
State Bar No. 1060098

ADDRESS:
Room 800, City Hall
200 East Wells Street
Milwaukee, WI 53202
(414) 286-2601
Fax: (414) 286-8550

Assistant City Attorney
Attorneys for Defendants
City of Milwaukee, Paul Felician, Phil Simmert

1032-2016-1146/270015