**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

       Plaintiffs,

v.                               Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

       Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Defendants, the City of Milwaukee, Paul Felician ("Felician"), and Phil Simmert II ("Simmert"), by their attorney, Tearman Spencer, City Attorney, by Heather Hecimovich Hough, Assistant City Attorney and by Jenny Yuan, Assistant City Attorney, hereby submit this brief in support of their motion for summary judgment to dismiss plaintiffs' Amended Complaint in its entirety. Defendants are entitled to summary judgment based on the undisputed facts in this case.

Alternatively, if the Court does not grant summary judgment dismissing this entire matter, this Court should dismiss all of the following claims:

1.     Dismiss all property damage claims at all four properties subject to this lawsuit identified by plaintiffs as: (1) 2319-2323 South 13th Street, Milwaukee, Wisconsin ("13th Street"), (2) 3443 South 17th Street, Milwaukee, Wisconsin ("17th Street"), (3) 3401 South 16th Street, Milwaukee, Wisconsin ("16th Street"), and (4) 3348

South Kinnickinnic Avenue, Milwaukee, Wisconsin ("KK property"); or alternative to this;

2.   Dismiss all property damage claims at the 17th Street property; and

3.   Dismiss any and all claims for damages related to the alleged seizure or destruction of personal property.

Further, if the Court does not grant summary judgment dismissing this entire matter, this Court should dismiss all of the following defendants: (1) Simmert, (2) Jane and John Doe(s), and (3) ABC Insurance Company.

## PROCEDURAL BACKGROUND

Defendants previously filed a motion for summary judgment based upon qualified immunity on September 11, 2017, prior to any substantive discovery being conducted.[1] (DPFOF 5.) On May 15, 2017, plaintiffs stipulated to bifurcate the matter so that defendants could file a motion for summary judgment, to avoid incurring unnecessary discovery costs in the event defendants prevailed at summary judgment. (DPFOF 4.)

On January 24, 2019, Magistrate Judge Jones granted defendants summary judgment on Plaintiffs' Fourth Amendment probable cause claim, plaintiffs' due process claims and plaintiffs' municipal liability claim. (DPFOF 6.) The only remaining claims were plaintiffs' Fourth Amendment claim alleging Felician and/or Simmert exceeded the search warrant by seizing all animals on the premise, seizing firearms and other personal property, and excessive damage to the properties. (DPFOF 6.) Plaintiffs also claim damages associated with the seizure of the animals and permanent loss of possession of the animals. (DPFOF 13.)

---

[1] One deposition was conducted in July, 2017 before defendants filed for summary judgment on September 11, 2017. (DPFOF 5.)

On March 22, 2019, defendants filed a motion for partial summary judgment seeking to limit damages related to the animals seized and lost profits. (DPFOF 7.) Defendants argued that the *Rooker-Feldman* doctrine applied and thus the Court did not have subject matter jurisdiction. (DPFOF 7.) On June 14, 2019, Magistrate Judge Jones denied defendants' motion for partial summary judgment to limit compensatory damages (DPFOF 8.)

Discovery is mostly complete in this case. (DPFOF 9.) There are two additional depositions scheduled to take place by October 8, 2020 that, due to scheduling conflicts, could not be scheduled prior to the filing of this summary judgment motion. (DPFOF 9.) However, the plaintiff, Terry Cullen ("Cullen"), has been deposed, along with defendants Felician and Simmert and a number of other fact witnesses. (DPFOF 9.) This case is ripe for summary judgment.

Plaintiffs are claiming Felician and Simmert violated their Fourth Amendment right to be free from unreasonable seizure when search warrants were executed in May, 2010 and animals were seized, personal property was allegedly taken, and unreasonable damage caused to the four properties in question. (See DPFOF 13.) Three search warrants are at issue in this case. A search warrant was obtained for the 13th Street property and the 17th Street property ("13th/17th Street Warrant"). (DPFOF 30.) A search warrant was obtained for 16th Street ("16th Street Warrant") and the KK property ("KK Warrant"). (DPFOF 69, 72.) Animals were only seized from 13th Street and 17th Street. (See DPFOF 51-54, 62-68, 70, 73.)

Now that pertinent discovery is complete the undisputed facts will show that Felician and Simmert executed a valid search warrant in May of 2010 at 13th Street and 17th Street and all animals were lawfully seized. Any damage to the four properties during the execution of the search warrants was reasonable. Furthermore, there is no evidence that defendants Felician or Simmert personally caused excessive damage to any of the properties, or witnessed anyone

3

causing excessive damage to any of the properties so as to have an opportunity to intervene. There is no evidence that Felician or Simmert personally damaged or took personal property or witnessed anyone damaging or taking personal property so as to have an opportunity to intervene. Defendants are entitled to summary judgment.

