UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

      Plaintiffs,

v.                                         Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

      Defendants.

---

## DECLARATION OF PHILLIP SIMMERT II

---

I, Phillip Simmert II, hereby declare as follows:

1.     I am a Police Detective for the Milwaukee Police Department. I have been employed with the City of Milwaukee, Milwaukee Police Department since August 20, 2001. I was promoted to the rank of Police Detective on March 12, 2006. I was assigned to the Sensitive Crimes Division in October, 2006 until August 22, 2010 when I was transferred to the Criminal Investigation Bureau. I submit this Declaration based upon personal knowledge.

2.     On Friday, May 7, 2010, I along with two other police officers interviewed a woman, Jennifer R., who claimed that Terry Cullen ("Cullen") had sexually assaulted her on February 27, 2010. Jennifer R. stated that: a) she lived in Illinois, b) she had attended a reptile show at the Tinley Park Convention Center which is located in Illinois, c) she met Cullen at the show, d) Cullen represented that he owned a business purportedly dedicated to the protection of

Chinese Alligators and Chinese Crocodiles, and e) Jennifer R. asked Cullen about the possibility of an internship as she was passionate about the species.

3. Attached as **Exhibit 1** is a true and correct copy of a police report I authored on May 14, 2010, pages 1-14, Incident Report No. 101320089. I drafted this report shortly after my interview with Jennifer R. and memorialized details that I believed were pertinent to my investigation.

4. Jennifer R. told me that she traveled to Milwaukee on February 27, 2010 for a trial internship assignment and to meet the animals. She recounted that Cullen took her to a residence, later determined to be 3443 S. 17th Street, Milwaukee, Wisconsin ("the 17th Street property"). Jennifer R. drew a sketch of the residence, including the location of some animals, and told me she saw five 20-foot long Anacondas in a trough in the basement along with what she believed to be Chinese Alligators in small enclosures, which did not permit the animals to move sideways or turn around. She also stated she saw numerous cardboard boxes containing spiders and turtles. Jennifer R. photographed these animals and I viewed the photographs on her computer. In searching the internet, I noted that the photographs taken by Jennifer R. of the alligators at Cullen's residence did have similar characteristics similar to a Chinese alligator.

5. According to Jennifer R., Cullen then took her to 2323 S. 13th Street, Milwaukee, Wisconsin ("the 13th Street property"). She observed an alligator freely roaming inside the 13th Street property. Jennifer R. told me that Cullen repeatedly told her he could not legally possess the creature.

6. Jennifer R. told me that she and Cullen then returned to the 17th Street property where Cullen allegedly sexually assaulted her.

7. I reviewed two City of Milwaukee Ordinances, secs. 78-5 and 78-23, which led me to believe at the time that the City of Milwaukee prohibited keeping of non-domesticated animals (78-5) and dangerous animals (78-23) within the City of Milwaukee. I believed that the size of the anacondas and the nature of the crocodiles fell within these proscriptions and posed a public safety hazard.

8. Based on the information provided by Jennifer R. and my own investigation, I believed that endangered species (Chinese Alligators) were being kept in the City of Milwaukee. I contacted Nick Blankenheim, who was a Conservation Warden with the Wisconsin Department of Natural Resources. DNR Warden Blankenheim did some research and found that Cullen does hold a veterinary certificate, but had no permit to house or breed the previously mentioned animals. DNR Warden Blankenheim also contacted U.S. Fish and Wildlife and was told that Cullen had a breeders permit in Florida, but the permit is not for this specific type of alligator. DNR Warden Blankenheim told me, before the search warrant was executed on May 12, 2010, that the Chinese Alligator is a critically endangered species and that Cullen did not have a permit to breed or house such creatures.

9. I conducted additional investigation and positively identified Cullen and made telephone contact with Cullen by calling his cell phone. Cullen confirmed he is the owner of Cullen Vivarium Nature Sanctuary and stated he resided at the 17th Street property. He also stated he was currently in Connecticut and would not be available to be interviewed for two-three weeks. On May 10, 2010, two days before executing the search warrant at the 13th Street property or 17th Street property, I received a telephone call from Cullen who stated, in part, that he does not keep snakes or alligators or crocodiles in the City of Milwaukee.

10. On Tuesday, May 10, 2010, I spoke with Jane Flint ("Flint"). She stated she worked for Cullen. When I asked her who was responsible for taking care of the animals belonging to Cullen when he was out of town, Flint stated she only cares for the Tibetan Mastiffs.

11. On May 12, 2010, I submitted an Affidavit to the Court and obtained a search warrant for the 13th Street property and the 17th Street property ("13th/17th Street Warrant").

12. I asked DNR Conservation Warden, Nick Blankenheim, for assistance in executing the search warrant at the 13th Street property and the 17th Street property because of the warden's specialized training and knowledge and the presence of alligators and anacondas.

