# UNITED STATES DISTRICT COURT
Eastern District of Wisconsin

JANE FLINT,

Plaintiff,

v. Case No. 14-CV-333

THE CITY OF MILWAUKEE, MILWAUKEE COUNTY,
DETECTIVE PHIL SIMMERT, LT. PAUL
FELICIAN, OFFICER KENNETH DAUGHERTY,
OFFICER ANDREW MOURTY, OFFICER JAIMIE A. HEWITT,
OFFICER GREGORY T. COLKER, and DEPUTY SHERIFF D. JONAS,
in their individual capacities,

Defendants.

# Complaint

## I. NATURE OF ACTION

Jane Flint brings this civil action under Title 42 U.S.C. §1983 against The City of Milwaukee, Milwaukee County and Officers Phil Simmert, Paul Felican, Kenneth Daugherty, Andrew Mourty, Jaimie A. Hewitt, Gregory T. Colker, and Deputy Sheriff D. Jonas in order to obtain damages and other appropriate relief for the unlawful search of her residence, the seizure and slaughtering of her dogs and her own unlawful detention which deprived her of the rights secured to her by the Fourth and Fourteenth Amendment to the Constitution of the United States.



EXHIBIT 23

## II. JURISDICTION AND VENUE

### A. Jurisdiction

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

### B Venue

202. The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

### A. Plaintiff

301. The Plaintiff, the Jane Flint, is an adult resident of the State of Wisconsin with the capacity to sue and be sued.

### B Defendants

301. The Defendant City of Milwaukee is a Wisconsin unit of local government, with a principal address of Room 205, 200 E. Wells Street, Milwaukee, WI 53202, with the capacity to sue and be sued in this Court.

302. The Defendant Milwaukee County is a Wisconsin unit of local government, with a principal address of Room 105, 901 North Ninth Street, Milwaukee, WI 53233 with the capacity to sue and be sued in this Court.

303. Defendant Detective Phil Simmert is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Detective Simmert was employed by the Milwaukee Police Department and acting within his scope of employment and under the color of law.

304. Defendant Lt. Paul Felician is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Lt. Felician was employed by the Milwaukee Police Department and acting within his scope of employment and under the color of law.

305. Defendant Tactical Officer Kenneth Daugherty is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Officer Daugherty was employed by the Milwaukee Police Department Tactical Enforcement Unit and acting within his scope of employment and under the color of law.

306. Defendant Tactical Officer Andrew Mourty is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Officer Mourty was employed by the Milwaukee Police Department Tactical Enforcement Unit and acting within his scope of employment and under the color of law.

307. Defendant Officer Jaimie A. Hewitt is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Officer Hewitt

was employed by the Milwaukee Police Department and acting within his scope of employment and under the color of law.

308. Defendant Officer Gregory T. Colker is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Officer Colker was employed by the Milwaukee Police Department and acting within his scope of employment and under the color of law.

309. Defendant Deputy Sheriff D. Jonas, 616, is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times pertinent, Deputy Sheriff Jonas was employed by the Milwaukee Sheriff's Department and acting within his scope of employment and under the color of law.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. By way of background information only, in 2008, the Milwaukee Police Department was investigating a crime in the neighborhood of 13th Street in Milwaukee, and came upon Ms. Flint's residence at 2323 S. 13th Street. Officers noticed that her residence was equipped with video surveillance equipment which may have recorded some aspect of the crime they were investigating, and therefore knocked on the door. Ms. Flint answered the door, answered the officer's questions and allowed them access to her video surveillance equipment, and otherwise assisted the officers in their investigation of a crime in the area.

402. In May of 2010, the properties at 2319-2323 S. 13th St., Milwaukee, were owned by a corporation of which Mr. Terry Cullen was the majority shareholder. Terry Cullen is a business owner who employed himself at the time by contracting with Zoos, Human Societies, and others to rehabilitate and breed reptiles, such as crocodiles, alligators, and snakes. Ms. Flint was his employee and tenant, and was living at the 2323 S. 13th Street property in May of 2010.

403. On May 7, 2010, Detective Phil Simmert and Officer Erwin Estacio took a complaint from a woman regarding Mr. Cullen, whose address was 3443 S. 17th Street. The woman, hereinafter referred to as the "informant," had reported being inside both Mr. Cullen's and Ms. Flint's homes.

