UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**THE DRAGONWOOD CONSERVANCY, INC.,**
**PLEGUAR CORPORATION, &**
**TERRY CULLEN**
    Plaintiffs.
vs                       *CASE# 16-534*

**PAUL FELICIAN &**
**PHIL SIMMERT II**
    Defendants
_____

# PLAINTIFFS PROPOSED FINDINGS OF FACT
_____

  NOW COME PLAINTIFFS by undersigned counsel, and respectfully proffer their Proposed Findings of Fact, in support of their Motion for Partial Summary Judgment.

## BACKGROUND:

  101. Mr. Cullen was the principal director of The Dragonwood Conservancy, Inc., a Florida not-for-profit corporation formerly known as The Cullen Vivarium Wildlife Conservancy. [E-Doc#62, p. 3]

  102. Cullen ran a conservation operation out of the 17th Street and 13th Street properties. [EDoc#62, pp2-3]

  103. Detective Simmert received information that led him to believe that anacondas and alligators were being kept by Cullen in violation of city ordinances regulating non-domesticated and dangerous animals. [E-Doc#62 pp3-4]

## THE WARRANT

201. Detective Simmert applied for and obtained a warrant to search the 13th Street and the 17th Street properties for evidence related to the violation of Wis. Stat. § 29.604, which, among other things, criminalizes certain conduct related to endangered and threatened species. [E-Doc#62, p.5]

202. The warrant indicated that there was probable cause to believe that the properties contained evidence relating to the *unlawful possession of endangered or threatened species*, in violation of Wis. Stat. § 29.604. [E-Doc#62 @ pp19]

203. The warrant described the "objects of the search" as:

- Reptiles including but not exclusive of Chinese Alligators or Chinese Crocodiles.
- Python or Anaconda snakes.
- Spiders and turtles.
- Items commonly associated with the breeding, transport, and care of the above listed animals. This would include items like heat lamps, cages, and warming rocks.
- Other endangered or threatened species not included on this list [in violation of sec. 29.604, Stats.; E-Doc#62, p.5]

204. The warrant was executed on/after May 12, 2010. [E-Doc#62, p.5]

205. Inside the 17th Street property, officers located and seized a lizard, alligators, scorpions, turtles, spiders, snakes, and a chicken. [E-Doc#62, p6]

206. Inside the 13th Street property, law enforcement seized a number of other animals. [E-Doc#62, p.6]

207. Felician or Simmert either personally or through the direction of others caused openings to be cut in the two properties to allow direct removal of the large containers for the creatures at various property levels. [Edoc28 at pp6-7, 13]

208. In total, more than 200 animals were seized. [E-Doc#62, p7]

209. The Chinese alligators—which were critically endangered at the time— were listed on the warrant as a specific "object of the search" - as were "*other endangered or threatened species not included on the list*"; along with "*items commonly associated with the breeding, transport, and care of such animals*". [E-Doc#62 @ pp19-20]

210. The warrants listed spiders and other reptiles (including but not limited to pythons, anacondas, and turtles) without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities. [E-Doc#62 @ p20].

211. Although the warrant specifically described items to be seized, the list encompassed items beyond the scope of the crime under investigation. [E-Doc#62 @ pp19]

212. The warrants were therefore unconstitutionally overbroad, providing officers with too much discretion over which animals to seize and resulting in dozens of animals being seized without a valid warrant. [E-Doc#62 @ p20]

213. The belief that the animals violated city ordinances on dangerous creatures – or were otherwise evidence of mistreatment under state law- justified seizing certain animals (e.g., the alligators/crocodiles and some snakes). [E-Doc#62 at pp20]

214. That belief does not apply indiscriminately to justify seizure of *all* of the animals (e.g., spiders, turtles, and the two dogs that weren't killed by the officers). [E-Doc#62 at pp20-21]

215. No reasonable officer could believe that every animal was being kept in violation of city ordinances or mistreated in violation of state law. [E-Doc#62 @ p22]

216. The "plain-view" exception to the warrant requirement does not support seizure of all of Plaintiffs' animals . [E-Doc#62 @ p20]

217. No reasonable officer could have believed that he could seize each and every one of the plaintiffs' animals.  E-Doc#62 @ p21].

