UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN
                Plaintiffs,

vs.                                                      Case No: 16:cv:0534

PAUL FELICIAN
PHIL SIMMERT II
                Defendants
_____

PLAINTIFFS BRIEF IN SUPPORT OF
"MOTIONS TO STRIKE & FOR ADDITIONAL RELIEF".

---

NOW COME PLAINTIFFS by their undersigned counsel, and respectfully submit their BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE & FOR ADDITIONAL RELIEF.

**I.**     **Introduction.**

On October 1, 2020, Defendants filed a third Motion For Summary Judgment in this case [EDoc 108, hereinafter, "Defendants' Motion").

Plaintiffs now file their MOTIONS TO STRIKE[1] & FOR ADDITIONAL RELIEF; along with THIS BRIEF IN SUPPORT.

    A.    <u>This Case Was Formally Bifurcated in 2017</u>.

Some three years ago -under different Defense attorneys and Magistrate Judge- this federal court proceeding was formally *bifurcated*: discovery was stayed and Defendants were

---

[1] Excepted from the Motion To Strike, is Defendants' Motion seeking dismissal of Plaintiffs' claims for property damage at 17th Street (arguing that Jane Flint is the recorded titleholder); see Defendant's Brief In Support of Motion For Summary Judgment, hereinafter "Defendants' Brief" [EDoc 109 at pp23-25]. This matter has not been previously raised or decided [Murphy Declaration, at par 8].

to bring any "legal" motions including "qualified immunity", prior to the parties undertaking the expensive discovery proceedings (particularly, those relating to the hundreds of animals involved). [E-Doc 20, at pp 2-3 of 4, @ pars.2, 3,5, 7]. Defendants acknowledge the bifurcation. [Defendant's Brief, EDoc 109 at p2].

Accordingly, once bifurcated, Defendants filed <u>two</u> Motions For Summary Judgment, on legal grounds including *qualified immunity*; the motions were granted in part and denied in part. [E-Doc # 62 & 71]. Neither adverse decision was appealed by Defendants to the 7th Circuit (which is now a critical dynamic, as explained below).

The parties then proceeded to the discovery phase of this case. As anticipated, the expansive discovery record now includes multiple experts, giving multiple opinions, on multiple subjects; including lengthy opinions about the hundreds of animals in issue. Beyond the 'animal side' of the case, several of Plaintiffs' contractors (and other persons) are now deposed and involved as trial witnesses regarding the 'property damage' side of Plaintiffs' case.

The jury trial in this case is less than sixty days out.

B.     <u>This Court Made It Perfectly Clear That Any "New" Summary Judgment Motions Must Be *Tailored To New Issues* Beyond Those Previously Decided.</u>

In the Scheduling Conference held on August 12, 2020, this Court made it clear (for a second time) -  that any new motion for summary judgment be <u>tailored to</u> <u>new issues</u>:

> "to be clear as we had discussed the last time we [are] not relitigating motions that were previously filed, so these have to be new motions"  [See, Transcript of hearing @EDoc 109, at p.18 lines 19-21]

> "I had expressed the last time we got together and again with this call, I'm not entertaining a repeat of what has already been addressed by the Court, so I don't know where we are going with summary judgment" [Id., p20 lines 9-12]

2

Case 2:16-cv-00534-NJ   Filed 10/16/20   Page 2 of 14   Document 124

I'm holding the parties at their word, I'm not reviewing what has already been decided by the previous judge in this case. And it will be tailored to new issues" [Id., p.25 lines 2-5].

## II.     This Court Must Strike Defendants' Motion As A Flagrant Violation Of This Court's Specific Orders.

Defendants' posit that new and "extensive discovery" has allowed them to *fully* develop the "factual basis" for "seizing all the animals"; and therefore, they are now entitled to file a third summary judgment motion, revisiting the past denials of *qualified immunity* [Defendants' Brief, p6].

