**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

Plaintiffs,

v. Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

Defendants.

---

**DEFENDANTS' RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND FOR ADDITIONAL RELIEF**

---

Defendants, Paul Felician, Phil Simmert and the City of Milwaukee, by and through its counsel, Tearman Spencer, City Attorney, and Heather Hecimovich Hough, Assistant City Attorney, and Jenny Yuan, Assistant City Attorney, hereby provide this Response Brief in Opposition to Plaintiffs' Motions to Strike and For Additional Relief, (Dkt. 123). For the reasons set forth below, defendants request that the Court deny Plaintiffs' Motions to Strike and for Additional Relief. As fully briefed by defendants on October 1, 2020, defendants are entitled to summary judgment on all claims. (Defs.' Br. in Supp. of Mot. for Summary Judgment, Dkt. 109). As briefed by defendants on October 20, 2020, plaintiffs' motion for summary judgment should be denied (Defs.' Resp. Brief to Pl. Motion for Summary Judgment, Dkt. 125). Defendants request that the Court dismiss this action in its entirety.

## BACKGROUND

Plaintiffs filed a motion seeking to strike Defendants' Motion for Summary Judgment, asserting that defendants' summary judgment request is not "tailored to new issues" (Pl.'s Br. in Supp. Of Mot. To Strike, p. 2, Dkt. 124). Plaintiffs assert that defendants' most recent Summary Judgment motion is "a flagrant violation of this Court's specific orders." (Pl.'s Br. in Supp. Of Mot. To Strike, p. 3, Dkt. 124). Plaintiffs assert that defendants' are not entitled to bring this motion, despite the fact that discovery has now occurred, and once again mischaracterizes Judge Jones' previous order on Summary Judgment as a legal ruling in plaintiffs' favor. (Id. at 6-9). Plaintiffs ask this Court to strike Defendants' Motion for Summary Judgment, asserting that defendants' are attempting to "bootstrap appellate jurisdiction after waiver." (Pl.'s Br. in Supp. Of Mot. To Strike, p. 10, Dkt. 124). Plaintiffs assert that "public policy must provide for" liability of defendants and for those in a position to intervene. (Id. at 11). Plaintiffs assert that defendants' findings of fact violate local rules and therefore should be stricken. Plaintiffs also request sanctions. Defendants respond in whole-hearted opposition to each of these assertions as follows.

## ARGUMENT

### 1. Defendants' Summary Judgment Motion is tailored to post-discovery, new undisputed facts that must be considered by this Court and is not in violation of this Court's orders.

Plaintiffs argue that because they stipulated with defendants to bifurcate this case to allow for summary judgment to occur pre-discovery, that defendants are now somehow precluded from bringing forward a motion for summary judgment based upon post-discovery findings of fact. The parties in this case entered into a stipulation to allow for summary judgment prior to discovery (understanding that discovery, with multiple experts and witnesses,

from across the country, would require a significant investment of time and expense). In the interest of saving time and resources, the parties agreed to allow pre-discovery dispositive motions; however, the parties did not stipulate to forbid post-discovery dispositive motions. The stipulation allowed defendants to file motions "based upon known legal defenses to Plaintiffs' Complaint (as amended)." (Dkt. 20, p. 3). Pre-discovery, summary judgment was granted in favor of defendants in some respects which certainly saved both plaintiffs and defendants significant resources and time during the discovery process.

Now that discovery has concluded, defendants assert based upon new and undisputed facts **unveiled in discovery**, summary judgment is warranted. Plaintiffs had identified over 30 witnesses (Dkt. 74) since rulings were made on previous summary judgment motions. Some of those witnesses included Milwaukee Fire Department personnel, additional Milwaukee Police Department ("MPD") personnel, City of Milwaukee Department of Neighborhood Services ("DNS") personnel, Department of Natural Resources ("DNR") personnel, and representatives from the Milwaukee Area Domestic Animal Control Commission (MADACC). Representatives from all of these entities, and others, were on scene during the execution of the warrants. During discovery, after the deposition of a number of witnesses, including plaintiff Terry Cullen, his girlfriend, Jane Flint, and a number of plaintiffs' witnesses that plaintiffs claimed were on scene during some portion of the execution of the search warrants, plaintiffs conceded that they could not identify one witness who made personal observations or could testify that defendants Felician or Simmert caused or observed damage to the properties associated with plaintiffs (Dkt. 110, DPFOF 122 - 128). Based upon this information, and newly discovered facts revealed during the depositions of defendants and MPD officer Ivan Wick such as the steps Defendant Simmert took to obtain a warrant, the considerations made for the seizure of the animal portfolio,

and the role and involvement of the named defendants in the execution of the warrants, defendants filed a new motion for summary judgment on October 1, 2020, relying on the undisputed facts as revealed during discovery, now that the factual record is complete.

