# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

        Plaintiffs,

v.                              Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

        Defendants.

---

## DEFENDANTS' PRETRIAL REPORT

---

### (1) Short Summary of the Facts of the Case and Theories of Defense

      This case is about whether the only two defendants in this case, former Milwaukee Police Captain, Paul Felician ("Felician") and Milwaukee Police Detective, Phil Simmert ("Simmert") exceeded the scope of the search warrant executed at two properties in May, 2010 when all animals were seized. The plaintiffs in this case, the Dragonwood Conservancy, Inc. ("Dragonwood"), Pleguar Corporation ("Pleguar"), and Terry Cullen ("Cullen"), are also asserting property damage due to alleged intentional, excessive, and unreasonable damage to the four properties during the execution of the search warrants. Plaintiffs also claim damage to or unlawful seizure of personal property, including guns, during the execution of the search warrants. There is no claim of municipal liability

against the City of Milwaukee. The City of Milwaukee is merely named for indemnification purposes.

On May 12, 2010, Simmert submitted an Affidavit and a search warrant for 2323 South 13th Street ("13th Street") and 3443 South 17th Street ("17th Street") ("13th/17th Street Warrant") to Milwaukee County Court Commissioner David Sweet. Based on information provided to Simmert from a credible witness, Jennifer R., which included photographs, Simmert's own internet research, and speaking with the Department of Natural Resources Conservation Warden, Nick Blankenheim and the assistant district attorney, Simmert believed that endangered species, non-domesticated animals, and dangerous animals were being kept in the City of Milwaukee. On May 12, 2010, Simmert reviewed his Affidavit and read Wis. Stat. § 29.604 with Commissioner Sweet. The Commissioner then consulted with another person before signing the 13th/17th Street Warrant.

The 13th/17th Street Warrant allowed the Milwaukee Police Department ("MPD") to conduct a knock warrant at 13th Street and 17th Street. The warrant authorized the search based on violations of Wis. Stat. § 29.604, Endangered and threatened species protected. The described objects of the search were listed on the 13th/17th Street Warrant as: Reptiles including but not exclusive of Chinese Alligators or Chinese Crocodiles; Pythons or Anaconda snakes; Spiders and turtles.

The 13th/17th Street Warrant was first executed at the 13th Street property on May 12, 2010. Due to the condition of 13th Street premises, it was declared to be a public safety hazard and health hazard and was determined to be unfit for human habitation by

the City of Milwaukee Department of Neighborhood Services, Special Enforcement Inspector, Erica Lewandowski, now Erica Roberts ("Roberts").

Due to the health and safety hazards at 13th Street it was not reasonable for MPD officers to remain on the premises until proper safety equipment and lighting could be brought to the scene.

After leaving 13th Street, MPD officers went to 17th Street and executed the 13th/17th Street Warrant at 17th Street. Once inside the 17th Street property MPD officers encountered a number of animals, including but not limited to crocodilians (alligators or crocodiles), spiders, snakes, and turtles. While at the 17th Street property, it was relayed to the MPD by various animal experts on scene that the animals were not in good condition and needed to be removed from the premises. The MPD relied on the advice and guidance of the animal experts on scene, including personnel from the Department of Natural Resources and MADACC, when removing the animals.

On May 13 and 14, 2010, the MPD returned to 13th Street along with numerous animal experts to assist with the execution of the 13th/17th Street warrant. While at the 13th Street property, it was relayed to MPD by various animal experts on scene that the animals were not in good condition and needed to be removed. All of the animals were removed because: (1) of the legal authority of the warrant, (2) dangerous nature of the animals, (3) safety of the community at large, (4) safety concerns for the animals based on the conditions they were being kept in, (5) concerns for the animals because once DNS condemned the 13th Street property as unfit for habitation, there are living animals that cannot be left without care (Plaintiff Terry Cullen had informed investigating officers

he was out of town for a number of weeks), and (6) in order to determine which animals were subject to the warrant, they needed to be removed due to the manner in which they were housed.

A search warrant was also executed at 3401 South 16th Street ("16th Street") and 3348 S. Kinnickinnic Avenue ("KK property") in May of 2010. Plaintiffs are alleging intentional, excessive, and unreasonable property damage to the four properties during the execution of the search warrants.

Defendants claim that any property damage that may have occurred during the execution of the search warrants were reasonable and necessary to the execution of the warrant. Defendants further assert that plaintiffs do not own 17th Street and therefore cannot claim any property damage related to 17th Street. Plaintiffs have no evidence of who caused the alleged unlawful damage and therefore, by extension, they have no evidence that Felician or Simmert were personally involved in causing the alleged unlawful damage.

