UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE DRAGONWOOD CONSERVANCY, INC.,
PLEGUAR CORPORATION,
TERRY CULLEN,

      Plaintiffs,

v.                                                 Case No. 16-CV-00534

PAUL FELICIAN,
PHIL SIMMERT II,
JANE AND JOHN DOE(S)
CITY OF MILWAUKEE, and
ABC INSURANCE COMPANY,

      Defendants.

## DEFENDANTS' RESPONSE BRIEF OBJECTING TO PLAINTIFFS' MOTIONS IN LIMINE

Defendants, by and through their attorney, Tearman Spencer, City Attorney, by Assistant City Attorneys Heather Hecimovich Hough and Jenny Yuan, submit this brief in response to Plaintiffs' Motions in Limine (along with additional request for orders) filed with this Court on October 26, 2020 (Dkt. 140). Plaintiffs did not file a supporting brief.

Plaintiffs request that a number of items be precluded at trial with a blanket statement that inclusion would be irrelevant, unduly prejudicial, confusing, a waste of time and other reasons in accordance with Fed. R. Evid. §§ 401, 402 and 403. (Dkt. 140 p. 1). Plaintiffs do not attempt to explain to this Court how or why such information would violate the Federal Rules of Evidence, or why it may be irrelevant, or prejudicial, etc. To the extent defendants can make assumptions as to the reasons from their list of requests, defendants respond as follows:

1. **Plaintiffs seek to prohibit any witness from testifying, whose identity and subject matter of testimony has not been disclosed per this Court's Orders (Dkt 140, p. 1).**

Defendants have no witnesses they intend to call upon that has not already been disclosed to plaintiffs or this Court. See defendants' pre-trial report. (Dkt. 137).

2. **Plaintiffs seek to prohibit "the introduction or reference to the underlying proceedings in the Milwaukee County Circuit Court 2010CV2659, and/or to any other reference to any alleged 'sexual assault' (charged against Mr. Cullen in said Circuit Court Proceedings);" including references to the victim, sexual assault allegations, reference to sensitive crimes, any criminal charges, process and/or dispositions relating to sexual assault. Included in this request is a seemingly unrelated request "specifically prohibiting defendants from claiming they relied upon the Circuit Court Orders when effecting a permanent deprivation upon Plaintiffs." (Dkt. 140, p. 1-2).**

As it relates to the bulk of this request, defendants object to a sweeping prohibition of any or all reference to underlying proceedings in the Milwaukee County Circuit Court case, some of which are relevant to defending this case. For instance, Plaintiff Terry Cullen petitioned the court in the criminal matter for the appointment of a receiver for his animals and for the return of the animals. Where plaintiffs are alleging that the individually named defendants Felician and Simmert are liable for the permanent deprivation of the animals because, according to plaintiffs, it was "reasonably foreseeable" to Felician and Simmert that that animals would be permanently deprived from plaintiffs when they were seized, inclusion of such evidence would be relevant. Defendants do not object to omission of the charge and disposition of the sexual assault. However, the facts are such that defendants Felician and Simmert, at the time plaintiffs' alleged constitutional violation occurred, were both assigned to the Sensitive Crimes Division of the Milwaukee Police Department. Jennifer R. reported alleged crimes to the Sensitive Crimes Division not limited to sexual assault that were being investigated and the supporting affidavit defendant submitted for the warrant relays vital information pertaining to the "why" and "how" defendant Simmert believed he would uncover fruits of a crime if a warrant was issued. To the

2

extent that is necessary to provide information to the jury as to why defendant Simmert requested the warrant, the inclusion of the source of the information (Jennifer R.) may be necessary.

Defendants have a right question Felician and Simmert about their respective backgrounds, training, experience, and work history to allow the jury to get to know the defendants. This goes to credibility and is relevant so the jury can assess each respective officer's experience and knowledge as one of the primary issues for trial is whether one or both of the two defendant officers exceeded the scope of the warrant when seizing all the animals. Plaintiffs' broad motion in limine seeking to exclude "any reference" to sensitive crimes would prevent defendants' ability to fully testify as to their assignments with the Milwaukee Police Department, as both were assigned to the Sensitive Crimes Division at the time of the execution of the search warrant, and would prevent defendants' from being able to provide a complete description of their training and experience, especially as it pertains to what they encountered at the scene when executing the various search warrants.