## SUMMARY JUDGMENT IS APPROPRIATE

Summary judgment is appropriate under Fed. R. Civ. P. 56 when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimac Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990), or upon conclusory allegations in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989), as long as the inferences are reasonable, *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir. 1989). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Local 1545, United Mine Workers v. Inland Steel Coal Co.*, 876 F.2d 1288, 1293 (7th Cir. 1989). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is proper against a plaintiff who fails to establish an element of his claim on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

Based upon the material undisputed facts in this case, after extensive discovery, no reasonable jury could find in favor of the plaintiffs. This is the type of case for which the summary judgment procedure is designed. Motions for "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

## ARGUMENT

### I. SEIZURE OF ALL ANIMALS DID NOT VIOLATE PLAINTIFFS' FOURTH AMENDMENT RIGHTS.

#### A. Substantive Law: Search Warrants Were Valid.

The search warrants in this case were valid. "Searches undertaken pursuant to valid search warrants are presumptively valid." *Archer v. Chisholm*, 870 F. 3d 603, 613 (7th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). A valid search warrant must: (1) be issued by a neutral and disinterested magistrate; (2) establish probable cause that the evidence sought will help in obtaining a conviction of a particular offense; and (3) describe with particularity the things to be seized and the place to be searched. *Archer*, 870 F. 3d at 614 (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)).

Even if one of those three elements is missing, a police officer is still entitled to qualified immunity if the officer is acting pursuant to a search warrant that was authorized by a judge, and his action is reasonable. *Archer*, 870 F. 3d at 614 (citing *United States v. Leon*, 468 U.S. 897, 920-21 (1984)); *Messerschmidt v. Millender*, 565 U.S. 535, 546-48, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012). An officer may only face liability for damages when the officer seeks or obtains a warrant that is so lacking in evidence supporting probable cause, that any reliance that

probable cause exists is unreasonable. *Archer*, 870 F. 3d at 614 (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)); *Messerschmidt*, 565 U.S. at 546-48.

Magistrate Judge Jones found that the search warrants were supported by probable cause. (DPFOF 6.) According to Magistrate Judge Jones, even if the search warrants lacked probable cause, the individual defendants were entitled to qualified immunity because the affidavits in this case were not so deficient on their faces "that any reasonable well-trained officer would have known that probable cause was lacking." (DPFOF 6.)

In his January 24, 2019 decision, Magistrate Judge Jones did note that the search warrants in this case "also listed spiders and other reptiles (including but not limited to pythons, anacondas, and turtles) without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities." (DPFOF 6.) In denying defendants' motion for summary judgment based on qualified immunity, prior to any substantive discovery being conducted, Magistrate Judge Jones left for trial plaintiffs' claim that defendants' exceeded the scope of the search warrant when defendants' seized of all animals found at 13th Street and 17th Street. (DPFOF 6.)

After extensive discovery, the factual basis for what was listed in the search warrants in this case and supporting the reasons for seizing all the animals have been fully developed. Simmert did have factual basis to believe that all items listed on the search warrant for 13th Street and 17th Street ("13[th]/17[th] Street Warrant") were supported by probable cause of a crime and he listed and described the animals as specifically as he could. (DPFOF 17-33.) However, even if this Court were to find that one of the three elements for a valid warrant was missing, the 13th/17[th] Street Warrant was authorized by a disinterested court commissioner and it was reasonable for the Felician and Simmert to rely on the warrant. (DPFOF 35, 69, 72.) Once inside 13th Street and 17th Street, Felician and Simmert lawfully seized all the animals based on what

6

they observed, the recommendation of the animal experts on scene, and the totality of the facts presented to them.

## 1. The 13th/17th Street Warrant Meets the Particularity Requirement of the Fourth Amendment.

The 13th/17th Street Warrant was signed and authorized by a Milwaukee County Court Commissioner. (DPFOF 35.) This warrant was issued by a neutral magistrate. See *Messerschmidt*, 565 U.S. at 546-48; *Archer*, 870 F. 3d at 614. Magistrate Judge Jones already ruled that the warrants at issue in this case were supported by probable cause. (DPFOF 6.) However, Magistrate Judge Jones questioned the inclusion of spiders, snakes and turtles "without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities." (DPFOF 6.)

"Although the [F]ourth [A]mendment requires that a search warrant describe the objects of the search with reasonable specificity, it need not be elaborately detailed." *Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005), *quoting United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir 1995), *quoting United States v. Somers*, 950 F.2d 1279, 1285 (7th Cir. 1991). "The level of specificity must be such … that the officers executing the warrant are able to identify the things to be seized with reasonable certainty." *Id*. "If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized*." Id. quoting United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998).

Simmert did have facts supporting probable cause to believe that snakes, spiders, and turtles could be located at either the 13th Street or 17th Street properties contrary to Wisconsin Statute § 29.604. (DPFOF 33.) Simmert specifically listed python or anaconda snakes, spiders, and turtles, among other objects as subject to the 13th/17th Street Warrant based on the witness statement regarding what she saw when she was at 13th Street and 17th Street and based on

7

discussing the facts of this case with Nick Blankenheim, a Conservation Warden with the Wisconsin Department of Natural Resources ("DNR"), who stated that people who keep illegal animals do not typically keep just one illegal animal, but usually if someone is keeping an illegal animal, there are multiple illegal animals being kept. (DPFOF 33.) Simmert did not have any expertise pertaining to snakes, spiders, and turtles. (DPFOF 33.)