13. As a detective assigned to the Sensitive Crimes Division, I was not a supervisor, nor did I have any supervisory authority during the May, 2010 execution of the search warrants at: (1) the 13th Street property, (2) 17th Street property, (3) the property located at 3401 S. 16th Street, Milwaukee, Wisconsin ("16th Street"), or (4) the property located at 3448 South Kinnickinnic Avenue, Milwaukee, Wisconsin ("the KK property").

14. I specifically listed python or anaconda snakes, spiders, and turtles, among other objects as subject to the Search Warrant based on the witness statement regarding what she saw when she was at the 13th Street property and 17th Street property and based on discussing the facts of this case with the DNR Warden Blankenheim who stated that people who keep illegal animals do not typically keep just one illegal animal, but usually if someone is keeping an illegal animal there are multiple illegal animals being kept. I do not have any expertise pertaining to the various types of snakes, spiders, and turtles. I was as specific as I was able to be when listing python or anaconda snakes, spiders, and turtles in the Search Warrant as I had probable cause that we would find evidence of snakes, spiders, and turtles being kept contrary to Wis. Stat. §

4

29.604.

15. I spoke with Assistant District Attorney Sara Lewis multiple times while drafting my Affidavit and the 13th/17th Street Warrant. Based on my investigation, which included speaking with a witness who appeared credible to me, Jennifer R., and who described various exotic animals to me, conducting my own internet research, speaking with DNR Warden Blankenheim, I drafted the attached Affidavit, dated May 12, 2010, attached as Ex. 2, in support of the attached Search Warrant, attached as Ex. 3. After drafting the Affidavit, I met with ADA Lewis again and discussed this matter at length in person. ADA Lewis identified the Wisconsin statute, Wis. Stat. § 29.604, that she believed applied to the facts detailed in my Affidavit.

16. After meeting with ADA Lewis and after she reviewed my Affidavit and Search Warrant and approved of both, I took the Search Warrant and Affidavit to Milwaukee County Court Commissioner David M. Sweet for his signature. Commissioner Sweet asked that I meet him in chambers to review the statute and my Affidavit. Commissioner Sweet pulled up Wisconsin Statute § 29.604 and reviewed it while I stood next to him, and he at times read portions of the statute out loud. Commissioner Sweet then consulted with another individual prior to signing the warrant on May 12, 2010 at 8:53 a.m.

17. On May 12, 2010 at approximately 1:34 p.m., I along with Felician, MPD Officers Hewitt, Daugherty and Moutry, and accompanied by DNR Warden Blankenheim initiated the execution of the 13th/17th Street Warrant at the 13th Street property.

18. On May 12, 2010, during the execution of the 13th/17th Street Warrant at the 13th Street property, I smelled an overwhelming odor of rotting animals, urine, and animal excrement upon entry into the premises. I observed numerous animals free roaming throughout the residence, including alligators or crocodiles. I saw dead animal carcasses intermingled with live

5

animals. The floor in some places was rotted to the point that the feet of the entry members did penetrate the floor.

19. Personnel from the City of Milwaukee Health Department ("MHD") and the City of Milwaukee Department of Neighborhood Services ("DNS") were also present at the 13th Street property during the execution of the 13th/17th Street Warrant. Based on the condition of the premises it was declared to be a public safety/health hazard and was determined to be unfit for human or animal habitation. Due to the health and safety hazards, it was not reasonable to have any MPD officer remain in the premises until proper safety equipment and lighting could be brought to the scene.

20. The MPD left the 13th Street property after the DNS issued an emergency placard order for the 13th Street property. This order required occupants to vacate the premises immediately and keep the premises vacated until conditions were corrected that caused the property to be placarded. The MPD left after the placarding to return the next day with proper safety equipment, lighting and professional help to deal with the recovery of the animals observed in the residence. The property was sealed and placarded by DNS at 3:40 p.m., approximately two hours after the initial execution of the 13th/17th Street Warrant at the 13th Street property.

21. During the short amount of time the MPD along with other personnel from the MHD, the DNS, and the DNR, were present at the 13th Street property, Conservation Warden Blankenheim positively identified an ornate box turtle in the kitchen. This species is a State of Wisconsin endangered species and thus illegal to possess.

22. On May 12, 2010 at 4:00 p.m., after leaving the 13th Street property, I, along with other MPD officers, the DNR Conservation Warden Blankenheim, and employees from the

6

Milwaukee Area Domestic Animal Control Commission ("MADACC"), John McDowell, Nick Reuland and Erin Riley, were present when the 13th/17th Street Warrant was executed at the 17th Street property.

23. The Milwaukee Fire Department ("MFD") Heavy Urban Rescue Team was also present at the 17th Street property during the execution of the 13th/17th Street Warrant.

24. On May 12, 2010, at least 59 animals were removed from the 17th Street property as follows: One (1) Chinese Water Dragon, ten (10) crocodilians (alligators or crocodiles), two (2) unidentified bugs from the scorpion family, one (1) turtle, six (6) tarantula like spiders, six (6) spiders, unknown type, and one (1) black snake, unknown species, totaling 27 animals from the living areas (kitchen, bedroom, dining room) of the 17th Street Property; five (5) extra-large anaconda snakes estimated between 20-30 feet with an estimated weight of over 200 pounds each, eighteen (18) baby snakes, three (3) red slider turtles, one (1) chicken, one (1) unknown species of snake, one (1) tarantula like spider, one (1) unknown python snake, and two (2) Burmese pythons, totaling 32 animals from the basement of the 17th Street property.