404. The informant reported to Detective Simmert that she inquired about the possibility of an internship with Mr. Cullen because she had a deep passion for animals. The informant claimed that during her meeting with Mr. Cullen, he treated her in a sexually inappropriate manner, and that he was illegally handling and keeping various reptiles, including alligators, in various locations.

405. On the same day, May 7, 2010, the informant told Detective Simmert that Mr. Cullen had taken her to Ms. Flint's residence, and the informant provided Detective Simmert with Ms. Flint's phone number.

406. Detective Simmert learned that the phone number was registered to Ms. Flint, and found that Ms. Flint's address was 2323 S. 13th St. The informant did point out to Detective Simmert that the residence where she met Ms. Flint was in fact 2323 S. 13th St.

407. The informant then informed Detective Simmert that when she and Mr. Cullen entered Ms. Flint's residence, she was introduced to four dogs which were claimed to be Tibetan Wolves. The informant told Detective Simmert that the "wolves" were "somehow tamed and trained."

408. The potential presence of four wolves in a Milwaukee residence was of interest to law enforcement, but sometime between May 7 and May 10, 2010, it was established that the animals originally described as Tibetan Wolves by the informant were, in fact, Tibetan Mastiffs. After they were learned to be Tibetan Mastiffs, they were no longer of investigatory concern.

409. On information and belief, Tibetan Mastiffs are an ancient breed, having been in existence as early as 1100 BC, with a life expectancy of over 15 years, and are known for their courageous, even-tempered, calm, thoughtful, and loyal temperaments. Tibetan Mastiffs are some of the most valuable dogs in the world, having fetched prices of 1.5 million dollars or more for a single purebred puppy.

410. On Tuesday, May 10, 2010, at 8:15 p.m., Detective Simmert contacted Ms. Flint by telephone. Ms. Flint verified that she was an employee of Mr. Cullen, and verified her address as 2323 S. 13th St.

411. Detective Simmert asked Ms. Flint if she was responsible for the care of the animals while Mr. Cullen was away. Ms. Flint stated that she was responsible for the care of the Tibetan Mastiffs.

412. Detective Simmert applied for and received a warrant to search 2323 S. 13th Street on May 12, 2010, at 8:53 a.m.

413. The application for warrant stated that Detective Simmert was investigating, pursuant to his official duties, the crime of Endangered and Threatened Species Protected, contrary to Wis. Stat. § 29.604.

414. Wis. Stat. § 29.604 prohibits the taking, transporting, processing, or selling a threatened or endangered species, and provides for a maximum punishment of a forfeiture of not less than $2,000 nor more than $5,000 and/or imprisonment for not more than 9 months, and revocation/prohibition of any hunting permits for three years.

415. The application for warrant stated that, "[u]pon entering the residence of Flint, [the informant] was introduced to four dogs purported to be Tibetan Wolves."

416. The application for warrant stated that Detective Simmert had contacted Nick Blankenheim from the Wisconsin Department of Natural Resources, who confirmed that Mr. Cullen did have a veterinary health certificate but did not have a permit to house or breed the alligators or crocodiles the informant had seen. It stated that Warden Blankenhim contacted a representative of Fish and Wildlife and determined that Cullen did have a breeders permit for reptiles, but it did not cover Chinese Alligators.

417. On May 12, 2010, at 8:53 a.m., Judge Sweet signed the search warrant.

418. Prior to executing the search warrant, Detective Simmert asked Warden Blankenheim to assist with the search pursuant to the warrant he had obtained, since he believed there would be an endangered Chinese Alligator in the residence.

419. Shortly before executing the search warrant, Detective Simmert phoned another employee of Mr. Cullen's named Jesse, and told Jesse that that the police were going to execute a warrant at Ms. Flint's residence on 13th street.

420. Jesse immediately called Ms. Flint, passed on Detective Simmert's message, and gave Ms. Flint Detective Simmert's phone number.

421. Ms. Flint immediately called Detective Simmert and told him she would leave work, and get home as soon as she could. Ms. Flint asked Detective Simmert to please wait so that she could have the opportunity to either confine her dogs or have a friend come and pick the dogs up so that the dogs would not be present during the search.