218. Officers seized animals plainly outside the scope of the warrants. [E-Doc#62 @ pp21]

219. Because Detective Simmert prepared the search-warrant affidavit, he cannot rely on the issuing judge's assurance that there was probable cause to believe that the animals listed—aside from the Chinese alligators—were unlawfully possessed. [E-Doc#62 at p.21]

220. There were no "exigent circumstances" which required the immediate removal of the animals [E-Doc#62 at p.28]

221. Defendants' forging ahead without properly planning for handling of the animals, was objectively unreasonable under the circumstances. [E-Doc#62 at p.28]

## MADACC, THE ANIMALS, & CIRCUIT COURT

300. On May 12, 2010, the Milwaukee Area Domestic Animal Control Commission (MADACC) received a formal "Police Request For Services", which dictated that Cullen would have to speak with Officer Simmert "before release of the animals" [See Declaration of Attorney Mark Murphy, hereinafter "Murphy", at par 4, referencing Exhibit A thereto].

301. On May 13, 2010, the Milwaukee Area Domestic Animal Control Commission (MADACC) informed Cullen that the agency was holding his animals "for cause" on behalf of MPD [E-Doc#71 p3]; the notice advised Cullen to contact *Police Officer Simmert* at "MPD-Sensitive Crime", as follows:

> "Contact the below named police officer or other person to determine if that person intends to hold your animal for cause as described in SS173.21. That person will then notify us if there is no hold on your animals". [Murphy at par.5, referencing Exhibit B thereto]

302. Felician admits having the duty "to the extent possible" to provide for the welfare of the seized animals. [See, deposition transcript excerpt from Defendant Felician, attached as Exh D to Murphy Declaration; at pp40-41]

303. Felician discussed with MADACC, its ability to handle the volume of creatures, and MADACC advised that "they didn't have the capacity to do so" [Felician, @p38], although Felician could not specifically recall

> "when the conversation took place, but, I mean, it was pretty apparent. I mean, … I think 2- or 300 animals were removed. I mean, that's just -- MADACC, like I said, normally is designed to deal primarily with domesticated animals, cats and dogs, and if you go to their facility, I mean, it's not enormous. I mean, they probably have the capacity to

5

handle 20, 30 animals, maybe. So in a day-to-day operation, some of their capacity is already taken up by animals that they already have in their custody, if you will, the animals that they're going to take in in the normal course of their business, and then on top of it to bring in this amount of animals of this nature, that exceeded their capacity. [Felician @p39] [1]

304. Felician admitted he was never "specifically" concerned at any time, about Cullen getting the animals back in the event Cullen was acquitted [Felician p69]

305. Simmert and Felician acknowledge that a police "hold" was placed on all the animals [See, deposition transcript excerpt of Defendant Simmert attached as Exhibit E to Murphy Declaration; at pp46-7. Also, Felician@ p66];

306. Simmert acknowledges that the animals "were in our custody" [Simmert, pp46-7]; and that "MADACC, us and some zoo personnel" were responsible for the animals once seized from plaintiffs' properties [Id., p12]

307. MADACC's Field Supervisor at the time -John McDowell- confirmed that the Milwaukee Police Department had a "hold" on the Plaintiffs' animals through July 20, 2010; specifically McDowell attests:

"From May 12, 2010, through July 20, 2010, MADACC continued to hold the exotic animals under the directive of the Milwaukee Police Department" [after which the animals were relocated; Murphy at par6, referencing Exhibit C, McDowell Affidavit.]

---

[1] Simmert was not a party to the conversations with MADAC; he understands Felician had those conversations. [Simmert, p35]
6

308. On July 13, 2010, Mr. Cullen moved the Circuit Court to return the seized animals, appoint a receiver to care for the animals while the criminal case was pending, and restrain any movement of the animals until further order of the court. [E-Doc#71 p3]

309. Plaintiffs' ownership rights were then terminated by the state court process, which did not provide them a reasonable opportunity to contest the seizure; and therefore Plaintiffs are authorized to proceed with their damage claims. [E-Doc#71, pp14, 16-17].

310. Cullen was not convicted of any crime relating to the animals. [Murphy, at par 2].

311. The animals have not been returned to Plaintiffs. [Murphy, at par 3]


## FIREARMS

400. The warrants did not list firearms as objects of the search, and firearms are substantially unrelated to the items that were listed. [E-Doc#62 at p23]

401. The warrants did not authorize the seizure of any firearms. [E-Doc#62 @p23 & @p24]

402. There was nothing within the search- warrant affidavits to suggest that Mr. Cullen had firearms, or that Cullen could not lawfully possess them   [E-Doc#62 at p24]

Date:   October 1, 2020
*/s/ electronically signed by*
 *Attorney Mark P. Murphy*
SBN 01017745
Attorney For Plaintiffs
657 S. 72nd Street
Milwaukee, WI 53214
414-453-5555 phone; 414-453-5520 fax
attorneymarkmurphy@sbcglobal.net