In reality: Defendants' "extensive discovery" consisted of *twelve depositions of Plaintiffs' witnesses only* [2]; plus an additional four rounds of discovery demands directed to Plaintiffs[3] [Murphy Declaration at par. 3].

Defendants Brief [EDoc 109] apparently <u>cites none</u> of this purported 'new' discovery [beyond "17th St". Murphy par 3]

Instead, Defendants' Brief is based upon four Declarations: Felician [E-Doc 112]; Simmert [E-Doc 114]; Wick [E-Doc 111], and Roberts [E-Doc 113]; properly summarized as follows:

---

[2]   The twelve and the dates of their 2020 depositions are: John Larson August 13th; Dave Davenport Aug 11th ; Chris Lehman aug. 27th; Ron Raasch Aug 27th; Anthony Mader Aug. 27th; Bert Kelly Aug 27th; Rex Raasch sept 1st and 8th; Angie Kvedrejah sept 15th; Mike Greylach Sept 2nd; Jane Flint Sept 16th; Terry Cullen Sept 17th; & Eric Katz Oct 2nd [Murphy, at par. 2]

[3]   *To wit*, Defendants: "Sixth Set of Interrogatories & Second Set of Request For Production of Documents " (dated August 6, 2020); "Seventh Set of Interrogatories and Third Request For Production of Documents (dated August 11, 2020); "2nd Set of Request For Admissions and 8th Set of Interrogatories" (dated August 26, 2020); "Fourth Set of Request For Production of Documents" (dated September 22, 2020). [Murphy at 3]

*<u>Felician's Declaration</u>: at E-Doc 112 which restates his knowledge of the events; and which attaches citing two MPD Standard Operating Procedures ("SOPs") [EDocs 112-1, 112-2].[4]

*<u>Simmert's Declaration</u>: @EDoc #114, which restates his knowledge of the events; and which attaches his Police Reports [E-Doc#114-1] which were *previously filed over three years ago* by Defendants' Counsel in support of their first Summary Judgment Motion [filed 9/11/17 at E-Doc.31-1].

*<u>Wick Declaration</u>: [@EDoc#111;which includes his Police Report @ EDoc 111-1]; which was previously put before the Court by Plaintiffs on 1/31/18 as EDoc 46-2];

*<u>Erica Roberts/DNS</u> [@EDoc#113; which summarizes the DNS actions at the 13th Street Property, including placarding it as being unfit for human habitation].


A.  <u>Defendants' Motion Ignores Specific Orders of *Two* Magistrate Judges.</u>

Defendants' latest run at *Qualified Immunity* [Brief, pp 6-7, 16-20] restate allegations

rejected by Judge Jones; including Defendants' prior allegations of:

**an **unsanitary environment** [previously raised by Defendants in their Proposed Findings of Fact filed 9/11/17 at E-Doc 30, pp 6-7 of 9, par. 30-33, relying upon Felician Affidavit at EDoc 2; including Simmert police reports supplied as "Attachment A" @EDoc 31-1, pp. 4-5 of 6; reports further quoted in Defendants' Reply brief filed 3/2/18 at E-Doc 53 at p.7-9 & 13 of 14; also, Defendants' Brief field 9/11/17 as EDoc 28 at p10 of 20; Felician Affidavit filed 9/11/17 as EDoc 29 at p 2 par 8 and p3 par 10-11].


**the purported **'dangerousness'** of the animals [Defendants' Proposed Findings of Fact filed 9/11/17 at EDoc 30 at p.4of 9, par.16-18; including attachments: City Ordinance 78-5 (2)(b) on "dangerous animals" EDoc 31-2 at p 2 of 2; City Ordinance 78-23 on "Harboring Dangerous Animals" EDoc 31-3 at p 2 of 2; City Ordinance 78-1(34) defining "prohibited dangerous animal" EDoc 31-4 at p.3 of 3; also see, Simmert Deposition excerpt of 10/30/14, at p46 thereof at EDoc31-6, at p.6 of 7; Defendants' Reply Brief filed 3/2/18 at EDoc 53 at pp 8-10 & 13 of 14; Defendants' Brief filed 9/11/17 at Doc 28 at p 12 of 20]

---

[4] Specifically, SOP: "3/560 Property" which recites Wisconsin Statutes on the seizure of property; and "3/970 Confidential Informants/Search Warrants".
   Defendants again fail to explain why the SOPs were not filed with either of their last two Summary Judgment Motions. As submitted these SOP's present as an afterthought.