While defendants did assert a qualified immunity defense pre-discovery, defendants are not barred from asserting qualified immunity at this stage in litigation. The doctrine of qualified immunity recognizes that litigation is costly, and that the defense of qualified immunity can be asserted at various stages. Defendants may raise a claim of qualified immunity at three distinct stages of litigation:

1. Defendants may raise the defense on the pleadings. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

2. If a defendant cannot obtain a dismissal on the pleadings, he or she may move for summary judgment and "is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.*

3. The defense of qualified immunity is also available at trial. *See Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996); *Unwin v. Campbell,* 863 F.2d 124, 132 n. 5 (1st Cir.1988); *Kennedy v. City of Cleveland,* 797 F.2d 297, 299 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

Our own Seventh Circuit has held that "while qualified immunity may not entitle

defendant to dismissal on the pleadings, qualified immunity may entitle the defendant to summary judgment **later on**. And because each determination is conclusive as to the defendant's right to avoid the burdens of pretrial discovery and trial, a denial of qualified immunity can be a "final decision" at both stages of the litigation." *Hanson v. LeVan*, 967 F.3d 584, 591–92 (7th Cir. 2020) (citing *Behrens*, 516 U.S. at 307–08, 116 S.Ct. 834). Thus, pleading qualified immunity more than once is not barred; particularly since it is being raised in this motion based upon new, undisputed facts that have been revealed in discovery.

**2. Judge Jones' denial of summary judgment is not a ruling that a constitutional deprivation occurred.**

Plaintiffs' Motion to Strike is merely a recitation of Plaintiffs' most recent motion for summary judgment in a different format. In support of their motion to strike, Plaintiffs offer the same assertion as was housed within their brief in support of Plaintiffs' Motion for Summary Judgment (Dkt. 117), that Judge Jones' pre-discovery decision (Dkt. 62) to deny defendants' motion for summary judgment means Judge Jones ruled that the warrants and search and seizure of animals and firearms were unconstitutional as a matter of law.

While defendants responded to this argument in their reply brief in opposition to plaintiffs' motion for summary judgment (Dkt. 125), defendants reiterate that if Judge Jones made legal rulings in plaintiffs' favor in the manner characterized by plaintiffs, Judge Jones would have entered judgment independent of the motion as per Fed. R. Civ.P. 56(f)(1) – (3). Rule 56(f)(1)-(3) allows the court to enter judgment independent of the motion by granting summary judgment for a nonmovant, granting a motion on grounds not raised by a party, or considering summary judgment on its own after identifying for the parties undisputed material facts. Fed. R. Civ. P. 56(f)(1)–(3). Judge Jones did not enter judgment independent from denying defendants' summary judgment. Judge Jones' decision merely meant he found he could

not grant summary judgment in favor of defendants on the seizure of all the animals, seizure of the firearms and other personal property, and unreasonable damage to their properties given the facts that were presented to him at the time. Post discovery, the record is now fully developed and the parties are aware of additional facts in this case that change the legal analysis. Plaintiffs are inaccurate in asserting that this Court has made legal rulings in favor of plaintiffs.

**3. Judge Jones' assessment of the particularity requirement of the Fourth Amendment was based upon the four corners of the warrant and not of newly discovered information pertaining to the inclusion of other animals.**

Plaintiffs mischaracterize defendants' position as it relates to the particularity requirement of the Fourth Amendment. Plaintiffs state in their brief that "Defendants would have this Court believe that – where a Search warrant is supported by probable cause – that warrant necessarily passes the 4th Amendment's 'particularity requirement', and then cites defendants' brief, Dkt. 109, p. 7-8. *This is an inaccurate representation of Defendants' brief and position*. In fact, defendants' brief **clearly differentiates between the two** and states, "Magistrate Judge Jones already ruled that the warrants at issue in this case was supported by probable cause. (DPFOF 6.) Magistrate Judge Jones left open for trial the question of whether the 13th/17th Street Warrant satisfied the particularity requirement. (DPFOF 6.)" (Dkt. 109 p. 7).