**(2) Statement of the Issues**

1. Was it unreasonable for Felician and Simmert to seize all the animals found at 13th Street and 17th Street given the circumstances and facts presented during the execution of the search warrant?

2. Was it unreasonable for MPD officers to seize personal property, including guns, found at the properties given the circumstances and facts presented during the execution of the search warrant?

3. In terms of damage to 13th Street during the execution of the search warrant:

a. Did Felician personally and intentionally cause excessive damage during the execution of the search warrant at 13th Street?


a. Did Felician personally and intentionally cause excessive damage during the execution of the search warrant at 13th Street?
b. Did Felician witness Simmert about to use excessive force during the execution of the search warrant at 13th Street and did Felician have a reasonable opportunity to stop Simmert?
c. Did Simmert personally and intentionally cause excessive damage during the execution of the search warrant at 13th Street?
d. Did Simmert witness Felician about to use excessive force during the execution of the search warrant at 13th Street and did Simmert have a reasonable opportunity to stop Felician?

4. In terms of damage to 16th Street during the execution of the search warrant:

   a. Did Felician personally and intentionally cause excessive damage during the execution of the search warrant at 16th Street?
   b. Did Felician witness Simmert about to use excessive force during the execution of the search warrant at 16th Street and did Felician have a reasonable opportunity to stop Simmert?
   c. Did Simmert personally and intentionally cause excessive damage during the execution of the search warrant at 16th Street?
   d. Did Simmert witness Felician about to use excessive force during the execution of the search warrant at 16th Street and did Simmert have a reasonable opportunity to stop Felician?

5. In terms of damage to the KK property during the execution of the search warrant:

   a. Did Felician personally and intentionally cause excessive damage during the execution of the search warrant at the KK property?
   b. Did Felician witness Simmert about to use excessive force during the execution of the search warrant at the KK property and did Felician have a reasonable opportunity to stop Simmert?
   c. Did Simmert personally and intentionally cause excessive damage during the execution of the search warrant at the KK property?

    d. Did Simmert witness Felician about to use excessive force during the execution of the search warrant at the KK property and did Simmert have a reasonable opportunity to stop Felician?

6. In terms of damage to 17th Street during the execution of the search warrant:

    a. Did Felician personally and intentionally cause excessive damage during the execution of the search warrant at 17th Street?

    b. Did Felician witness Simmert about to use excessive force during the execution of the search warrant at 17th Street and did Felician have a reasonable opportunity to stop Simmert?

    c. Did Simmert personally and intentionally cause excessive damage during the execution of the search warrant at 16th Street?

    d. Did Simmert witness Felician about to use excessive force during the execution of the search warrant at 17th Street and did Simmert have a reasonable opportunity to stop Felician?

7. In terms of damage to personal property seized during the execution of the search warrant:

    a. Did Felician personally and intentionally cause damage to personal property seized?

    b. Did Felician witness Simmert about to intentionally cause damage to personal property and did Felician have a reasonable opportunity to stop Simmert?

    c. Did Simmert personally and intentionally cause damage to personal property seized?

    d. Did Simmert witness Felician about to intentionally cause damage to personal property and did Simmert have a reasonable opportunity to stop Felician?

## (3) Names and Addresses of All Witnesses Expected to Testify

The defendants may call the following individuals as witnesses on their behalf:

1. Paul Felician - may be contacted through Defendants' counsel

2. Phil Simmert- may be contacted through Defendants' counsel

3. Terry Cullen – may be contacted through Plaintiffs' counsel

4. Jane Flint – may be contacted through Plaintiffs' counsel

5. Erica Roberts- may be contacted through Defendants' counsel

6. Jay Unora- may be contacted through Defendants' counsel

7. Jaimie Arce (formerly Hewitt) - may be contacted through Defendants' counsel

8. Ivan Wick- may be contacted through Defendants' counsel

9. Steven J. Weinkauf- may be contacted through Defendants' counsel

10. Perry J. Bertoni- may be contacted through Defendants' counsel

11. Salvatore Santoro, Jr. - may be contacted through Defendants' counsel

12. James Krause- may be contacted through Defendants' counsel

13. Leonard M. Kreil- may be contacted through Defendants' counsel

14. Steven J. Bukowski- may be contacted through Defendants' counsel

15. Richard A. Kaiser- may be contacted through Defendants' counsel

16. Richard O. Matiszik- may be contacted through Defendants' counsel

17. Daniel T. Disimile- may be contacted through Defendants' counsel

18. Ryan T. Venne- may be contacted through Defendants' counsel

19. Troy Klemstein- may be contacted through Defendants' counsel

20. Justin D. Fullington- may be contacted through Defendants' counsel

21. Peter Laritson - may be contacted through Defendants' counsel; may be called as a foundation witness if any DNS photographs are challenged by plaintiffs.