As it relates to plaintiffs' request to prohibit defendants from claiming they relied upon the Circuit Court Orders when effecting a permanent deprivation upon Plaintiffs, defendants object. First, defendants assert that any permanent deprivation of animals was not caused by the individually named officers by any means. Plaintiffs' counsel has submitted briefing in this case suggesting that Felician and Simmert are liable because it was allegedly reasonably foreseeable when all the animals were seized that plaintiffs would be permanently deprived of the animals. Certainly defendants should be able to present evidence refuting this claim. Court orders were issued in the Milwaukee County Circuit Court criminal proceeding denying the return of animals to plaintiff Terry Cullen. Plaintiffs are claiming defendants Felician and Simmert are individually liable for the permanent deprivation of animals. Defendants should be permitted to

3

defend against this claim by showing that, in fact, the deprivation was caused by Court Order. The fact that the Court issued an order denying return of the animals also goes to the argument that the permanent deprivation would not have been reasonably foreseeable to Felician and Simmert. This information is relevant to the defense of this case, and is not unduly prejudicial. Allowing this evidence at trial would make it difficult for the plaintiffs to prove Felician and Simmert were individually liable for the permanent deprivation of the seized animals. That is not a reasonable basis for excluding this evidence.

3. **Plaintiffs request the prohibition of "any and all evidence preceding the date and time of Defendant Simmert's presentation of the application for search warrant to the Court Commissioner – as this Court has found that the search warrant was supported by probable cause" (Dkt. 140, p. 2).**

Defendants object to this request. One of the primary issues left for trial is whether defendants Felician or Simmert, or both, exceeded the scope of the search warrant. Plaintiffs' counsel also raised during depositions of various witnesses, including Felician and Simmert, the issue of whether the Milwaukee Police Department were adequately prepared for what they would find at the properties, in particular, 13th Street and 17th Street. Based on the manner in which plaintiffs have conducted discovery, defendants expect plaintiffs' counsel to elicit testimony and argue that Felician and Simmert were liable for the MPD being unprepared for what they encountered at the properties, and that this was a cause of the alleged unreasonable damage and alleged unreasonable seizure. The information that Simmert knew, as part of his investigation, which led to the issuance of the search warrants in this case speak directly to these issues. Defendants should be permitted to present evidence regarding what Simmert knew about the properties in question, what Simmert knew about what he expected to find in the properties, and what he was told by a witness whom he deemed credible, Jennifer R. Furthermore, Simmert should be able to testify as to what he included in the search warrant for 13th Street and 17th

4

Street and the supporting affidavit, along with the reasons he included said information. Any evidence related to the investigation leading up to the warrant as it relates to the animals is relevant evidence and should be allowed.

4. **Plaintiffs request that this court prohibit "highly prejudicial, editorial comments and opinions by law enforcement, reflected in the discovery record" including the terms "house of horrors," "near or actual vomiting," "hoarder," or "shoveling a path of dog feces in the courtyard of 13th Street." (Dkt. 140 p. 2).**

Defendants object to the omission of descriptors within relevant police reports. The reports were written by officers, one of which is a named defendant in this case, Simmert, who will be called to testify at trial; and their testimony is based upon their observations at the properties. Their observations and the manner in which they chose to describe what they saw when at the properties are relevant to present to the jury. Simmert described the 13th Street property as a "house of horrors" in his police report. That description is relevant to the condition the animals were found in and the environment they were kept in by the plaintiff, Cullen, when police were at 13th Street. While plaintiffs may dispute the characterization of what witnesses observed when at 13th Street, that is a matter for cross-examination along with testimony from Cullen or plaintiffs' other witnesses.

5. **Plaintiffs request that testimony or evidence about the amount of ammunition seized during the execution of the warrant be omitted. (Dkt. 140 p. 3)**

To the extent that plaintiffs can pick and choose what property seized amounts to a constitutional violation and what does not, defendants do not object.

6. **Plaintiffs request that testimony or evidence about law enforcement seizing gynecology books from Plaintiffs. (Dkt. 140 p. 3)**

To the extent that plaintiffs can pick and choose what property seized amounts to a constitutional violation and what does not, defendants do not object. Defendants had already agreed upon this matter orally during a telephonic conferral held on October 22, 2020 and

5

followed up in writing in an e-mail. As of the filing of this response, plaintiffs' counsel has not responded to defense counsels' email memorializing the oral stipulations reached on October 22, 2020. (Hough Declaration par. 5).