Simmert had reason to believe that Cullen had in his possession animals in violation of the Wisconsin Statute governing endangered species. (DPFOF 17-25, 28-29, 33.) He had probable cause to believe that Cullen had Chinese Alligators contrary to Wis. Stat. § 29.604(4)(a). (DPFOF 6, 17-19, 25, 28-29.) Simmert sought out assistance from the Wisconsin DNR Conservation Warden, Nick Blankenheim, because of the warden's specialized training and knowledge. (DPFOF 25, 31.) Simmert did not have any expertise pertaining to snakes, spiders, and turtles. (DPFOF 33.) He had probable cause to believe that Cullen illegally possessed Chinese Alligators, and also kept large, 20-foot anacondas and other snakes, turtles, and spiders. (DPFOF 18-19, 21, 25.) Simmert reasonably relied upon DNR Warden Blankenheim's statement that people who keep illegal animals normally keep multiple illegal animals. (DPFOF 33.) Simmert was as specific as he was able to be when listing python or anaconda snakes, spiders, and turtles in the 13th/17th Street Warrant as he had probable cause that the Milwaukee Police Department ("MPD") would find evidence of snakes, spiders, and turtles being kept contrary to Wis. Stat. § 29.604. (DPFOF 33.)

This case is analogous to the Seventh Circuit's *Russell v. Harms* case upholding a search warrant that was broad enough to allow police officers to seize **legally owned** as well as potentially stolen video tapes and video games. See *Harms,* 397 F.3d at 461. In *Russell v. Harms,* based upon information that Russell had no legal right to possess tapes or video games from a video store, a judge issued a warrant allowing Illinois State Police to search plaintiffs' home and

seize "Video tapes, Nintendo games, written records of sales, computer, computer documents, bank records, e-mail records relating to E-bay auctions and Financial records relating to E-bay auctions." *Harms,* 397 F.3d at 461. While executing the warrant, officers seized boxes containing hundreds of videotapes and Nintendo games, as per the warrant. Officers also seized CDs, DVDs and non-Nintendo games and equipment found comingled with the videotapes and also nearby. *Id*. at 462. Ultimately, plaintiffs in this case were not charged. *Id* at 462.

In *Harms*, plaintiffs filed an action under § 1983 and asserted that the warrant was unconstitutionally overbroad because it "would not enable an officer reading it to differentiate between those items subject to the warrant and property lawfully possessed." *Id*. at 464. Plaintiffs claimed that the warrant "did not catalogue the individual movie and game titles allegedly stolen" from a video store and allowed officers to seize any and all videotapes and games, with no meaningful limits, found in plaintiffs' property. *Id* at 464. Plaintiffs also contended that officers exceeded the scope of the warrant by seizing DVDs, CDs, blank videotapes and non-Nintendo games that were not listed in the warrant. *Id*. at 464. The Seventh Circuit held that "the warrant gave the officers as much guidance as was feasible." *Id*. at 464 (citing *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998)). The Seventh Circuit in *Harms* held that defendants did not violate plaintiffs' rights under the Fourth Amendment and affirmed the district court's decision. *Id*. at 468.

"[A] warrant must explicate the items to be seized only as precisely as the circumstances and the nature of the alleged crime permit." *United States v. Vitek Supply Corp*., 144 F.3d 476, 481 (7th Cir. 1998) *citing United States v. Shoffner,* 826 F.2d 619, 630 (7th Cir. 1987). In this case, there were no readily discernable characteristics that a reasonable officer could use to more specifically identify species of animals they may find at the properties subject to the warrants.

9

(See DPFOF 33.) The objects to be seized identified in the 13th/17[th] Street Warrant were particular enough to satisfy the requirements of the Fourth Amendment.

### 2. Reasonable Reliance on the Warrant Signed by a Milwaukee Court Commissioner.

The United States Supreme Court has held that an officer may reasonably rely on a judge who advises said officer that the search warrant is valid. See *Massachusetts v. Sheppard*, 468 U.S. 981, 989-90, 104 S. Ct. 3424, 3428–29, 82 L. Ed. 2d 737 (1984); *Messerschmidt*, 565 U.S. at 546-48; *Leon*, 468 U.S. at 920-21. "[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Sheppard*, 468 U.S. at 989-90.