25. At least five (5) of the snakes at the 17th Street property were housed in large metal horse troughs and estimated to be between 20-30 feet and in excess of two hundred pounds each.

26. The MPD relied on the advice and guidance of the animal experts on scene, including DNR and MADACC personnel when removing animals from the 17th Street property.

27. While at the 17th Street Property, it was relayed to MPD by various animal experts on scene that the animals were not in good condition and needed to be removed.

28. The 17th Street property was secured by the MPD at 8:20 p.m.

29. On May 13 and 14, 2010, I, along with other MPD personnel, and numerous

7

animal experts returned to the 13th Street property. MPD relied on the advice and guidance of DNR personnel, MADACC personnel, and other animal experts on scene when removing animals from the 13th Street property.

31. While at the 13th Street property, it was relayed to the MPD by various animal experts on scene that the animals were not in good condition and needed to be removed. Jay Christie from Racine Zoo was at 13th Street property during the execution of the 13th/17th Street warrant and he told me he believed the animals were treated cruelly due to being provided inappropriate housing, unhealthy surroundings, and not being provided water necessary to sustain life.

32. Detective Brant Ungerer obtained a Search Warrant for the address 3401 S. 16th Street, Milwaukee, Wisconsin ("16th Street property"). On May 14, 2010 at 1:40 p.m., I, along with others, executed the 16th Street warrant. No animals were located at the 16th Street property during the execution of the 16th Street warrant. The 16th Street warrant was completed and the 16th Street property was secured at 2:40 p.m. on May 14, 2010.

33. I did not cause any property damage to either the 16th Street property or the KK Street property during the execution of Search Warrants at those properties. I did not witness anyone causing damage to the 16th Street Property or the KK Street property during the execution of the 16th Street Warrant and KK Warrant.

34. The MPD is not the agency responsible for boarding up properties after warrant execution or a determination by the City of Milwaukee Department of Neighborhood Services that a property is uninhabitable.

35. I do not recall any guns being seized in this case. If guns were seized, they would have been seized for safekeeping purposes. As far as the MPD was aware during the execution of

the warrants, the property owner, Cullen, was out of town for two to three weeks and the tenant at 13th Street, Flint, was arrested on scene. The buildings were boarded up after the execution of the warrants. Seizing guns in the premises would safeguard against someone breaking into the premises, taking guns, and causing harm to another with those guns.

36. There were several reasons the MPD removed all the animals found at 13th Street property. First, we were told by the animal experts on scene from various agencies – DNR, MADACC, Racine Zoo – that the animals were not in good condition and needed to be removed. I do not have any expertise in reptiles or the type of animals found at the 13th Street property. However, I recall the premises permeated with a foul smell. I recall seeing animals in containers where they were not able to turn around. I remember seeing animals in brown, filthy looking water. I remember seeing animals that did not appear to be kept in a clean, habitable condition. I recall seeing animal carcasses. I remember seeing an alligator or crocodile with a snout that was deformed and pushed upwards and I remember one of the animal experts stating that could be caused by being kept in too small of a container. Second, we were being told by the Milwaukee Health Department and/or the Department of Neighborhood Services that the premises was unsanitary and therefore, unsafe for us to remain for an extended period of time. I remember being told that we, the police officers, should be wearing a respirator while inside the premises at 13th Street. I witnessed a fellow police officer vomit due to the noxious odors inside the premises. Third, there were hundreds of animals, stacked in containers, or housed in large metal containers, the size of large horse troughs, next to each other. The large metal containers were so close together, it would have been impossible to see what type of animal was inside the containers in the back without first removing the container in front. We needed the assistance of the animal experts to identify the animals we were looking at and determine each animal's

9

condition and whether it fell under Wis. Stat. § 29.604. There was not enough room in the cluttered space of 13th Street to accommodate all the various reptile and animal experts. The animal experts had different expertise, some were snake experts and some were experts in crocodilians, so in order to determine which animals were subject to the Search Warrant, we had to remove them so they could be properly examined and identified by the specific animal expert. Fourth, we knew that the DNS had found the 13th Street property uninhabitable and would not allow persons back in the premises until certain repairs were performed. We could not leave these animals at the premises because no one was going to be allowed into the premises per the DNS order. These animals would still need to be cared for, fed, and cleaned. Lastly, I was concerned with the welfare of the animals as Cullen, their apparent owner, told me he was out of town for 2-3 weeks and his employee, Flint, stated she only took care of the dogs.

I declare under penalty of perjury that the foregoing paragraphs are true and correct.

Dated and signed at Milwaukee, Wisconsin this 1st day of October, 2020.

s/Phillip Simmert II<br>
PHILLIP SIMMERT II

1032-2016-1146/271007