422. Ms. Flint called her friend, Mr. Davenport, and asked him to also head to her home, in case he was in the area and could get to her house to remove the dogs first. He said he would start heading to her home.

423. In the meantime, on Wednesday, May 12, 2010, at approximately 1 p.m., Conservation Warden Nicholas Blankenheim was meeting with Milwaukee Police Department sensitive crimes detective Lieutenant Paul Feliciano at MPD headquarters to discuss the plan of entry into Ms. Flint's residence at 2323 S. 13th St. based on the search warrant.

424. On May 12, 2010, at 1:34 p.m., Detective Simmert executed the search at 2323 S. 13th St., along with Lt. Paul Felician, Officer Jamie Hewitt, Tactical Officers Kenneth Daugherty and Andrew Mourty from Milwaukee Police Department Tactical Enforcement Unit, and Conservation Warden Blankenheim.

425. MPD tactical officers removed the door off the north side of the residence.

426. Ms. Flint's dogs were barking, but they did not approach the officers, they did not growl or show teeth, and they were wagging their tails.

427. Warden Blankenheim waited to enter until MPD had cleared the first floor.

428. Warden Blankenheim, upon entry into the home, observed some turtles in a glass cage.

429. To the right of the kitchen door, an MPD tactical officer was yelling at the dogs to lie down.

430. After several minutes in the house, Warden Blankenhiem heard the MPD tactical officer yelling for the dogs to get back. Warden Blankenheim heard several shots from an assault rifle and heard MPD officers saying two dogs were down.

431. The dogs were in a retreating position when shot.

432. The shooting of the dogs resulted in blood on the floor in the kitchen's west threshold/doorway leading to the dining room, and throughout both the kitchen and the dining room.

433. Warden Blankenheim walked into the bathroom of the living room where the two dead dogs lay. At this point, Warden Blankernheim exited the home and called Warden Supervisor Rick Reed to request help.

434. Around the same time, 1:45 p.m., the MPD called the Milwaukee Area Domestic Animal Control Council (MADACC) to assist. The call was dispatched at 1:47 p.m., and MADACC personnel arrived at approximately 2 p.m.

435. Ms. Flint pulled up to her residence shortly after she had gotten off the phone with Detective Simmert, as she had promised, and there were multiple squad cars and the MADACC vans had just arrived.

436. Mr. Davenport had also recently arrived and was standing outside of her home.

437. Ms. Flint was denied entrance to her home, and was informed that they had already shot two of the dogs. An officer said, "move her away, she won't want to see this."

438. Ms. Flint turned to her friend, Mr. Davenport, and collapsed in his embrace as she sobbed and told him that the police had shot the dogs.

439. When Ms. Flint raised her head and turned back towards the house, she saw the officers pulling her live dog, Mung, out with a catch noose, and attempting to pull her other live dog, Shombu, with a catch noose, but Shombu got loose.

440. Ms. Flint chased Shombu so that the officers would not shoot her. She heard one officer ask another if they should stop Ms. Flint, but he said, "no."

441. Mr. Davenport ended up catching the Shombu and bringing Shombu back to be turned in.

442. After the chase, Ms. Flint returned to her residence on foot, and spoke with the officers, who decided at that point to arrest her.

443. MADACC officers Donna R. Jacobson, Erin K. Riley, and Nick J. Reuland left the scene just before 4 p.m. with the carcasses of the two dogs MPD Tactical Officers had shot and the two live Tibetan Mastiffs that the MPD had seized.

444. Milwaukee Police Department policy provides:

A. SHOOTING OF ANIMALS

Whenever a police member shoots an animal and there is no personal injury or property damage, and all rounds are accounted for, the member's field supervisor shall conduct the use of force investigation and file the *Use of Force Report* in the AIM system, unless directed otherwise by higher authority. The supervisor shall indicate in the subject tab, the type of animal (i.e., dog, deer, etc.) and fill out the applicable subject details (i.e. injuries, photos, animal breed).

445. Yet, neither Detective Simmert, nor the tactical officers who actually shot the dogs, included in any report the information that their weapons were discharged, that the dogs were struck by bullets, that the dogs died from gun-shot wounds, or anything regarding the fact that dogs were shot and killed by MPD.

446. The Milwaukee Police Department never created any police report or filled out a use of force report after shooting Ms. Flint's dogs.