**\*\*neglected** or **mistreated** animals [Defendants' Brief field 9/11/17 at EDoc 28 at p10 of 20; Defendants' Reply Brief filed 3/2/18 at EDoc 53, at p9 of 14, and again at pp12 & 13 of 14; Defendants' Reply brief filed 4/12/19 EDoc 68 at pp3-4 of 7]

\*\*no **personal involvement** in, or observation of, causing any of the damages to any properties or taking of property without inventorying [Edoc 29 p 2 of 5 at par4 and p 4 of 5 at par 12; EDoc 30 at pp.5-6 of 9, at par. 26; EDoc 53 at pp 2 & 7 of 14; EDoc 28 at p 11 of 20; EDoc 30 at p.6 of 9, at par. 29; E-Doc 53 at p. 7 of 14].

**\*\***no **personal involvement** in permanently depriving Cullen of any creatures [Defendants' Reply Brief filed 3/2/18, EDoc 53 at p. 10 of 14; Defendants' Reply Brief filed 4/12/19 EDoc 68 at p 4 of 7; Defendants' Brief filed 3/22/19 as EDoc 66 at p 6 of 8]

\*\*Defendants executed upon a **valid search warrant** [see discussion below].

\*\*Any **damage to the properties was reasonable** [see discussion below]

*Defendants have known literally every single material fact* which they now rely upon in their newest Motion [beyond "17th St"]. This begs questions: How can *Defendants' own information and knowledge* qualify as 'new discovery' ? [5]

Defendants Motion for *qualified immunity* is not a new motion *tailored to new issues*. Any additional detail that may have been added, either (1) comes from their own knowledge; or (2) would have been added in prior proceedings if it were actually material.

The reasonable inference is that Defendants did not actually rely upon any the recently-disclosed materials (like the SOPs) , and are now proffering them as after the fact means, attempting to justify the *ends*.

---

[5]  Defendants also continue to regurgitate salacious, uncorroborated, unproven, and ultimately *dismissed* allegations of sexual misconduct [Brief, at pp. 11-12]. The allegations are immaterial and highly inflammatory. Still, Defendants made sure Judge Jones heard the slander [E-Doc 30 pp2-3 of 9, at pars. 9-14] - and now, this Court.

**B. Judge Jones Ruled That The Search Warrants Were Supported By *Probable Cause*, But The Execution Thereof Was Unconstitutional.**

Defendants attempt to justify all of their actions by relying upon Judge Jones' finding the search warrant valid as based upon probable cause. [Brief @pp3,5-8, 14]. The argument is not based in U.S. Constitutional law, evidenced by Judge Jones' rulings on 'particularity' [discussed below].

Furthermore, Defendants' seriously misinterpret the nature and extent of Judge Jones' prior rulings, which were based upon undisputed facts (relating to the 'animals').

Those material, undisputed facts included: the terms of the search warrants issued; the searches completed; the seizures made; the failure to return the animals; and the permanent deprivation thereof.

Based upon the undisputed evidence therefore, *Judge Jones ruled in several different ways, that the search and seizures were unconstitutional*, to wit:

> "The warrants listed spiders and other reptiles (including but not limited to pythons, anacondas, and turtles) without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities". [E-Doc#62 @ p20].