Related to the particularity requirement, Magistrate Judge Jones questioned the inclusion of spiders, snakes and turtles "without any basis to believe those creatures were endangered or threatened under Wisconsin law or otherwise associated with illegal activities." (Dkt. 62). During discovery, additional details related to Defendant Simmert obtaining the warrant were revealed that provided the basis to believe those creatures were endangered or threatened. These newly discovered details, and others, provided undisputed facts related to the warrant similar to case law already decided in the Seventh Circuit and the United States Supreme Court that

defendants now ask this Court to consider for summary judgment. The two cases that are relevant based upon these newly discovered facts are *Russell v. Harms*, 297 F.3d 458, 464 (7th Cir. 2005), and *Massachusetts v. Sheppard*, 468 U.S. 981, 989-90, 104 S. Ct. 3424, 3428–29, 82 L. Ed. 2d 737 (1984).

Plaintiffs do not address *Sheppard* in their Motion to Strike but assert that somehow *Harms* confirms plaintiffs' claims that the "animals should have been returned to them" (Dkt. 124, pg 7) because in *Harms*, "Plaintiffs' property was returned to them" and that *Harms* "simply confirms that all non-evidentiary, non-contraband property seized by warrant, must be returned to the owner." (Dkt. 124, pgs. 7-8). This assertion is misleading and defendants are alarmed by plaintiffs' candor to this Court as it relates to this case. The Seventh Circuit made **no ruling related to the return of property** in *Harms*. The only mention of the return of property in *Harms* is in the brief background summary the Court provides. *Harms*, 297 F.3d at 462 (7th Cir. 2005).

As defendants summarized *Harms* in their brief in support of summary judgment,

> "Plaintiffs filed an action under § 1983 and asserted that the warrant was unconstitutionally overbroad because it "would not enable an officer reading it to differentiate between those items subject to the warrant and property lawfully possessed." *Id*. at 464. Plaintiffs claimed that the warrant "did not catalogue the individual movie and game titles allegedly stolen" from a video store and allowed officers to seize any and all videotapes and games, with no meaningful limits, found in plaintiffs' property. *Id* at 464. Plaintiffs also contended that officers exceeded the scope of the warrant by seizing DVDs, CDs, blank videotapes and non-Nintendo games that were not listed in the warrant. *Id.* at 464. The Seventh Circuit held that "the warrant gave the officers as much guidance as was feasible." *Id*. at 464 (citing *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998)). The Seventh Circuit in *Harms* held that defendants did not violate plaintiffs' rights under the Fourth Amendment and affirmed the district court's decision. *Id*. at 468."

(Dkt 109, pg. 9).

4. **Judge Jones' assessment of the animal seizure was pre-discovery and based upon facts taken in light most favorable to the plaintiffs and did not include newly discovered and undisputed information.**

Plaintiffs assert that defendants resurrect arguments related to the seizure of all animals and assert that it is the same as pled pre-discovery. This is inaccurate. First, based upon discovery, defendants ask this court to consider the totality of the circumstances which parties now know include the placarding of the property by DNS, deeming it uninhabitable for humans, and therefore, leaving no one to care for the hundreds of animals housed within. Based upon deposition testimony of Plaintiff Cullen and defendants it is undisputed that Plaintiff Cullen asserted to MPD officers he was out of town for weeks and therefore MPD, at the time relevant to making decisions regarding seizure of the animals, believed that no one was available to care for the animals. These are newly discovered, undisputed facts relied upon by defendants in moving this Court for summary judgment.

5. **Judge Jones' assessment of supervisory liability and/or failure to intervene pre-discovery and based upon facts taken in light most favorable to the plaintiffs and did not include newly discovered, undisputed information.**

Defendants request that this Court dismiss Simmert because he was not present at all properties during the execution of the warrants on all days, he had no supervisory role to play and did not witness any destruction or removal of property and therefore had no duty to intervene. Most importantly, post-discovery, this cannot be disputed by plaintiffs and no evidence exists to suggest otherwise. At the time Judge Jones made his ruling on summary judgment, these facts were not fully developed as they are now. At that time, there may have been a dispute of fact as to whether or not Simmert served as a supervisor or led the effort as discovery had not commenced.[1] At this point, after extensive discovery and depositions, Plaintiffs have conceded to not having one witness who can testify otherwise, and defendants'

[1] Other than one deposition of Stephen Glynn that is not relevant to this issue.

deposition provides sworn testimony that cannot be disputed.

### 6. Plaintiffs' allegations that defendants waived appellate jurisdiction and defendants' motion for summary judgment is an attempt to appeal is inaccurate and not supported by law.

Plaintiffs assert to this Court that defendants' motion must be stricken because it is an attempt to "bootstrap appellate jurisdiction" and that defendants have waived that by failing to appeal the first summary judgment ruling in this case. However, case law does not support the notion that defendants cannot appeal more than once on the issue of qualified immunity and in fact, support the notion that defendants can, in the same case, appeal at both the pre-discovery and post-discovery stages of litigation. Plaintiffs cite to *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1985), and *Levan v. George*, 604 F. 3d 366 2010 WL 1688529 (7th Cir. 2010) for support. However, and once again, these cases do not support plaintiffs' assertions.