22. Expert Witness - Sean Perry

23. Rebuttal Witness – Ryan Ranker **-** may be contacted through Defendants' counsel

24. Records custodian—Milwaukee Police Department

25. Any witness listed on Plaintiffs' witness list

26. A witness to provide foundation for any documents whose authenticity is challenged by plaintiffs.

**(4) Expert Witnesses**

Defendants will be calling Dr. Sean Perry as an expert witness. Dr. Perry will offer opinions pertinent to plaintiffs' claimed damages related to the seizure of the animals seized in this case. In particular, Dr. Perry may testify as to the factors necessary to ensure breeding of reptiles at issue in this case, the value of breeding the type of animals seized in this case, the market value of the animals seized and may offer opinions consistent with the reports he has generated in this case that have been provided to plaintiffs' counsel.

**(5) List of Exhibits to be Offered at Trial**

The defendants may rely upon some of the documents identified by the plaintiff as exhibits in the trial of this case, or may introduce them separately if not offered by the plaintiff.  In particular, or in addition to these exhibits, the defendants may submit the following as exhibits:

1001    May 12, 2010 Search Warrant for 13th Street and 17th Street ("13th/17th Street Warrant") issued by the Honorable David M. Sweet and Affidavit supporting this search warrant by Detective Phil Simmert.

8

1002    Search Warrant for 16th Street and Affidavit supporting this search warrant.

1003    Search Warrant for the KK property and Affidavit supporting this search warrant.

1004    Police reports authored by Detective Phil Simmert related the investigation of Terry Cullen and related to the search of plaintiffs' properties.

1005    Police reports authored by Police Officer Ivan Wick related the investigation of Terry Cullen and related to the search of plaintiffs' properties.

1006    MPD police reports related to the investigation of Terry Cullen and related to the search of plaintiffs' properties.

1007    DNS Emergency Placard Order for 13th Street.

1008    DNS 30-Day Orders for 13th Street; there were two.

1009    DNS file, including notes, for 13th Street and 17th Street.

1010    DNS photographs from 13th Street and 17th Street.

1011    MPD photographs from 13th Street, taken during the May, 2010 execution of the search warrant.

1012    MPD photographs from 16th Street, taken during the May, 2010 execution of the search warrant.

1013    MPD photographs from the KK property, taken during the May, 2010 execution of the search warrant.

1014    MPD photographs from 17th Street, taken during the May, 2010 execution of the search warrant.

1015    Group Exhibit - Photographs from 13th Street, taken on August 21, 2020.

1016    Group Exhibit - Photographs from 16th Street, taken on August 21, 2020.

1017    Group Exhibit - Photographs from KK property, taken on August 21, 2020.

1018    Group Exhibit - Photographs from 17th Street, taken on August 21, 2020.

1019    MPD video of execution of search warrant at 13th Street.

1020    Notice of Injury, signed by Terry Cullen and others on September 8, 2010.

1021    MPD file of Terry Cullen's complaint about police in 2010.

1022    MPD audio-recorded interview of Terry Cullen regarding his complaint about police in 2010.

1023    Tax returns for Plaintiff Pleguar Corporation.

1024    Tax returns for Plaintiff Dragonwood Conservancy, Inc.

1025    Tax returns for Plaintiff Terry Cullen.

1026    Articles of Incorporation for Dragonwood, and updates.

1027    Unrecorded Quit Claim of 17th Street, dated 11/22/05, and envelope.

1028    Warranty Deed for 13th Street

1029    Quit Claim Deed for 16th Street.

1030    Warranty Deed for 17th Street.

1031    Mortgage for 17th Street, 4/12/12.

1032    Recorded Deed for KK property.

1032    Milwaukee Code of Ordinances ("MCO") 78-5-1, in effect in May, 2010.

1033        MCO 78-23-23-1-a, in effect in May, 2010.

1034        MCO 78-1-13-a-1, in effect in May, 2010.

1035        13th Street Skeletal Warrant and supporting Affidavit.