7. **Plaintiffs request that all testimony and evidence relating to Plaintiffs' witness, Erik Katz for animal related offenses (a previous citation) be omitted and cite Fed. R. Evid. 404. (Dkt. 140 p. 3).**

Defendants object. First, a municipal citation is not a crime. Second, Fed. R. Evid. § 404 (a) (3) provides exceptions for witnesses. Erik Katz is a witness. Evidence of a witness' character may be admitted under Fed. R. Evid. §§ 607, 608 and 609. Rule 607 provides that "any party, including the party that called the witness, may attack the witness' credibility." Rule 608 (b) (1) provides, "…extrinsic evidence is not admissible to provide specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or 2) another witness whose character the witness being cross-examined has testified about." Parties are aware that Erik Katz's animal portfolio was seized from him by law enforcement in a different municipality in 2013, resulting in a citation being issued. Erik Katz admitted to this at his deposition. Defendants assert the right to impeach the witness and bring forward this information should it become necessary during trial. Based on Erik Katz's deposition, defendants expect Erik Katz to testify that he learned about how to care for and take care of reptiles and exotic animals through his internship with the Dragonwood Conservancy and working with Cullen, in the years before his 2013 municipal citation. Erik Katz admits his reptiles and exotic animals were seized by police in 2013 and there were deceased animals found in his backyard. Defendants should be permitted to attack Erik Katz's credibility based on this information.

6

Case 2:16-cv-00534-NJ    Filed 10/30/20    Page 6 of 11    Document 143

8. **Plaintiffs request the prohibition of testimony and evidence regarding federal and state permits related to Plaintiff Dragonwood's animal portfolio. (Dkt. 140 p. 3).**

During a telephone conferral held between counsel for both parties on October 22, 2020, and followed up with an e-mail by defendants' counsel, parties already agreed that this would be irrelevant for trial. (Hough Declaration, Exhibit 1). Defendants do not object.

9. **Plaintiffs request the prohibition of all testimony and evidence relating to the legality of plaintiff Dragonwood's ownership of the animal portfolio. (Dkt. 140 p. 3).**

Defendants object to omitting testimony and evidence regarding law enforcement suspicions that animals were being kept in violation of law which resulted in an affidavit and warrant. It is necessary testimony to understand what the defendant officers knew at the time of the execution of the warrants and the seizure of property.

10. **Plaintiffs seek to prohibit all testimony and evidence relating to the fact that plaintiffs did not avail themselves of Wis. Stat. Ch. 173 or other state process for the return of property. (Dkt. 140 p. 3).**

Defendants object. Such evidence or testimony is absolutely relevant. First, it provides a valid defense to any assertion plaintiffs make that permanent deprivation of animals was foreseeable to defendants Felician and Simmert. A process for property return, animals or other personal property, provided by state law, is relevant and important evidence to allow at trial. In addition, information about property return procedures and plaintiffs' failure to follow these laws is relevant as it is related to mitigation of damages.

11. **Plaintiffs seek to prohibit all testimony and evidence relating to plaintiffs' tax returns. (Dkt. 140 p. 3).**

Defendants object. Tax return documentation shows income and asset fluctuations, or lack thereof, relevant to providing the Court and the jury proof (or lack thereof), of income, asset, or real estate loss. Plaintiffs are claiming loss of income, associated with the seizure of the animal portfolio. Plaintiffs specifically claim that Cullen would attend reptile shows or other

events with reptiles and that Cullen would be paid specific amounts based on his appearance at these shows or events. Plaintiffs' are alleging approximately $750,000 in loss of income associated with the alleged loss of income associated with the shows or events (Amend. Comp., Dkt. 13).

12. **Plaintiffs seek to "prohibit the introduction or reference to, hearsay reports and improper expert opinions, as to the health, husbandry, and/or condition of the seized animals from any person lacking personal knowledge, and/or who has not been properly named as an expert herein." (Dkt. 140 p. 3).**

Defendants object. Because plaintiffs offer this Court no reason as to why this testimony would be irrelevant, a waste of time, or unduly prejudicial, Defendants assume this is a veiled attempt at precluding defendants' named expert witness from testifying based upon plaintiffs' assertion that because defense expert has not asserted in any report that "degree of certainty in field of expertise" they are somehow not a valid expert. Defendants are separately responding to plaintiffs' Rule 702 motion to exclude defendants' named expert in this case.

13. **Plaintiffs request the exclusion of Defendants' expert witness, Sean Perry's report and testimony regarding the "veterinary and Animal Welfare Assessment" report. (Dkt. 140 p. 4).**

Defendants object. The basis for the objection will be provided in defendants' response to plaintiffs' brief in support of Rule 702 Motion to Exclude Sean Perry as Expert Witness.

14. **Plaintiffs request to exclude and prohibit any police video not produced by Defendants. (Dkt. 140 p. 4).**

Defendants do not intend to introduce any evidence at trial that they have not provided to plaintiffs.