In *Sheppard,* a police detective sought a search warrant authorizing a search of a residence for evidence of a homicide. *Id.* at 985. Having difficulty finding the appropriate application form, the detective used a form related to controlled substances. *Id.* He made changes to the form as he felt necessary but reference to "controlled substance" was not deleted from the warrant application that when signed would be the warrant itself. *Id.* The detective presented the application to a judge and informed him that he made changes to a standard form and reviewed the application with the judge. The judge reviewed it, made some changes and signed the warrant. *Id.* at 986. A trial judge concluded that this warrant did not conform with the particularity requirement of the Fourth Amendment. *Id.* at 987. The U.S. Supreme Court in *Sheppard* examined the issue of whether the detective **reasonably** believed that the search conducted was authorized by a valid warrant. *Id.* at 988. The *Sheppard* court determined that there was an "objectively reasonable basis for the officers' mistaken belief." *Id.* at 988. The Court opined, "If an officer is required to accept at face value the judge's conclusion that a warrant form is invalid, there is little reason why he should be expected to disregard assurances

that everything is all right, especially when he has alerted the judge to the potential problems." *Id*. at 990.

The fact that a neutral magistrate has issued a warrant does not conclude the inquiry into objective reasonableness. *Messerschmidt*, 565 U.S. at 547. The U.S. Supreme Court has recognized a narrow exception to when an officer is shielded from liability for relying on a warrant signed by a magistrate. *Id*. When it is blatantly obvious that no reasonably competent officer would have believed the warrant was valid, for example, when the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. (quoting *Leon*, 468 U.S. at 923) (internal quotation marks omitted)).

The threshold for meeting this exception is a high one. *Messerschmidt*, 565 U.S. at 547. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id*.

In this case, Simmert applied for the 13th/17th Street Warrant. (DPFOF 30-36.) Prior to taking the warrant to a court commissioner for signature, Simmert spoke with Assistant District Attorney Sara Lewis multiple times while putting together his Affidavit and Search Warrant for the 17th Street and 13th Street properties. (DPFOF 34.) Based on his investigation, which included speaking with Jennifer R., reviewing photographs she purportedly took while inside 17th Street and 13th Street, conducting his own internet research, speaking with DNR Warden Blankenheim, Simmert drafted his Affidavit, dated May 12, 2010, in support of the 13th/17th Street Warrant. (DPFOF 34.) After drafting the Affidavit, Simmert met with ADA Lewis again and discussed this matter at length in person. (DPFOF 34.) ADA Lewis identified the Wisconsin

statute, Wis. Stat. § 29.604, which she believed applied to the facts detailed in Simmert's Affidavit. (DPFOF 34.)

After meeting with ADA Lewis and after she reviewed his Affidavit and the 13th/17th Street Warrant and approved of both, Simmert took his Affidavit and the 13th/17th Street Warrant to a Milwaukee County Court Commissioner for review and signature. (DPFOF 35.) On May 12, 2010, Simmert reviewed his Affidavit and read Wis. Stat. § 29.604 with Milwaukee County Court Commissioner David Sweet. (DPFOF 35.) After Simmert reviewed his Affidavit and Wis. Stat. § 29.604 with Commissioner Sweet, Commissioner Sweet consulted with another individual before signing the 13th/17th Street Warrant. (DPFOF 35.)

Based on these undisputed facts, this Court should find that Simmert reasonably relied upon a search warrant authorized and carefully considered by the Milwaukee Court Commissioner. Simmert, a Sensitive Crimes Detective, was not an exotic animal expert or familiar with the law related to endangered species. He consulted with a DNR Conservation Warden and the Assistant District Attorney prior to presenting his affidavit to the Court Commissioner and conferred with the Court Commissioner upon the warrant request. Simmert reviewed the relevant Wisconsin state statute with the Commissioner and observed the Commissioner who signed the warrant consult with yet *another* individual. Simmert took all reasonable steps to ensure that the 13th/17th Street Warrant was valid. There is nothing "blatantly obvious" about the 13th/17th Street Warrant that would cause a reasonable officer to question its validity. See *Messerschmidt*, 565 U.S. at 547. This Court should conclude that the warrant did not run afoul of the Fourth Amendment because Simmert reasonably relied upon the conferral with and review by the signing Commissioner.

B.     **Substantive Law: Seizure of All Animals Was Lawful.**

Defendants now address those animals and property that were seized that were not explicitly listed as part of the 13th/17th Street Warrant. Plaintiffs assert that Felician and Simmert violated their Fourth Amendment rights by seizing the entire animal portfolio. Plaintiffs claim that removing all the animals from 13th Street and 17th Street went beyond the scope of the warrant.

The animals were seized for one or more of the following valid and constitutional reasons:

1.     Legal authority of the warrant;

2.     Dangerous nature of the animals;

3.     Safety of the community;

4.     Safety of the animals themselves based upon conditions and consultation with animal experts;

5.     When the property was placarded and deemed uninhabitable by the City of Milwaukee Department of Neighborhood Services, the MPD had a duty to remove the animals because they could not be left without care.

(DPFOF 44, 46, 53-54, 64-68.)

At his deposition, Felician was asked to state the legal basis for seizing all the animals.