447. In March of 2011, the Milwaukee Police Department :Lieutenant David A. Salazar, Jr., wrote, "In my review of this criminal investigation I noted that CULLEN alleged that during the execution of the search warrant at 2323 S. 13th St., members of the Milwaukee Police Department shot two dogs. A review of Milwaukee Police Department records reflected that a Use of Force report was not on file for this alleged shooting. Detective MARX reviewed the video documenting the search warrant and although the actual shooting is not captured on the video, the dogs appear to have been shot during the execution of the warrant."

448. However, on information and belief, the officers involved were never disciplined or investigated further for their actions in killing two dogs and/or failing to document the killing of the dogs in a Use of Force report.

**UNREASONABLE DETAINMENT**

449. Ms. Flint was arrested at approximately 3:09 p.m. on May 12, 2010, by Milwaukee Police Officers Hewitt and Colker.

450. Ms. Flint was arrested based on Officer Hewitt's on-the-scene determination that there was probable cause to believe Ms. Flint had violated two misdemeanor provisions of the Wisconsin Statutes, § 29.604 and § 951.02.

451. However, Ms. Flint was not processed and released.

452. Instead of being processed, Ms. Flint was placed in a jail cell for several hours.

453. Ms. Flint was then transported downtown and placed in a holding cell with other women. Ms. Flint was held here for several more hours.

454. Ms. Flint was then transferred to a single-inmate holding cell.

455. On information and belief, Defendants were holding Ms. Flint solely for the impermissible purpose of inducing Mr. Cullen, the true target of the investigation, to turn himself in.

456. On the evening of May 13, 2010, after Ms. Flint had been held for more than 24 hours, Detective Simmert and a female officer came to Ms. Flint's cell and asked

if she wanted to speak with them. Ms. Flint stated that she wanted her attorney. Detective Simmert responded by sending Ms. Flint to the County Jail.

457. On May 13, 2010, at 11:24 p.m., Deputy Sheriff D. Jonas, 616, admitted Ms. Flint to the County Jail.

458. At county jail, Ms. Flint was shackled to a bench.

459. The intake officer noted that Ms. Flint did not have any felony charges, only misdemeanors, yet they had been holding her for over a day. The officers continued to keep Ms. Flint in general holding and finally processed her.

460. There was no reasonable basis for the extremely long delay in processing her, but even after finally being processed, Ms. Flint was not released.

461. In the morning hours of May 14th, Ms. Flint was placed in a cell.

462. Later that day, in the evening of May 14, 2010, Ms. Flint was moved to another pod.

463. On May 14, 2010, at approximately 1:46 p.m., Deputy Sheriff D. Jonas, 616, signed the bail paperwork falsely alleging probable cause was found "per CC Slagle" (meaning Court Commissioner Slagle) on 2 felonies.

464. In fact, the criminal complaint against Ms. Flint was not even filed until May 27, 2010, and Ms. Flint was never charged with a felony.

465. Milwaukee Police Department records indicate that Ms. Flint was arrested on-view on May 14, 2010, at 5:13 p.m. and booked at 5:25 p.m. for felony charges of Viol/Endang/Threat S 29.604 [629 9MU] and Intentionally Mistreat 951.02 [620 1MA].

However, Ms. Flint had already been arrested and held for more than 48 hours at this point.

466. Later in the evening on May 14th, Ms. Flint had visitors who wanted to bail her out, and her bail was set at $15,000.

467. Ms. Flint's friend, Attorney Zigman, arrived with over $10,000 in cash and a credit card with room for the difference between the cash she had on hand and the $15,000 bail.

468. Records show that the $15,000 bail was set for the Wis. Stat. § 29.604 charge, which is a misdemeanor.

469. Records show that the Wis. Stat. § 951.02 charge had a cash bail of $0.

470. Pursuant to County policy, credit cards are accepted for bail payments, and bail payments are accepted 24 hours a day.

471. However, Attorney Zigman was told that Ms. Flint's bail could not be paid with credit cards.

472. Attorney Zigman was informed by the Deputy Sheriff that bail could not be processed after 9 p.m.

473. Attorney Zigman, determined to get Ms. Flint out of jail that evening, left and went to the post office to get a money order, and returned with cash and cash equivalents to bail Ms. Flint out of jail, just in time to have it processed by 9 p.m.