> "Although the warrant specifically described items to be seized, the list encompassed items beyond the scope of the crime under investigation". [E-Doc#62 @ pp19]

> "The warrants were therefore unconstitutionally overbroad, providing officers with too much discretion over which animals to seize and resulting in dozens of animals being seized without a valid warrant". [E-Doc#62 @ p20]

> "The belief that the animals violated city ordinances on dangerous creatures – or were otherwise evidence of mistreatment under state law- justified seizing certain animals (e.g., the alligators/crocodiles and some snakes)"….That belief does not apply indiscriminately to justify seizure of *all* of the animals (e.g., spiders, turtles, and the two dogs that weren't killed by the officers)". [E-Doc#62 at pp20-21]

"No reasonable officer could believe that every animal was being kept in violation of city ordinances or mistreated in violation of state law". [E-Doc#62 @ p22]

"The "plain-view" exception to the warrant requirement does not support seizure of all of Plaintiffs' animals" . [E-Doc#62 @ p20]

"No reasonable officer could have believed that he could seize each and every one of the plaintiffs' animals". [E-Doc#62 @ p21].

"Officers seized animals plainly outside the scope of the warrants". [E-Doc#62 @ pp21]

Judge Jones DID NOT leave "for trial" the issue of whether Defendants exceeded the scope of the search warrant by seizing "all animals found at 13th Street and 17th Street" [Defendants' Brief, p.6]. Judge Jones found as a matter of law, that Defendants exceeded the scope of the search warrant. There is no jury issue.

**B.    Defendants Ignore Judge Jones' Adverse Rulings Regarding The "Particularity Requirement" Of The 4th Amendment.**

Defendants would have this Court believe that -where a Search Warrant is supported by probable cause- that warrant *necessarily passes* the 4th Amendment's 'particularity requirement'. [Defendants' Brief, pp. 7-8]. Obviously this is incorrect, and once again flies in the face Judge Jones' specific rulings and black letter, constitutional law.

In rejecting Judge Jones' particularity findings, Defendants rely upon *Russell v Harms*, 297 F.3d 458, 464 (7th Cir., 2005), and argue that the Search Warrant "gave the officers as much guidance as was feasible" [Brief, p.9].

If anything, *Harms* confirms the primary tenet of Plaintiffs' claims: Plaintiffs' animals should have been returned to them. Specifically in *Harms*, the search warrant authorized the seizure of "video tapes, Nintendo games" and other items [@461]. At some point after the

seizure however, the Prosecutor dropped all charges (felony theft) and most notably, "Plaintiffs' property was returned to them". [@462]

Accordingly, *Harms* simply confirms that all non-evidentiary, non-contraband property seized by warrant, must be returned to the owner.

**D.     Defendants Ignore Judge Jones' Adverse Ruling That The Defendants *Unlawfully Seized* Each And Every Animal In The 13th/17th Street Buildings.**

Defendant next resurrects two arguments, both rejected by Judge Jones long ago, *to wit:* (1) they "lawfully seized all the animals…based on what they observed, the recommendation of the animal experts on scene, and the totality of the facts presented to them" [Brief, pp6-7; also see pp.13-15]; and (2) "Under these unique and compelling facts no reasonable officer would have believed they were violating the plaintiffs' constitutional right when seizing all the animals" [Brief p19].

Defendants keep saying the same things, year after year, attorney after attorney, judge after judge.   But this does not change the law and posture, of the case.

Defendants' arguments have been specifically rejected by Judge Jones, in no uncertain terms [supra], who ruled that Defendants' seizure of all animals, was unconstitutional. [6]

**E.     Defendants Ignore Judge Jones' Adverse Ruling That They Must  Stand Trial On Plaintiffs' Claims, Which Include Supervisory Liability and/or Failure To Intervene.**

Defendants again argue to the Court, that Simmert was:  "not present at all properties on all days"; he had no supervisory role to play in the execution of the warrants or the seizure

---

[6]  Additionally, Defendants now try to resurrect the 4th Amendment findings relating to the seizure of Plaintiffs' "guns" [Brief at p 15-16;  compare to Judge Jones Ruling EDoc 62 at p.23]

of property" [7] ; and that neither Defendant participated "in or witness any destruction or removal of property and therefore had no duty to intervene". [Brief pp 3-4, 20-23]. Defendants' liability analysis is unreasonably narrow.