First, *Mitchell* itself is a case where the Court of Appeals was asked twice to review successive pretrial assertions of immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 515-517, 105 S. Ct. 2806 (1985). This fact supports defendants' ability to raise the qualified immunity defense post-discovery. *Behrens v. Pelletier*, another Supreme Court case, further bolsters defendants' position that qualified immunity can be raised more than once. See *Behrens v. Pelletier*, 516 U.S. 299, 116 S. Ct. 834, 838–39, 133 L. Ed. 2d 773 (1996). In *Behrens*, plaintiff sued defendant alleging constitutional violations. Defendant appealed an unfavorable qualified immunity ruling from a motion to dismiss pre-discovery, and subsequently appealed an unfavorable qualified immunity ruling from a summary judgment motion post-discovery. The Court of Appeals dismissed one of the two appeals for lack of jurisdiction and the Supreme Court held that despite the prior appeal the summary judgment denial on grounds of qualified immunity was also an appealable final judgment, the appeal was available even if claims remained for trial and material

fact issues remaining for trial did not preclude the appeal. See *Behrens* Synopsis, *Behrens,* 516 U.S. at 299. *Behrens* notes that " . . . *Mitchell* itself dealt with the second of two interlocutory appeals on immunity claims. See 472 U.S., at 515–519, 105 S.Ct., at 2809–2812. Neither the Court of Appeals nor this Court assigned any significance to the successive aspect of the second appeal." *Behrens,* 516 U.S. at 306, n.2. *Behrens* provides that, "*Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment subject to immediate appeal. Since an unsuccessful appeal from a denial of dismissal cannot possibly render the later denial of a motion for summary judgment any *less* 'final,' it follows that petitioner's appeal falls within § 1291 and dismissal was improper." *Id*. at 307. The defense of qualified immunity is not only available to be raised at multiple stages in litigation, but defendants have a right to appeal an adverse ruling on a qualified immunity motion. See *Behrens,* 516 U.S. at 305-306. "[A]n order denying qualified immunity, to the extent it turns on an 'issue of law,' *Mitchell,* 472 U.S., at 530, 105 S.Ct., at 2817, is immediately appealable." *Behrens,* 516 U.S. at 311.

Thus, in this case, defendants would be allowed to appeal directly to the 7th Circuit based upon pre-discovery and post-discovery motions and plaintiffs' assertions to the contrary are not supported by the case law recognizing that the defense of qualified immunity protects defendants from trial as well as the other burdens of litigation. See *Behrens,* 516 U.S. at 306. *Behrens* also addresses Plaintiffs' allegation that defendants are somehow "bootstrapping appellate jurisdiction." *Behrens* provides:

> [t]he Court of Appeals expressed concern that a second appeal would tend to have the illegitimate purpose of delaying the proceedings. *See* 968 F.2d, at 870–871. Undeniably, the availability of a second appeal affords an opportunity for abuse, but we have no reason to believe that abuse has often occurred. To the contrary, successive pretrial assertions of immunity seem to be a rare occurrence. Moreover, if and when abuse does occur, as we observed in the

> analogous context of interlocutory appeals on the issue of double jeopardy, "[i]t is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims."

*Behrens,* 516 U.S. at 310 (*quoting Abney v. United States,* 431 U.S., 651 at 662, n. 8, 97 S.Ct., 2034 at 2042, n. 8.(1977)).

Plaintiffs also rely on *Levan v. George* to assert that somehow Defendants' motion for summary judgment should be stricken so that Defendants cannot appeal. Plaintiffs summarize this case as follows "appellate court is deprived of jurisdiction where officer failed to file interlocutory appeal challenging adverse qualified immunity rulings." (Dkt. 124, p. 10). Plaintiffs inaccurately represent this case to the Court as well. In *Levan*, the Seventh Circuit analyzed whether the district court denied qualified immunity when it denied summary judgment because the district court failed to use the term "qualified immunity." *Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010). The Seventh Circuit also held that jurisdiction was lacking under the collateral order doctrine in this case. The court asserted that "just because an order denying a motion to dismiss on qualified immunity grounds is generally considered a final decision, it does not mean that the right to appeal that order is unlimited. If the ***denial of qualified immunity turns on factual rather than legal questions, the denial is not properly subject to appellate jurisdiction*** under the collateral order doctrine because the decision is not "final." (emphasis added). *Levan,* 604 F.3d at 369, citing *Johnson v. Jones,* 515 U.S. 304, 313–18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Wernsing,* 423 F.3d at 741. *Levan*, then, favors defendants' ability to appeal a ruling on their most recent summary judgment motion because the newly discovered facts in this case cannot be disputed. As fully briefed in defendants' motion for summary judgment filed on October 1, 2020, based on the undisputed facts in this case, post-discovery, the defendants are entitled to qualified immunity as to the seizure of all the animals. No reasonable