1036        MPD SOP 3/560 Property

1037        MPD SOP 3/970 Confidential Informants/Search Warrants

1038        Repair Estimates for 13th Street, 16th Street, KK property, and 17th Street.

1039        Property record card for 13th Street, 16th Street, KK property, and 17th Street.

1040        Kenosha Police reports pertinent to Erik Katz.

1041        MFD reports from responding to 13th Street, 16th Street, KK property, and 17th Street in May, 2010.

1042        Deposition Transcript of Jane Flint in *Flint v. City of Milwaukee, et al*, Eastern District of Wisconsin Case No. 14-CV-333.


**(6) Designation of All Depositions or Portions of Transcripts or Other Recordings of Depositions To be Read into the Record or Played at Trial as Substantive Evidence**

At this time, the defendants may read portions of deposition testimony of various witnesses or parties for the purpose of impeachment or rehabilitation. They are not now aware of any unavailable witness at this time, but do reserve the right to record the testimony of any unavailable witness for use at the trial, should a witness become unavailable between now and the beginning of the trial.

**(7) Estimate of Time Needed to Try the Case**

The matter should be tried to completion in 8 days. The defendants anticipate that counsel for the parties will continue to confer as to certain stipulations in an effort to expedite the trial of this matter.

The parties did confer about the following matters. Defendants hope to be able to present a stipulation as to the following, as soon as practical:

1. Plaintiffs agree to not mention the City of Milwaukee as a defendant or party in this case; they agree not to mention the City of Milwaukee or taxpayers as paying any judgment in this case. Plaintiffs further agree to keeping the City of Milwaukee off any Verdict submitted to the jury.

2. Plaintiffs agree not to introduce any evidence or elicit any testimony pertaining to any complaints made or disciplinary action taken against any Milwaukee police officer, including, but not limited to, defendants Felician and Simmert.

3. Plaintiffs agree that permitting of animals is not an issue in this case. Plaintiffs stipulate to not calling any witness to testify as to permitting and plaintiffs will not elicit any testimony as to the issue of permitting, as long as defense counsel does not elicit any testimony or put in any evidence regarding permitting. Defendants agree not to elicit testimony or put in any evidence pertaining to the permitting of animals. Plaintiffs specifically agree not to call Alan Shoemaker, Andrew Badie, Analise Lindborg as witnesses in this case.

4.  Plaintiffs specifically agree not to call Erin Blakely Klotz as a witness and they further agree not to call any gas utility serviceman or water utility serviceman as witnesses at trial.

5.  Defendants agree not to introduce any evidence or elicit any testimony pertaining to gynecological books found and/or recovered from the plaintiffs' properties.

6.  Defendants agree that neither Felician, nor Simmert will attempt to find information about potential jurors that is not publically available, specifically, defendants agree that Felician and Simmert will not use any law enforcement search engine to obtain information on potential jurors, nor will Felician and Simmert elicit anyone else to use any law enforcement search engine to obtain information on potential jurors. Defendants are formally stipulating to this due to plaintiffs' request, though defendants would never have used or caused someone else to use any law enforcement search engine in this fashion. This stipulation does not prevent defense counsel or staff for defense counsel to conduct research on potential jurors based on information publically available.

**(8)(a) Proposed *Voir Dire* Questions:**

The defendants submit the proposed *voir dire* questions which are attached hereto as Attachment A.

**(8)(b) Proposed Jury Instructions on Substantive Issues**

The defendants propose jury instructions, filed separately, drawn from the Federal Civil Jury Instructions of the Seventh Circuit, or upon the substantive federal law; as noted by the Committee on Federal Civil Jury Instructions for the Seventh Circuit, "No trial judge is required to use them, and the Committee, while hopeful that they will provide an effective template in most trials, strongly recommends that each judge review the instructions to be sure each fits the case on trial [and…t]he instructions were drafted with the expectation that certain modifications will be made routinely."

**(8)(c) Proposed Verdict Form**

The defendants submit as the proposed verdict to be provided to the jury at the close of the trial in the above-captioned case the material attached hereto as Attachment B.

Dated and signed at Milwaukee, Wisconsin this 26th October, 2020.