15. **Plaintiffs request prohibition of the use of or reference to, the "Notice of Injury." (Dkt. 140, p. 4; see Dkt. 115--15).**

Defendants object. This document, signed by Plaintiff Terry Cullen in notifying the City of Milwaukee of any claims it may have against it is absolutely relevant as it pertains to property

8

Case 2:16-cv-00534-NJ   Filed 10/30/20   Page 8 of 11   Document 143

ownership, property conditions, damages and claims made related to and shortly after the execution of the warrants in 2010. The Notice of Injury signed by Cullen detailed the alleged damage to the four properties and seizure of property. This document was signed in September, 2010, mere months after the execution of the warrants. Defendants have a right to question Cullen about any discrepancies between the Notice of Injury that he signed in September, 2010 for claims and damages he was asserting against the City of Milwaukee, as compared to the claims and damages he is presently claiming.

16. **Plaintiffs request that the Court permit the jury to answer all damages questions herein, irrespective of their answers as to liability questions. (Dkt. 140, p. 4).**

Should the jury find that the individually named defendant officers Felician and Simmert are not liable for any alleged damages, it is a waste of the jury's time, judicial resources, and offers no legitimate purpose to permit the jury to spend the time to determine damages.

17. **Plaintiffs request that witnesses be excluded so they cannot hear other witness testimony. (Dkt. 140, p. 4).**

To the extent that this request does not included Defendants Felician and Simmert, who are individually named defendants, defendants do not object.

18. **Plaintiffs request that defendants refrain from accessing law enforcement databases to conduct background checks on any potential juror. (Dkt. 140, p. 4).**

Counsel for both parties conferred telephonically regarding this request and Defendants did not object. As we stated to Plaintiffs' counsel and followed-up with an e-mail (Hough Declaration, Exhibit 1), Defendants agree that no attempt will be made to obtain information about potential jurors that is not publicly available. Defendants had already agreed to this orally and in writing and did so at plaintiffs' request, though defendants would never have used or caused someone else to use any law enforcement search engine in this fashion.

19. **Plaintiffs request that this Court take judicial notice of any material findings of the Circuit Court. (Dkt. 140, p. 5).**

Defendants do not object.

20. **Plaintiffs request that this court take judicial notice of the "findings of Judge Jones based upon undisputed evidence." (Dkt. 140, p. 5).**

Defendants object again, and as summarized in defendants' response to plaintiffs' motion to strike (Dkt. 127) and response to plaintiffs' summary judgment brief (Dkt. 125), Judge Jones' previous orders were based upon findings of fact pre-discovery and in a light most favorable to the plaintiffs.

21. **Plaintiffs request the use of a videotape deposition of Attorney Stephen Glynn. (Dkt. 140, p. 5).**

Defendants object and have moved this court to preclude Stephen Glynn from testifying as a witness. (Def. Mot. In Limine Dkt. 134).

22. **Plaintiffs request that plaintiffs be collectively referred to and referenced. (Dkt. 140, p. 5).**

Defendants object. This case was pled in a way that parceled out damages to three separate plaintiffs (Amend. Compl., Dkt. 13)[1]. Plaintiff Dragonwood Conservancy has asserted sole ownership for the animal portfolio and therefore claim those damages exclusively for the conservancy. As pled, two of the properties are owned exclusively by Plaintiff Pleguar Corporation. Discovery was conducted, and defenses have been developed in this case based upon the way plaintiffs claimed damages that were parceled out to particular plaintiffs in the pleadings.

---

[1] During deposition, a deviation from the pleadings was noted when Plaintiff Terry Cullen testified to personally owning a total of five of the animals (see Dkt. 115-5, Cullen Dep. Trans. p. 102 lines 23-25; 103-109; 110 lines 1-16).

10

Case 2:16-cv-00534-NJ   Filed 10/30/20   Page 10 of 11   Document 143

Furthermore, damages that can be claimed by the Dragonwood Conservancy, a 501(c), non-profit organization, is distinctly different than the type of damages that Cullen may claim personally.

23. **Plaintiffs request an order requiring counsel to advise witnesses of rulings on plaintiffs' motions in limine. (Dkt. 140, p. 5).**

Defendants do not object.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiffs motions in limine numbered two (2) in part, three (3), four (4), seven (7), nine (9), ten (10), eleven (11), twelve (12), thirteen (13), fifteen (15), sixteen (16), and seventeen (17). In addition, this Court should deny plaintiffs "Request for Other Orders" numbered twenty (20), twenty-one (21) and twenty-two (22).

Dated and signed at Milwaukee, Wisconsin, this 30th day of October, 2020.

TEARMAN SPENCER
City Attorney

*/s/ Heather Hecimovich Hough*

_____
HEATHER HECIMOVICH HOUGH
State Bar No. 1092637
Assistant City Attorney

JENNY YUAN
State Bar No. 1060098
Assistant City Attorney

Attorneys for Defendants
City of Milwaukee, Paul Felician and
Phil Simmert, II

P.O. ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Facsimile: (414) 286-8550
Email: JYuan@milwaukee.gov
1032-2016-1146/272103