Felician testified as follows:

> I can tell you this, that the reasons present were, one, the legal authority of the warrant, and two, …what we perceived to be the dangerous nature of the animals and for safety of the community at large.
>
> There were also concerns for safety of the animals themselves for the conditions in which they were being held. Then probably lastly I would say that once we looked at that property [13th Street] and DNS was called and looked at the property and basically condemned it as unfit for habitation, you're now faced with living animals, and you can't leave them there without care.

13

(DPFOF 68.)

1. **Lawful Seizure of animal inventory and property based upon State Law**

At the time of the execution of the 13th/17[th] Street Warrant, defendants were aware that certain MPD operating procedures were in place regulating the seizure of property. Directly related to this lawsuit, Standard Operating Procedure ("SOP") 3/560, Property, provided instructions to police officers at the time of the warrants.    3/560.3  Officer/Detective Responsibilities (B) and (C) provide, in part:

> B.      Seizure of property is limited to contraband, instrumentalities of a crime, fruits of a crime, or evidence of a crime.  The Fourth Amendment to the Constitution provides a high degree of protection for individuals from searches and seizures made by police officers.  Searches and seizures carried out by officers, without a warrant, must be clearly justified by the officer as falling into one of the well-defined exceptions to the Fourth Amendment warrant requirement.   All officers are required to be familiar with the "Wisconsin Law Enforcement Officers Criminal Law Handbook"…. Content regarding "Search and Seizure" for this section…
>
> C.      Personal property … is subject to seizure and forfeiture under Wis. SS 973.075 through 973.077….

(DPFOF 97.)

Further, as referenced in SOP 3/560 (C), Wisconsin statute section 973.075(2)(c) provides:

> 2)      A law enforcement officer may seize property subject to this section upon process issued by any court of record having jurisdiction over the property….seizure without process may be made under any of the following circumstances:
> c)      *The officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety*.  (Emphasis Added).

(DPFOF 97, 99.)

Simmert was given information that exotic animals were housed in the properties potentially in violation of Wisconsin endangered species laws. (DPFOF 17-19, 25, 28-30, 33.) When he and Felician arrived at the first property, 13th Street, the conditions were such - poor lighting, putrid smells, hoarding conditions and hundreds of animals in various containers - that

14

in order to determine which animals were subject to the 13th/17[th] Street Warrant, *all* of the animals needed to be removed, at the very least to identify their species to determine if they should be seized based upon the warrant. (DPFOF 65.)  Animal experts on scene were informing them that the animals were mistreated. (DPFOF 54, 66-67.) They believed Cullen was out of town for weeks. (DPFOF 26, 68.) They knew that the only tenant at 13th Street, Jane Flint, had been taken into custody; and in fact, had asserted she did not care for animals other than dogs. (DPFOF 27, 68.)  During the initial execution, DNS deemed the 13th Street property uninhabitable. (DPFOF 44, 46.)

Based upon their knowledge that the 13th Street property was placarded and no one would be allowed to care for the animals within the property, that Cullen was out of town, that the animals may have been neglected or mistreated, Felician believed they had a duty to remove all of the animals. (DPFOF 68.)  Under the totality of these circumstances, officers would reasonably believe that the animal portfolio in its entirety was a danger to the health and safety of the community if left unattended within the property, or, if left unattended within the property, dangerous for the health and safety of the live animal portfolio itself.

As it relates to the personal property that was seized and inventoried (guns and ammunition) (DPFOF 13), Defendants assert that qualified immunity applies for the very same circumstances Simmert and Felician were faced with when determining that all animals should be removed.  Neither Felician nor Simmert recall personally seizing guns. (DPFOF 110, 112.) Simmert has asserted that if guns were seized, it was not for evidentiary or incriminating use; but instead, for safekeeping because the items were of value and could cause harm (DPFOF 112.) Felician and Simmert believed that Cullen was out of town for weeks. (DPFOF 26.) The areas where his properties were searched for evidence were believed to be unoccupied.

The guns that were seized in this case were returned. (DPFOF 129.) Any damages related to the seizure of inventoried guns is nominal.

C.    **Qualified Immunity.**

    1.    **Qualified Immunity Standard.**

If this Court finds that neither Felician nor Simmert are entitled to summary judgment as to seizure of the entire animal inventory and personal property that was inventoried, such as guns and ammunition, on the merits, Felician and Simmert are still entitled to qualified immunity.

The threshold question of qualified immunity is properly resolved on summary judgment because its analysis is ostensibly objective. *See Rakovich v. Wade*, 850 F.2d 1180, 1203-04 (7th Cir. 1988), *abrogated on other grounds Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Qualified immunity shields government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was a clearly established right that a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity thus "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt*, 565 U.S. at 546 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).