474. Ms. Flint was finally released in the very early morning of May 15, 2010.

475. That same day, Ms. Flint's "charges" pursuant to Wis. Stat. § 29.604 and § 951.02 disappeared.

476. On the evening of May 19, 2010, Ms. Flint was finally able to redeem her two remaining dogs, and paid $166 for each dog, for a total of $332, to MADACC.

477. Based on the May 27, 2010, complaint filed against Ms. Flint, on June 3, 2010, Commissioner Grace Flynn found probable cause for five misdemeanors and two forfeitures stemming from the May 12th search, and set bail at a $10,000 signature bond. On February 3, 2012, all of the May 27th charges were dismissed with prejudice.

478. On July 12, 2010, Ms. Flint was charged with two forfeitures stemming from the May 12th search. Those charges were dismissed on August 24, 2010.

479. Ms. Flint was never charged with a felony.

480. Ms. Flint was never convicted of anything.

481. Following the May, 2010, search and seizure, the DNR's only response with regard to Ms. Flint was to issue, on June 10, 2010, two citations for $543 each, in the mail. One citation was for the possession of two midland painted turtles without a DNR license in violation of Ordinance 169.04(1)(b); the other was for possessing at least seven common snapping turtles without a DNR license in violation of Ordinance 169.04(1)(b).

## V. VIOLATIONS OF LAW

### A. Fourth and Fourteenth Amendments

501. Defendants used excessive force and conducted an unreasonable seizure when they shot Ms. Flint's dogs, in violation of her constitutional rights under the Fourth Amendment to be free from unreasonable seizures and

excessive force. On information and belief, the Defendants who shot and killed the dogs were Tactical Officers Daugherty and Mourty.

502. Defendants Simmert, Felician, Daugherty, Mourty, Hewitt, and Colker acted unreasonably because any danger Defendants felt they faced was created by their own unreasonable conduct in failing to have a plan to address the large dogs whose presence was known for about a week prior to the execution of the warrant, and for failing to wait for Ms. Flint to get home and allow her to lock up or remove her dogs, which she offered to do, prior to their execution of the warrant.

503. The Milwaukee Police Department Defendants intentionally failed to intervene during the unreasonable use of force and seizure, wrongly depriving Ms. Flint of her right to be free from unreasonable seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

504. Defendants employed by the City unreasonably detained Ms. Flint for a time period much longer than it took to accomplish the administrative steps incident to arrest, between 3:09 p.m., on May 12 and 11:24 p.m. on May 13, 2010, when at best there was an officer's on-the-scene determination of probable cause only for misdemeanor charges, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

505. Defendant Jonas continued the unreasonable detainment of Ms. Flint in the County Jail on May 14th and into May 15, 2010, and unreasonably demanded a cash bail of $15,000 and attempted to place other roadblocks to the release of Ms. Flint in an effort to continue her unreasonably long detainment, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

506. Defendants City of Milwaukee and Milwaukee County are liable to defend this action against the Defendants, and to satisfy any judgment entered against them, by virtue of Wis. Stat. § 895.46.

## VI. DAMAGES and EQUITY

### A. Damages

601. By virtue of unlawful actions alleged above, Mr. Flint has suffered pain, suffering, emotional distress, financial losses, and other damages for which she should be compensated in an amount deemed just by the Court.

602. Because the acts of the individual Defendants herein alleged were carried out maliciously or with reckless disregard for the Plaintiff's fundamental rights, the Plaintiff seeks awards of punitive damages against the individual Defendants to deter them and others similarly situated from similar wrongful acts in the future.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. DEMAND FOR JURY TRIAL

702. The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant judgment against the Defendant, awarding:

801. Monetary damages in an amount that will fairly compensate Plaintiff for her injuries;

802. Punitive damages in amount that will justly punish the individual Defendants for their actions;

803. Costs, attorneys' fees and litigation expenses as well as any further relief this Court deems just.

Dated this Tuesday, March 25, 2014.

Respectfully submitted, Jane Flint, Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
ANDREA J. FARRELL
State Bar No. 1064773
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone: (608) 283-6001
Facsimile: (608) 283-0945
E-mail: jsolson@scofflaw.com

/s/Jeff Scott Olson

______________________________

JEFF SCOTT OLSON
ATTORNEYS FOR PLAINTIFF