Judge Jones knew this and ruled that Plaintiffs properly stated claims against the defendants, *including* those based upon *supervisory liability* and *failure to intervene*. [EDoc62 at p. 25-28].[8]

### F. Defendants Ignore Judge Jones' Adverse Ruling That Simmert -As The Author Of The Warrant Application- Cannot Shield Himself With A Court Commissioner's Finding of Probable Cause.

Defendants' final argument is the most disturbing of all. They argue that Simmert was entitled to rely upon the Court Commissioner's probable cause finding and therefore, he is protected by *qualified immunity*. [Brief pp.6 & 10-12].

This argument is far beyond the scope of any possible good faith argument. Judge Jones' ruling was once again, based upon undisputable black letter law - any law enforcement officer who swears out probable cause to a commissioner, cannot shield himself by the finding of probable cause:

> "Because Detective Simmert prepared the search-warrant affidavit, he cannot rely on the issuing judge's assurance that there was probable cause to believe that the animals listed—aside from the Chinese alligators—were unlawfully possessed. [E-Doc#62 at p.21]

---

[7] Defendants' argument that neither played a "supervisory role" is directly contrary to the sworn deposition testimony of Officer Wick and Lt. Felician; both testified that *Simmert and Felician had concurrent authority* over the execution of the search warrant". [See, excerpted Wick Deposition at page 34, attached to Murphy Declaration at Exhibit A; and as for Felician, see p80 at Exhibit B, Murphy Declaration]

[8] Also: see MADACC documents identifying Simmert as the MPD contact for the MPD "hold" on Plaintiffs' animals. [Murphy Declaration, at par 6, referencing Exh C & D thereto].

For Defendants to argue otherwise shocks the *law-of-this-case*, the clearly established constitutional law, and this Court's Orders on dispositive motions.

### G. The Defendants' Desire To Resurrect *Qualified Immunity* Is Properly Considered A Poorly Veiled Attempt To Bootstrap Appellate Jurisdiction After Waiver (By Failing To Appeal).

Defendants' "newest" Motion must be seen for what it is: a poorly veiled attempt to bootstrap appellate jurisdiction over the *qualified immunity* issue. Specifically Defendants have waived appellate review of Judge Jones' *qualified immunity* rulings, by failing to appeal the adverse decision(s). See, *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1985) - a district court's denial of a claim of qualified immunity is considered a "final decision" under the collateral order doctrine and within the appellate courts' jurisdiction pursuant to 28 U.S.C. § 1291; also: *Levan v. George*, 604 F.3d 366 2010 WL 1688529 (7th Cir., 2010) – appellate court is deprived of jurisdiction where officer failed to file interlocutory appeal challenging adverse *qualified immunity* rulings.

This is why this Court must <u>strike</u> the Defendants' Motion For Summary Judgment (as opposed to simply denying it): if the Defendants can get this Court to issue a new decision on *qualified immunity*, they could appeal that and thereby, resurrect appellate jurisdiction over the issue previously waived (and of course, further delay the parties' 10-years-in-the-making, *day of reckoning* by jury trial).

This Court must reject Defendants' invitation to join in what presents as a tactical, jurisdictional bootstrapping, by direct violation of this Court's Orders.

### H. The Public Policy Ramifications Of Defendants' Process Are At A Minimum, Uncceptable, And At A Maximum, Horrific.

The following facts are undisputed herein. Command level, and supervisory level, law enforcement officers obtained and executed search warrants - at multiple residences - by *ex parte* process.

The *ex parte* process continued unabridged throughout the warrant's execution and seizure of property – Plaintiffs were not allowed into their properties and could not observe the *methods and manners* of the search and seizures.