police officer would have believed he was violating plaintiffs' constitutional right when seizing all the animals in light of having a valid warrant, hearing the recommendation of animal experts on scene who believed the animals to be mistreated, and the facts confronting the officers on scene. See *Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Heien v. North Carolina*, 574 U.S. 54, 60-61, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014); *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949).

**7. Plaintiffs' public policy argument in support of their Motion to Strike is undeveloped.**

Plaintiffs assert that this Court must rule in plaintiffs' favor to strike defendants' summary judgment motion because "public policy" must provide for the liability of defendants (Dkt. 124, p 11). Plaintiffs assert the following, "Under Defendants' theory, Plaintiffs would have to name, serve, depose, and prosecute every individual MPD officer (and any 3rd party assistants like the zoo and museum officials on scene; along with the MFD, DNS & DNR)." (Dkt. 124, p. 11). Because of this, plaintiffs assert that somehow public policy dictates this Court must strike defendants' motion for summary judgment. It is unclear to defendants how this would support plaintiffs' motion to strike. Plaintiffs, in bringing forth this lawsuit, have the burden to show that the defendants they named, Felician and Simmert, are liable for the alleged damages they plead. Under Section 1983, plaintiffs must show personal involvement on the part of Felician and Simmert for the constitutional violation they are claiming. See *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

It is absolutely the plaintiffs' burden to investigate their case and obtain evidence to support liability on the part of the individual defendants plaintiffs are seeking to hold liable in their lawsuit. If that means plaintiffs should have hired investigators (they did) or if plaintiffs' counsel had to take depositions of witnesses on scene with pertinent information, that is what

should have occurred. The two individually named defendant officers in this case, Felician and Simmert, should not be subjected to the burden of trial for constitutional violations just because plaintiffs are claiming, with no evidence, that Felician and Simmert are personally involved in an alleged constitutional violation. Just because plaintiffs claim damages to property four weeks after the execution of a search warrant does not mean Felician and Simmert caused it or had an opportunity to prevent it. Just because plaintiffs claim it was unlawful for all animals to be seized from their properties does not mean that individually named officer defendants Felician and Simmert are liable under the law, given the undisputed facts in this case.

Plaintiffs and plaintiffs' counsel were well aware of the multiple witnesses on scene during the execution of the search warrants. The identities of said persons were contained in police reports fully disclosed to plaintiffs. Of all of the many witnesses on scene, after extensive discovery in this case, plaintiffs are still unable to provide one witness that can assert Defendants Felician and Simmert are liable for their claimed damages. Individually named officers Felician and Simmert should not and cannot be held accountable for any allegations against them that are completely unsupported on the basis of public policy, or the notion that someone has to be liable. This court should disregard plaintiffs' assertion that public policy should hold Defendants Felician and Simmert accountable for wrongs Plaintiffs cannot dispute.

**8. Plaintiffs should respond to defendants' proposed findings of fact in accordance with the local rules if plaintiffs are in disagreement with defendants' format.**

Plaintiffs ask this Court to strike defendants' proposed findings of fact alleging that they are in violation of the local rules. Defendants had objections to plaintiffs' proposed findings of fact and filed the appropriate response on October 20, 2020 in accordance with the Eastern District of Wisconsin's local rules, Civil L.R. 56(b)(2)(B). Because the local rules also provide

that "[c]ollateral motions, such as motions to strike, are disfavored," (Civil L. R. 56(b)(9), we request that this Court oppose plaintiffs' request in this Motion to Strike and that plaintiffs address issues with defendants' proposed findings of fact by filing the appropriate response.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motions to Strike and for Additional Relief.

Dated and signed at Milwaukee, Wisconsin 21st day of October, 2020.

TEARMAN SPENCER
City Attorney

s/ Heather Hecimovich Hough
HEATHER HECIMOVICH HOUGH
Assistant City Attorney
State Bar No. 1092637

JENNY YUAN
Assistant City Attorney
State Bar No. 1060098

Attorneys for Defendants
Milwaukee City Attorney's Office
200 East Wells Street, Room 800
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: hhough@milwaukee.gov

1032-2016-1146/271855