TEARMAN SPENCER
City Attorney

s/ HEATHER HECIMOVICH HOUGH
Assistant City Attorney
State Bar No. 1092637

JENNY YUAN
Assistant City Attorney
State Bar No. 1060098
Attorneys for Defendants

Milwaukee City Attorney's Office
800 City Hall
200 East Wells Street
Milwaukee, WI  53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
Email: hhough@milwaukee.gov                    1032-2016-1146/271703

# ATTACHMENT A

## DEFENDANTS' PROPOSED *VOIR DIRE* QUESTIONS

1.      Have you read anything about this lawsuit or heard anything about it on the radio or on television?  If so, would that coverage or commentary influence you in your consideration of the evidence of this case?

2.      Do you have any feelings, whether strongly positive or strongly negative, towards the City of Milwaukee Police Department?  If so, would those feelings influence your consideration of the evidence of this case?

3.      Have you or any members of your family had any police training?  If so, what was the nature and extent of that training?

4.      Are you or members of your family familiar with the locations of (1) 2319-2323 South 13th Street, (2) 3443 South 17th Street, (3) 3401 South 16th Street, or (4) 3348 South Kinnickinnic Avenue, in the City of Milwaukee?

5.      Have you or a member of your immediate family ever made a claim against any law enforcement department?  Please briefly explain.

6.      Have you or any member of your family or close friend had any unpleasant experience or encounter with any police officer?

7.      Is there anything about the nature of this case that may make it difficult for you to sit on the jury?

8.      Have any of the prospective jurors or jurors' family members had any legal

training?  If so, what was the nature and extent of the training?

9.      Have you, or any of your family or friends, ever been detained by a law enforcement officer?  If yes, please identify who has been detained and describe the circumstances of the detention.

10.      Have you, or do you have any family or friends who have been to jail or prison?  If yes, please describe the relationship you have with said person(s).

11.      Do you believe people in prison sometimes approach law enforcement with information pertaining to other people/cases in hopes of reducing their sentences?

12.      Do you believe that people will sometimes lie to law enforcement officers in an effort to shift any possible criminal responsibility from themselves to some other person?

# ATTACHMENT  B

**DEFENDANTS' PROPOSED SPECIAL VERDICT**

**Claim No. 1**

**Exceed Scope of Search Warrant**

**QUESTION NO. 1:**

Did any of the following defendant officers act unreasonably when all the animals were seized, in light of the circumstances facing the defendant officers at 13th Street and 17th Street?

    A.  Paul Felician

        Answer: _____ Yes ____ No

    B.  Phil Simmert

        Answer: _____ Yes ____ No

If you answered "no" to all parts of Question No. 1, then you need not answer Question No. 2. However, if you have answered "yes" to any two parts of Question No. 1, then answer Question No. 2:

**QUESTION NO. 2:**

What amount of money, if any, do you award to fairly and reasonably compensate the Plaintiff, the Dragonwood Conservancy, Inc., for the animals being seized?

                              Answer: $_____
                                       (Amount)

What amount of money, if any, do you award to fairly and reasonably compensate the Plaintiff, Terry Cullen, for the animals being seized?

                              Answer: $_____
                                       (Amount)

**QUESTION NO. 3:**

Did any of the following defendant officers act unreasonably when personal property was seized, including guns, in light of the circumstances facing the defendant officers at 13th Street, 17th Street, 16th Street, and the KK property?

A.  Paul Felician

Answer: _____ Yes _____ No

B.  Phil Simmert

Answer: _____ Yes _____ No

If you answered "no" to all parts of Question No. 3, then you need not answer this question.  However, if you have answered "yes" to any two parts of Question No. 3, then answer this question:

**QUESTION NO. 4:**

What amount of money, if any, do you award to fairly and reasonably compensate the Plaintiff, Terry Cullen, for personal property being seized?

Answer: $_____
(Amount)

What amount of money, if any, do you award to fairly and reasonably compensate the Plaintiff, the Pleguar Corporation, for personal property being seized?

Answer: $_____
(Amount)

3

**QUESTION NO. 5**

Did any of the following defendant officers act unreasonably when personal property was damaged, in light of the circumstances facing the defendant officers at 13th Street, 17th Street, 16th Street, and the KK property?

    A.  Paul Felician

          Answer: _____ Yes _____ No

   B.  Phil Simmert

          Answer: _____ Yes _____ No

If you answered "no" to all parts of Question No. 5, then you need not answer Question No. 6. However, if you have answered "yes" to any two parts of Question No. 5, then answer Question No. 6:

**QUESTION NO. 6:**

What amount of money, if any, do you award to fairly and reasonably compensate the Plaintiff, Terry Cullen, for personal property being damaged?