When determining whether qualified immunity applies, the court must examine "whether the legal norms governing [the government official's] behavior were clearly established at the time of the challenged actions." *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991) (brackets in original) (quoting *Wrigley v. Greanias,* 842 F.2d 955, 958 (7th Cir.1988)). The plaintiff always bears the burden of establishing the existence of a clearly established constitutional right by the public official. *Burritt v. Ditlefsen,* 807 F.3d 239, 249 (7th Cir. 2016); *Clash v. Beatty,* 77 F.3d 1045, 1047 (7th Cir. 1996).

16

An officer has not violated a clearly established right unless under the facts facing the officer, it would be clear to any reasonable officer that he was violating that right. See *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015); *Ashcroft,* 563 U.S. 731, 741. In *Sheehan*, the Supreme Court stated that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." 575 U.S. at 1776.

The right at issue "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz,* 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added).

The Seventh Circuit has cautioned "against interpreting the 'clearly established law' requirement too broadly and substituting general propositions of law for cases that are factually similar enough to apprise the officers of the contours of the constitutional protections due in the situation," *Williams v. Indiana State Police Dep't,* 797 F.3d 468, 475 (7th Cir. 2015). To defeat qualified immunity, a plaintiff must be able to point to a case which would have put the officers on notice that their conduct was constitutionally impermissible. See *Williams*, 797 F 3d at 480. Absent such a showing, government actors cannot be said to have had a "fair and clear warning of what the Constitution requires" and would correspondingly be entitled to qualified immunity. *Id*. at 475.

## 2.   <u>Facts Support Qualified Immunity In this Case</u>.

Neither Simmert nor Felician are experts when it comes to the animals at issue in this case – 20 foot anacondas, alligators, crocodiles, turtles, spiders – and other non-domesticated animals. Simmert and Felician reasonably relied upon the expertise, opinion, and guidance from animal experts from MADACC, DNR, Racine Zoo, and the Milwaukee County Zoo regarding the conditions of the animals. According to the animal experts on scene at 13th Street and 17th Street, the animals were not in good condition and needed to be removed. (DPFOF 54, 66-67.)

Simmert and Felician were also confronted with the unsanitary environment at 13th Street. Based on the condition of 13th Street it was declared to be a public safety hazard and health hazard and was determined to be unfit for human or animal habitation. (DPFOF 43.) DNS issued an Emergency Placard Order for the property. (DPFOF 44.) This order required occupants to vacate the premises immediately and keep the premises vacated until conditions were corrected that caused the property to be placarded. (DPFOF 46.) Due to the health and safety hazards, it was not reasonable to have any MPD officer remain in the premises until proper safety equipment and lighting could be brought to the scene. (DPFOF 43.)

Furthermore, the cluttered, noxious environment at 13th Street made it impossible to determine what animals were subject to the warrant without removing them from the premises and having the animal experts help identify the animals. (DPFOF 65.) There were hundreds of animals, stacked in containers, or housed in large metal containers, the size of large horse troughs, next to each other. (DPFOF 65.) The large metal containers were so close together, it would have been impossible to see what type of animal was inside the containers in the back without first removing the container in front. (DPFOF 65.) The MPD needed the assistance of the animal experts to identify the animals and determine each animal's condition and whether it fell under Wis. Stat. § 29.604. (DPFOF 65.) There was not enough room in the cluttered space of

18

13th Street to accommodate all the various reptile and animal experts. (DPFOF 65.) The animal experts had different expertise, some were snake experts and some were experts in crocodilians, so in order to determine which animals were subject to the Search Warrant, the MPD had to remove them so they could be properly examined and identified by the specific animal expert. (DPFOF 65.)

For 17th Street, the MPD relied on the advice and guidance of the animal experts on scene, including the DNR and the Milwaukee Area Domestic Animal Control Commission ("MADACC") personnel when removing animals. (DPFOF 53.) While at the 17th Street property, it was relayed to MPD by various animal experts on scene that the animals were not in good condition and needed to be removed. (DPFOF 54.)

The officers were also concerned with the health and safety of the animals if left in the premises. The purported owner, Cullen, told Simmert he was out of town for 2-3 weeks, the only tenant at 13th Street was arrested on scene and also informed Simmert she only cared for the dogs, and the 13th Street property was being boarded up by the DNS, preventing anyone from going back into the premises until conditions were corrected according to the Emergency Placard Order. (DPFOF 26, 44.) The officers could not reasonably leave these animals in the premises believing there was no one available to care for the animals. (DPFOF 68) The officers were also faced with the potential public safety risk to the community. (DPFOF 68) The officers perceived these animals to be dangerous in nature and removed them, in part, to ensure community safety. (DPFOF 68.)

Under these unique and compelling facts no reasonable officer would have believed they were violating the plaintiffs' constitutional right when seizing all the animals. The animals were seized in accordance to the valid warrant, at the recommendation of animal experts who believed the animals to be mistreated, guiding department SOPs, and Wisconsin State Law and based on

19

the facts confronting the officers at the scene. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* at 202. Qualified immunity protects Felician and Simmert under these facts. Arguably, Felician and Simmert followed all laws and duties in seizing the animal portfolio, but, if not, any mistake they made would be the mistake of a reasonable person. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60-61, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014), *quoting Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949). Qualified immunity allows for mistakes, "[t]he limit is that 'the mistakes must be those of reasonable men.'" *Heien* at 61, *quoting Brinegar,* at 176, 69 S. Ct. 1302.