Significant damage was done to certain buildings *under either party's version of the facts*. Several hundred animals were seized from Plaintiffs; and none have been returned. Clearly established law required that all property be returned to Plaintiffs, which was not contraband and (no longer) evidence.

Now the command-level and supervisory officer insist they are allowed a third kick at the proverbial cat: and can now wash their hands of all liability, by simply claiming "yeah…we got the warrant and executed it…but we had nothing to do with it".

Under Defendants' theory, Plaintiffs would have to name, serve, depose, and prosecute every individual MPD officer (and any 3rd party assistants like the zoo and museum officials on scene; along with the MFD, DNS, & DNR). Even then, Plaintiffs would still not know who destroyed specific items of property, or who seized each particular animal.

Under the particular circumstances of this unusual case, public policy must provide for (1) liability of Defendants for their personal actions and inactions; AND (2) liability as command level, supervisory officers, in a position to intervene.

Most strikingly, public policy absolutely rejects bootstrapping of appellate jurisdiction after waiver, in a long running and complex, bifurcated case.

### III. Plaintiffs Should Be Awarded Costs and Additional Relief

A. Plaintiffs Should Be Awarded Reasonable Attorneys Fees Resulting From Defendants' Violations Of This Court's Orders.

Defendants by counsel were <u>specifically</u> instructed that no summary judgment motions were allowed unless "tailored to a new issue". Now, Defendants' Counsel are doing <u>exactly</u> what they were told not to do.

Undersigned counsel would rather be preparing a joint final pretrial report, working collaboratively to streamline the introduction of evidence into this case, for the benefit of the Court and the Jury. Instead, Defendants have filed a dilatory motion which ignores virtually every single, significant, adverse ruling by Judge Jones - and this Court's direct Orders (which now creates the opportunity to bootstrap appellate jurisdiction long ago waived).

Defendants' Motion has significantly impacted Plaintiffs' trial preparation, in terms of *dozens of hours* spent by undersigned counsel to seek this redress. [Murphy Declaration par. 7].

If ever a case for the imposition of sanctions exists, this must be it. Plaintiffs request leave of court to supplement the record with documentation of attorneys fees [Id.]

B.  As For Any Motions Which Survive This Motion To Strike, This Court Should Strike All Of Defendants' Proposed Findings Of Fact Which Violate LR56.

Defendants proposed Findings of Fact [EDoc 110] reads like a sample of "what not to do" under LR 56(b)(1)C which requires one factual proposition per proposed finding.   The calendar in this case will not allow a corrected, 'resubmission' by Defendants.

As such, as for any of Defendants' Motions surviving Plaintiffs' Motion To Strike, the Court should strike any findings of fact proposed by Defendants, which violate the local rule.

C.  Plaintiffs Should Be Awarded Additional Relief.

Plaintiffs respectfully request this Court to stay the October 22, 2020, deadline for Plaintiffs "response" to dispositive motions.

Plaintiffs request that this Court rule upon the "Motion To Strike & For Additional Relief" before Plaintiffs are required respond to any surviving motions;  and thereafter, if appropriate, for a new filing deadline.

**V.  Conclusion.**

Defendants have crossed a clear boundary drawn by the Court, at a critical time which has diverted Plaintiffs' preparation for trial - the impact of which directly threatens the impartial administration of justice.

If this Court allows Defendants to proceed with this type of impunity, the consequences -to litigants, to his District, and to the Circuit-  are many, real, and potentially extreme.

This Court should grant Plaintiffs' "Motion To Strike & For Additional Relief" and issue the particular Orders requested herein, amongst any others in law or equity.

Date: October 16, 2020
*/s/ electronically signed by*

*Attorney Mark P. Murphy*

SBN 01017745
Attorney For Plaintiffs
657 S. 72nd Street
Milwaukee, WI 53214
414-453-5555
414-453-5520 fax
attorneymarkmurphy@sbcglobal.net