                          Answer: $_____

                                 (Amount)

4

**Claim No. 2**

**Unreasonable Search of the Properties**

**QUESTION NO. 7:**

Did any of the following defendant officers personally and intentionally act unreasonably during the execution of the search warrant at 13th Street in light of the circumstances facing the defendant officers at 13th Street?

    A.  Paul Felician

          Answer: _____ Yes _____ No

    B.  Phil Simmert

          Answer: _____ Yes _____ No

**QUESTION NO. 8:**

Did any of the following defendant officers fail to intervene to prevent another defendant officer from acting unreasonably during the execution of the search warrant at 13th Street?

    A    Paul Felician

          Answer: _____ Yes _____ No

    B.  Phil Simmert

          Answer: _____ Yes _____ No

If you answered "no" to all parts of Question No. 7 and 8, then you need not answer Question No. 9. However, if you have answered "yes" to any part of Questions No. 7 and 8, then answer Question No. 9:

Case 2:16-cv-00534-NJ   Filed 10/26/20   Page 23 of 27   Document 137

**QUESTION NO. 9:**

What amount of money, if any, will compensate the Pleguar Corporation for any

damages caused by the unreasonable execution of the search warrant at 13th Street?

$\underline{\hspace{5cm}}$

(Amount)

**QUESTION NO. 10:**

Did any of the following defendant officers personally and intentionally act
unreasonably during the execution of the search warrant at 16th Street in light of the
circumstances facing the defendant officers at 16th Street?

A.  Paul Felician

Answer: _____ Yes _____ No

B.  Phil Simmert

Answer: _____ Yes _____ No

**QUESTION NO. 11:**

Did any of the following defendant officers fail to intervene to prevent another

defendant officer from acting unreasonably during the execution of the search warrant at

16th Street?

A    Paul Felician

Answer: _____ Yes _____ No

B.  Phil Simmert

Answer: _____ Yes _____ No

If you answered "no" to all parts of Question No. 10 and 11, then you need not answer Question No. 12.  However, if you have answered "yes" to any two parts of Question No. 10 and 11, then answer Question No. 12:

**QUESTION NO. 12:**

What amount of money, if any, will compensate the Pleguar Corporation for any damages caused by the unreasonable execution of the search warrant at 16th Street?

<div align="center">
Answer: $_____

(Amount)
</div>

**QUESTION NO. 13:**

Did any of the following defendant officers personally and intentionally act unreasonably during the execution of the search warrant at the KK property in light of the circumstances facing the defendant officers at the KK property?

A.  Paul Felician

Answer: _____ Yes _____ No

B.  Phil Simmert

Answer: _____ Yes _____ No

**QUESTION NO. 14:**

Did any of the following defendant officers fail to intervene to prevent another defendant officer from acting unreasonably during the execution of the search warrant at the KK property?

A    Paul Felician

Answer: _____ Yes _____ No

B.  Phil Simmert

7

Answer: _____ Yes ____ No

If you answered "no" to all parts of Question No. 13 and 14, then you need not answer Question No. 15. However, if you have answered "yes" to any two parts of Question No. 13 and 14, then answer Question No. 15:

**QUESTION NO. 15:**

What amount of money, if any, will compensate Terry Cullen for any damages caused by the unreasonable execution of the search warrant at the KK property?

Answer: $_____

(Amount)

**QUESTION NO. 16:**

Did any of the following defendant officers personally and intentionally act unreasonably during the execution of the search warrant at 17th Street in light of the circumstances facing the defendant officers at 17th Street?

A. Paul Felician

Answer: _____ Yes ____ No

B. Phil Simmert

Answer: _____ Yes ____ No

**QUESTION NO. 17:**

Did any of the following defendant officers fail to intervene to prevent another defendant officer from acting unreasonably during the execution of the search warrant at 17th Street?

A   Paul Felician

Answer: _____ Yes ____ No

8

B.  Phil Simmert

        Answer: _____ Yes _____ No

If you answered "no" to all parts of Question No. 16 and 17, then you need not answer Question No. 18.  However, if you have answered "yes" to any two parts of Question No. 16 and 17, then answer Question No. 18:

**QUESTION NO. 18:**

What amount of money, if any, will compensate the Pleguar Corporation for any damages caused by the unreasonable execution of the search warrant at 17th Street?

        Answer: $_____

               (Amount)

**Punitive Damages**

**QUESTION NO. 19:**

What amount of money, if any, do you award as punitive damages against any of the following officers?

A.  Paul Felician

    $_____

B.  Phil Simmert

    $_____

        _____

        FOREPERSON

9