## II.    DISMISSAL OF DEFENDANTS

Defendants also move this Court to dismiss Simmert. While Simmert obtained the initial warrant (13th/17[th] Street Warrant), he was not present at all properties on all days and had no supervisory role to play in the execution of the warrants or the seizure of property. (DPFOF 38, 100.) Simmert was not tasked with the inventory of seized property at the 13th Street property where the bulk of personal property was seized. Plaintiffs have been unable to pinpoint Simmert's personal involvement for any of their allegations. Because Simmert is not personally liable, did not participate in or witness any destruction or removal of property and therefore had no duty to intervene, he should be dismissed as a Defendant.

Defendants move this Court to dismiss "Jane and John Doe[s]" or "ABC Insurance Company" as defendants in this case. Trial for the matter is scheduled to begin December 14,

2020. (DPFOF 129.) It is long past time for plaintiffs to have amended their pleadings to add any additional parties.

III.   **DAMAGES**

   A.   **Dismissal of All Property Damage Claims and Alleged Uninventoried Personal Property**

Plaintiffs claim that Felician and Simmert caused unreasonable property damage to the four properties where the warrants were executed. Plaintiffs further allege that Felician and Simmert are liable for the seizure of uninventoried personal property beyond the scope of the warrant. However, Plaintiffs have stipulated to not having any evidence regarding who caused the alleged property damage to the four properties in question. (DPFOF 122-123.) Plaintiffs also admit to not knowing the identity of the person or persons who allegedly took personal property from or caused damage to personal property located at 13th Street, 17th Street, KK, or 16th Street at issue in this lawsuit. (DPFOF 124.)

"To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir. 1994)). Individually named defendants cannot be personally liable under a theory of *respondeat superior. Gentry*, 65 F.3d at 561 (citing *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988)). The personal responsibility requirement of a section 1983 claim is satisfied if the constitutional deprivation occurs at the individually named defendant's direction or with his knowledge and consent. *Gentry*, 65 F.3d at 561 (citing *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)). That is, a defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry*, 65 F.3d at 561 (quoting *Jones,* 856 F.2d at 992.) There needs to be some causal connection or affirmative link between the action complained about and

21

the official sued is necessary for § 1983 recovery. *Gentry*, 65 F.3d at 561(citing *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)).

In order to maintain property damage claims against Felician or Simmert, plaintiffs must provide admissible evidence at trial demonstrating that Felician or Simmert were personally involved in causing the alleged excessive property damage to each of these four properties. See *Gentry*, 65 F.3d at 561. Plaintiffs must also provide evidence that Felician or Simmert were personally involved in unlawfully taking personal property if that claim is to survive summary judgment. *Id*.

It is undisputed that plaintiffs were not present during the execution of the 13th/17th Street Warrant at 13th Street on May 12-14, 2010. (DPFOF 115.) It is undisputed that multiple individuals from the Wisconsin DNR, MADACC, the Racine Zoo, the Milwaukee County Zoo, the Milwaukee Health Department, the Department of Neighborhood Services, the Milwaukee Fire Department, along with other MPD personnel were on scene at the 13th Street property during the execution of the search warrant on May 12-14, 2010. (DPFOF 37, 40, 42, 56-60, 66, 125.) It is undisputed that the first time Cullen was inside 13th Street after the execution of the search warrant was approximately one month after the warrant execution. (DPFOF 116.) It is undisputed that multiple individuals from MADACC, the DNR, the MFD were present at 17th Street during the execution of the search warrant on May 12, 2010. (DPFOF 48-50, 126.) Plaintiffs have not identified a single witness and admit that they do not have any evidence that Felician or Simmert caused the damage they are claiming or witnessed the damage they are claiming. (See DPFOF 122-124.)

Both Felician and Simmert have denied causing the property damage claimed by plaintiffs. (DPFOF 102-103, 107.) Simmert did not witness anyone causing damage to the 13th Street property or the 17th Street property during the 13th/17th Street Property Warrant. (DPFOF

22

104.) He did not witness anyone causing damage to the 16th Street property or the KK Property during the execution of the 16th Street Warrant and KK Warrant. (DPFOF 104.) Simmert has no recollection of personal property being removed during the 13th/17th Street Property Warrant that was not inventoried. (DPFOF 101.) Felician personally did not intentionally take or otherwise take and did not observe any other officer intentionally take or otherwise take any property from any of the premises without inventorying all such property; he did not nor did he observe any officer steal any property from any of the locations searched. (DPFOF 110.)

Plaintiffs are unable to provide one scintilla of evidence that Felician or Simmert were personally involved in causing the property damage alleged in this case. Felician and Simmert are entitled to summary judgment as to all alleged property damage and all alleged damage pertaining to personal property or taking of personal property in this case.

B.    **Dismiss 17th Street Property Damages**

If this Court denies defendants request to dismiss any and all claims related to property damage at any of the properties, defendants request that this court consider dismissing claims related to property damage at the 17th Street property because by law, plaintiffs do not own it. The Milwaukee County Register of Deeds recorded deed for the 17th Street Property reflects Jane E. Flint is the recorded owner of 3443 South 17th Street since the recording of a Warranty Deed on December 9, 2005 (DPFOF 82.) A Notice of Injury pursuant to Wis. Stat. § 893.80 (1) (a) was submitted to the City of Milwaukee on September 8, 2010, signed, subscribed and sworn to by Jane Flint and Plaintiff Terry Cullen. The notarized Notice of Injury states "That at all times material hereto, Claimant Jane Flint owned the property located at 3443 S. 17th Street, Milwaukee Wisconsin ("the 17th Street Property")". (DPFOF 83). At the time the Notice of Injury was submitted to the City, Wis. Stat. 893.80 (1) (a) provided:

"Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the … political corporation, governmental subdivision or agency and on the officer, official agent or employe under s. 801.11.  Failure to give the requisite notice shall not bar action on the claim if the … corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant corporation, subdivision or agency or to the defendant officer, official, agent or employe;"

(DPFOF 84.) Wisconsin Statute now provides this same requirement in Wis. Stat. § 893.80 (1d) (a).  (DPFOF 85.)

Jane Flint is not a Plaintiff in this case[2]. In response to a discovery request in July of 2020, Terry Cullen produced a Quit Claim deed dated November 22, 2005 (a date prior to the December 2005 recording of the deed on file with the Milwaukee County Register of Deeds) reflecting that Jane Flint "quit claimed" the 17th Street Property to him. This document was not notarized. (DPFOF 86.). On April 12, 2012, a Mortgage against the 17th Street Property was recorded as Document Number 10103996 with the Milwaukee County Register of Deeds in the amount of $125,955.00 with Jane Flint signing as the sole borrower/Grantor of the mortgage (DPFOF 87.) Thus, two recordings against property exist since Plaintiff Cullen alleges the property was quit claimed to him, a recorded deed recognizing Jane Flint as owner, and a recorded mortgage recognizing Jane Flint as borrower.

Wis. Stat. § 706.08 (1) (a) states:

"Nonrecording, effect.  Except for patents… every conveyance that is *not recorded* as provided by law shall be void as against any subsequent purchaser, in good faith and for a

---

[2] Jane Flint filed a complaint in the Eastern District of Wisconsin on March 24, 2014 (*Jane Flint v. the City of Milwaukee, Milwaukee County, Det. Phil Simmert, Paul Felician, Kenneth Daugherty, Andrew Mourty, Jaimie Hewitt, Gregory Colker and Deputy Sheriff D. Jonas*, Case No. 14-CV-333, Eastern District of Wisconsin) (DPFOF 92.).  The Complaint sought damages based upon actions of officers arising from the 13th Street/17th Street Property Warrant. The Complaint alleged violations rights under the Fourth Amendment to be free from unreasonable seizure based upon the execution of the 13th/17th Street Warrant. (DPFOF 93).  Flint alleged that Simmert, Felician and others violated constitutional rights based upon the execution of the 13th/17th Street Warrant (DPFOF 94).  The Flint Case, 14-CV-333 was dismissed with prejudice based upon a settlement agreement between the parties, stipulation in an Order issued by Judge J.P. Stadtmueller on January 15, 2016. (DPFOF 96)

valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first." [emphasis added].

(DPFOF 88.)

Because Wisconsin is a race to record state, Jane Flint is the lawful owner of the property with standing to assert damage claims for the property itself. Because Jane Flint is not a defendant in this case, this Court should dismiss any and all property damage claims related to the 17th Street Property.

## CONCLUSION

For the foregoing reasons, this Court should grant the defendants' motion for summary judgment, dismissing the plaintiffs' remaining claims with prejudice and with costs.

In the alternative, this Court should dismiss defendants Jane and John Doe(s), ABC Insurance Company and Phil Simmert; dismiss any and all property damage claims at all four properties or the 17th Street Property; and dismiss any and all claims for damages related to the alleged seizure or destruction of uninventoried personal property.

Dated and signed at Milwaukee, Wisconsin this 1st day of October, 2020.

TEARMAN SPENCER
City Attorney

s/ HEATHER HECIMOVICH HOUGH
Assistant City Attorney
State Bar No. 1092637

JENNY YUAN
Assistant City Attorney
State Bar No. 1060098

Milwaukee City Attorney's Office          Attorneys for Defendants
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: hhough@milwaukee.gov                    1032-2016-1146:271058

25