UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

| | | |
|---|---|---|
| THE DRAGONWOOD CONSERVANCY, INC., et al. Plaintiffs, | ) | Case No. 16-CV-534 |
| vs. | ) | Milwaukee, Wisconsin |
| PAUL FELICIAN, et al., Defendants. | ) | April 28, 2021 1:34 p.m. |

---

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE NANCY JOSEPH
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs: Law Offices of Mark P. Murphy
By: MR. MARK P. MURPHY
657 South 72nd Street
Milwaukee, Wisconsin 53214
Ph: 414-453-5555
Fax: 414-453-5520
attorneymarkmurphy@sbcglobal.net

For the Plaintiffs: Groth Law Firm
By: MR. THOMAS W. KYLE
11063 West Bluemound Road
Wauwatosa, Wisconsin 53226
Ph: 414-375-2030
tom@grothlawfirm.com

For the Defendants: Milwaukee City Attorney's Office
By: MS. JENNY YUAN and MS. HEATHER HECIMOVICH HOUGH
200 East Wells Street, Suite 800
Milwaukee, Wisconsin 53202
Ph: 414-286-2601
Fax: 414-286-8550
JYuan@milwaukee.gov
hhough@milwaukee.gov

U.S. Official Court Reporter: THOMAS A. MALKIEWICZ, RMR, CRR
Proceedings recorded by computerized stenography, transcript produced by computer aided transcription.

TRANSCRIPT OF PROCEEDINGS

THE CLERK: Calling case 16-CV-534. The Dragonwood Conservancy, Inc., et al. versus Felician, et al. This is scheduled for a status conference. Appearances, please, starting with the plaintiff?

13:34

MR. MURPHY: Attorneys Mark Murphy and Tom Kyle for plaintiffs. Good afternoon, Your Honor.

THE COURT: Good afternoon, Mr. Murphy; good afternoon, Mr. Kyle.

13:34

MS. HOUGH: Good afternoon, Judge. Attorney Heather Hough appears on behalf of Felician and Simmert.

THE COURT: Good afternoon, Miss Hough.

MS. YUAN: Good afternoon, Judge. Attorney Jenny Yuan here on behalf of defendants.

13:34

THE COURT: And good afternoon, Miss Yuan. Good afternoon, one and all. We have a lot of ground to cover, so I want to jump into it. Yesterday I inundated my E-mail box with a bunch of documents, which we will be referencing, and I'll also receive some filings from plaintiff as well, some special

13:35

jury instructions, jury instructions and letter regarding request for clarification and watching the video, so we'll endeavor to pick up everything.

But I want to start with one housekeeping matter. In reviewing the transcript from our last hearing, I noticed that

13:35

I have a lot of pauses in my colloquy, but I'll try to do

better on that. But, Mr. Murphy, I believe, several instances you are -- the court reporter cannot decipher what you were saying, and that was something that I had noticed during the hearing and I also saw in the transcript. So just be aware of that so we can catch everything you're saying for the record. All right then.

MS. YUAN: Judge, can I just note, I'm having a little bit of an issue hearing you. I don't know if anyone else is, maybe it's my laptop, but I'm having a little bit -- I'm leaning forward, but it's not coming through as clearly as it has in the past.

THE COURT: Thank you. Let me adjust my audio, let me put my volume up and see if that helps. Give me a second here. How about now? I think I have maximized everything. Is that any better?

MS. YUAN: It's better than before.

THE COURT: Is it still low?

MS. HOUGH: Judge, if I could just be a little descriptive. It sounds like you're speaking through glass this time. So it's just a little muffled, but I think the volume increase has helped.

THE COURT: Okay. I'm not sure what to do about muffling, I'll try to speak slower, and Mr. Court Reporter, please raise your hand if you're having a hard time understanding me. If I need to disconnect and reconnect, a bad

connection, I can always do that as well, so let's give it a shot and see what happens.

Mr. Miller, courtroom deputy, if you would also make me co-host for the meeting so that I'm allowed to share documents with the parties so that we're looking at the same documents together, that would be great.

So I will start by pulling up the document that I hear are the opening instructions, let's see here, give me a second, I can close the million documents that are on my screen. And I apologize for the pause, but let's see here. Okay. Are you able to see my screen?

MS. YUAN: Yes, Judge.

MS. HOUGH: Yes, Judge.

THE COURT: I am looking at the document civil jury trial, jury voir dire selection, jury instructions, so what I did with this document is the voir dire that had previously sent to you have been sorted into this document, similarly I also added some language about the case and the bifurcation, so that will be on page three, and that's highlighted for you.

And for the record, this is to be read to the jury, and then I'll ask you for any feedback or anything you object to. So this is the preliminary instructions that will be given at the beginning of the trial after we have -- before -- before voir dire is conducted.

For your general -- This is the name of the case will be

provided to -- to the veneer. For your general information this is a civil case. The matter arrives out of execution of search warrant at several properties in the City of Milwaukee in May, 2010. Plaintiffs claim that the searches and seizures were unreasonable in violation of the Fourth Amendment. Defendants deny that the searches and seizures were unreasonable.

The trial in this case has been bifurcated. This is a legal term which simply means that we are going to try this case in two parts. In the first part you will consider only the question as to whether the defendants are liable. If you find there is liability, in the second part you will consider the amount of damages that you find, if any, should be paid. At the appropriate time, I will give you more instructions to guide you as to both parts of the trial.

I'll begin with plaintiffs. Any feedback, objection, edits that you would like to see in this proposed language?

MR. MURPHY: Thank you, Your Honor. I -- We don't have anything to add at this point. We did get those, I think I saw them this morning, I read through them. But the standard instructions seem pretty fair.

THE REPORTER: Excuse me for interrupting. I apologize. This is the court reporter. I'm not sure who was speaking there. The screen I see you on is very small, and I'm not sure who was talking.

MR. MURPHY: My name's -- thank you for that -- Murphy there. No objection or comments as to that, Your Honor. Thank you.

THE COURT: Thank you, Mr. Murphy. And for the defense?

MS. YUAN: Thank you, Judge. Attorney Jenny Yuan here. Defendants don't have any objection to that language that we have highlighted and that you just read in. Thank you.

THE COURT: And then I will bring for the edits that I made to the voir dire questions, all the main voir dire questions I -- you had already seen at our last hearing, but plaintiff had asked that I add voir dire questions having to do, one, with firearm arms; and, two, having to do with search warrants. So on page seven, question number 12 has to be inserted. Question number 12 is: There will be testimony in this case about search warrants. Have any of you or your immediate family ever had a search warrant executed in your home or workplace? If yes, how long ago? If yes, for what? And, C., did you have any positive or negative feelings about the police based on this experience?

Question number 13. You will also hear about firearms during this trial. Do you or your immediate family members own a fire -- own firearms? Do you have positive or negative feelings about individuals lawfully owning firearms?

I will begin with you, Mr. Murphy. Any edits, feedback,

additions?

MR. MURPHY: Not at the moment. Thank you, Judge.

THE COURT: And for defense?

MS. YUAN: Yes, Judge. Jenny here. Jenny Yuan here again. I don't think we have any objection to that. Thank you.

THE COURT: All right. Well, that concludes this document, which outlines the procedure for the opening instructions, and toward the end as you see right before you do your opening, I remind them we're about to go into the trial, so I'll stop sharing this document, and I will share the document that I prepared for -- in a second for opening instructions right before the damage part that you also received, I believe the one-pager.

All right. I am sharing my screen document entitled opening instructions, part two: Damages. And it reads, as I indicated at the beginning of the trial, this trial is proceeding in two parts. Having addressed part one, liability, we will now move to part two on damages. All the instructions I gave you in part one regarding evidence and burden of proof and your duty as jurors continues to apply. And then I just describe the opening and closing procedure like I did in part one.

I'll begin with plaintiff again. Mr. Murphy, do you wish to be heard on this instruction?

MR. MURPHY: No. Thank you.

THE COURT: And, Miss Yuan, do you wish to be heard on this instruction?

MS. YUAN: No, Judge, thank you. It looks good.

THE COURT: All right. I'm going to stop sharing this document, so we can cross that off our to-do list.

Next, jump into the jury instructions. You previously have received proposed jury instruction packet from me, and what I had done in that document was if you recall I had married everything that both sides have proposed into one document so we had a document to work off of. At our last hearing we, I think, went through the general instructions and there was no controversy on that. I think where the work remains is on the substantive instructions, and also with this you will see that I separated the liability instructions from the damages instructions.

So let's begin with the -- by instruction, and I'm going to jump first to start talking about the substantive ones rather than the general ones which we have already discussed. And, again, my procedure is, of course, at the close of evidence we will have our final instruction conference, and at that time based on the evidence, there may be instructions that we won't need because it wouldn't apply, or there may be stuff that comes up during the trial that require instructions, or that final instruction conference is where we finalize these

13:47 points.

So let me attempt to share on the screen again and put these instructions up. Give me a second.

MS. YUAN: Judge, actually, I'm so sorry. I know we
13:47 went straight to the claim section of the jury instructions, but there were a couple of instructions that were submitted, I believe due to plaintiffs' filing on Monday, that were not discussed at our last hearing.

THE COURT: Yes.

13:47 MS. YUAN: The one on spoilation and then the adverse inference from missing witnesses.

THE COURT: Yes. We will address plaintiffs' proposal as well.

MS. YUAN: Okay. Thank you.

13:47 THE COURT: Plaintiffs' proposed special instruction, we will go over that as well. Okay. I am now sharing on the screen jury instructions, liability, and we're going to go straight to the claims and -- Well, let's not go straight to the claims. I think I had already inserted from the proposed
13:48 from plaintiffs in the general one that we can begin to talk about, and I believe the first one is on page 20 -- on page 20 of the -- of this packet. Yeah, page 20, adverse inference are from missing witness. Do you have that?

MR. MURPHY: I have it.

13:49 MS. YUAN: Yes.

MR. MURPHY: I have some of it.

THE COURT: Mr. Murphy, I'm looking at what's on the screen, the document entitled jury instructions, liability, that's stamped draft.

MR. MURPHY: I have it on page 25, Judge.

THE COURT: You have it on page 25? Okay. Then --

MS. YUAN: I have it on page 20, Judge.

THE COURT: Okay. All right. Well, we have it up on the screen, together we can talk about it. Plaintiffs' proposed adverse inference from missing witness, pattern instruction. The witness was mentioned at trial but he won't testify. You may but are not required to presume that the testimony would have been unfavorable to plaintiff or defendant.

Mr. Murphy, do you wish to be heard on this?

MS. YUAN: I think this is probably one of those instructions that would be revisited at trial if it becomes applicable.

MR. MURPHY: And, Miss Yuan, did you wish to be heard?

MS. YUAN: Yes, Judge. Briefly, defendants object to this instruction. We don't think it's necessary. As this Court has stated several times in prior hearings, and defendants agree that this is a pretty straightforward case, you know, we think that you've seen what has been filed in

terms of the police reports in the case, that there are just multiple, multiple individuals on scene. None of 'em -- Not every single person is necessary to prove the case and defend the case, frankly, in our view. Some would be cumulative, some would be excluded based on motions in limine that the Court's ruled on.

I think this instruction will be confusing to the jury in terms of how can it be applied, given that this argument could be made for, you know, an adverse inference against plaintiffs and same against defendants. I think we should leave the instruction out and just allow counsel to argue what comes in. And what was proven based on the evidence and the witnesses that testify. Thank you.

THE COURT: Thank you, Miss Yuan. Mr. Murphy, did you wish to be heard further on this?

MR. KYLE: This is Mr. Kyle. Maybe that was -- there's some confusion, but this is a game time thing. So if you read the instructions, it says that the witness was mentioned at trial but did not testify. So I guess it's premature for Attorney Yuan to object to this instruction because it may not even be warranted. But it's at least something that we should be considering for trial. So, Judge, we're not asking that it be given unless it's warranted.

THE COURT: Thank you. Well, at this time I will note the defendants' objection, and I will highlight it, I will

keep it highlighted in my packet for us to pick up again at the conference after all the testimony has been heard. So I'll mark this for revisiting.

The next one I have on page 21 and have it up on the screen as well, spoliation instruction -- of evidence instruction proposed by plaintiff.

Mr. Kyle, are you also taking this one up?

MR. KYLE: Well, I can, Your Honor, because it's no different than the one that we just talked about. If we find that something has been mentioned at trial and you find it is significant enough to address, and that was not produced, that comes to the destruction, slash, spoliation, so it would be premature to object to this to this point. And at this point we're not asking that it be given for sure, but then again, make it one of the highlighted ones, that if it does come up, and we -- we want to use it.

And it can cut both ways too. It could be the same against us, so that's why we're asking, we're not saying for sure that we should use it, but we at least wanted to bring it to the attention of the Court that it's something that we should have in our quiver in case it does come up to make the jury instruction conference go quicker.

THE COURT: Thank you, Mr. Kyle. Miss Yuan?

MS. YUAN: Oh, thank you, Judge. Yes, defendants object to this instruction as well. This is the first that

13:53 we're hearing about this potentially being an issue, and hearing Attorney Kyle's statements, it appears that plaintiffs are waiting to see what comes in at trial if this becomes an issue. But I guess I can represent to the Court that 13:53 defendants are unaware of this being an issue as it pertains to defendants.

Certainly there was extensive discovery in this case, it would be our position that if there was such an argument to be made, it should've been a proper motion before this Court, but 13:53 that's our objection to it. We didn't think that there's any evidence supporting that, but I do understand plaintiffs' statements pertaining why they included this at this time.

THE COURT: All right. Defendant objection is noted, and this is also being marked for revisiting based on the 13:54 evidence, and I would also on this instruction invite the parties that can best come up and need to revisit the Seventh Circuit case law on this, which is pretty clear what standard is for such an instruction. So we will mark it, highlight it, and revisit it.

13:54 The next highlighted page I see on my copies on page 25, multiple claims, multiple plaintiffs and defendants being proposed by plaintiff. Mr. Murphy or Mr. Kyle, do you wish to be heard?

MR. KYLE: This is Mr. Kyle. We did propose to make 13:54 plaintiffs all one, make it easier for the jury, but I guess

13:54 that was objected to. The idea is if Your Honor is willing to let us make the argument that the plaintiffs are the plaintiffs, even though there are three entities, then this wouldn't be needed, but at this juncture certainly appear to be 13:55 warranted. This is more of a call for you, Judge, than either one of us.

THE COURT: Thank you, Mr. Kyle. Miss Yuan?

MS. YUAN: Thanks, Judge. I don't know that I really need to rehash what -- of course, defendants think it's very 13:55 important in this case that the different plaintiffs have different claims, and that's why we want them to be identified as such. I think that issue is resolved. I mean, I think it probably goes without saying but defendant would support the instruction on the bottom that defendants proposed, but again, 13:55 we think some sort of instruction like this would be appropriate to provide to the jury. Thank you.

THE COURT: All right. All right. Because of -- I'm hearing echo on myself. Is anybody else hearing it?

MS. YUAN: Yes.

13:56 MR. MURPHY: Yes.

THE COURT: It seems to have stopped. It seems to have stopped, so I'll continue. Yes. Because we have multiple plaintiffs and multiple defendants in this case, it seems that both would be appropriate, so I will adjust this to fit our 13:56 case and -- and use both.

The next highlighted instruction that I had is on page 29 of my packet, transcript of recording, also proposed by plaintiff. Mr. Kyle, Mr. Murphy?

MR. MURPHY: I think this was proposed when we were talking about the police videotape, and a potential to transcribe what was being said on the police videotape, which kind of ties into one of our agenda items today that to the extent that the video is admissible, it may behoove the parties for the benefit of the jury to have a transcript of anything being said on that.

THE COURT: Miss Yuan, do you wish to be heard?

MS. YUAN: No, Judge. I actually thought the plaintiffs put in this instruction because they anticipate having one of the witnesses appear by trial deposition, and actually my only comment would be I looked at the pattern instruction, I understand that second paragraph regarding a copy of the transcript being provided to the jury. I don't know that that's necessary, I mean, part of me just kind of thinks that might distract them from actually observing the witness, it's going to be by video, but I guess I don't really feel that strongly.

I'm not familiar if that's something that's standard for federal courts to do, to provide the jury when there's a trial testimony, the -- provide the transcript to the jury. So that's my only comment there. I mean, I can reserve my

comments, I will reserve my comments as to the video regarding the dogs.

THE COURT: Okay. Well, let's mark this one to revisit if applicable. Again, if there's a recording, I don't know whether there's going to be any transcripts or we can revisit this one if applicable. But it's a pretty pattern one, nothing unusual about this one.

All right. I think we're skipping to getting into the claims section, section two, and on page 34 and when we were last together, I understood that the parties were going to talk and confer about the instructions under claims to see if some language can be agreed upon. Did I recollect that correctly or imagine that? Let me begin with Mr. Murphy or Mr. Kyle.

MR. MURPHY: That was my -- Murphy here. That was my suggestion. Regretfully I'm not sure we made much progress on that. I still think it would be a good idea, I'm not -- obviously I don't know how the Court plans to proceed in terms of any additional status conferences, but I still would like to give that a try. I think there's some places we can agree on and we can really hone where the disagreement is. So you're -- you didn't imagine that, Judge, but we didn't make any progress to speak of that I recall.

THE COURT: All right then. Miss Yuan, do you want to respond to that and the opportunity to look at the language in the claims and come to an agreement as to the language or at

least narrow the disagreements?

MS. YUAN: Judge, I'll just be frank. I mean, I'm happy, you know, Attorney Hough and I are happy to talk again with plaintiffs' counsel. We did talk with them about a week ago, I think, regarding potential stipulations we can reach, but just to be candid, I don't believe that the parties are going to be reaching an agreement onto the substantive instructions. I think we're going to be too far apart on that.

And I'll just say, you know, even in other issues, we've tried, but we're often not able to reach an agreement and need -- unfortunately need you to intervene and just decide which one you're going to go with. But, I mean, certainly we're happy to meet again with plaintiffs' counsel and attempt that. I just -- I don't -- I don't know that we're going to get there.

THE COURT: All right then. What I'll do on the substantive instruction at line on page 34 and 35 is that I will take the first crack at proposing an instruction and give the parties a chance to take a look at it and comment as we are doing here today. And to go back to your question, Mr. Kyle, it's likely that we will not have another status conference, but if you will have the proposed language, you know, prior to trial so that at the conference the parties come prepared with their position.

Page 38, I believe I have a recollection we talked about

this already and there was no objection to it. Is that so, Mr. Kyle, Mr. Murphy?

MR. KYLE: This is Kyle, and that's so.

THE COURT: Pulling that up on the screen and just so the record is clear, I'm referring to the proposed instruction reading police department municipality not -- the defendants Paul Felician and Phil Simmert are being sued as individuals, neither the Milwaukee Police Department nor the City of Milwaukee are parties to this lawsuit, so there's no objection, we will mark this one as agreed upon.

Going to page 39, personal involvement, either side wish to be heard on this?

MR. MURPHY: Attorney Murphy here. I think by itself, it's about right. My only comment is that I would like to see additional language to the tune of something court excepted, I otherwise instruct you, because down below when we're talking about intervening and supervising, I think that what's stated here may not be fair. Because Felician could be held responsible for what others did or did not do in his supervisory capacity.

And I don't want to have a conflicting type of a situation where this one says they have to be personally involved but then later it says except for supervisory duties. So I -- my -- my proposal to resolve that potential conflict is to include language to the effect that the Court except as I

otherwise instruct you below, or later.

THE COURT: Okay. Miss Yuan?

MS. YUAN: Yes, Judge. We would object to that addition. We believe marking it and reviewing the other instructions and just talking about the failure to intervene instruction that's remaining for Felician and Simmert as to the property damage, personal property. That still requires a individual personal involvement in my analysis of what the law would require and in elements there. I don't think that it would be confusing to the jury to have them have this instruction regarding the requirement in a 19.83 case for personal involvement by the defendants named as well as the instruction then that details the elements they must find for, for example, the failure to intervene claim. So I, at this -- I would object to that addition proposed by plaintiffs.

THE COURT: All right. I will take a look at this instruction together with the failure to intervene to see if there is a conflict or if there is a need for any additional language. It may also be a matter of the placement of the instruction may clarify the relationship between the two instructions. By that I mean, for example, and I'll take a close look at this, but a failure to intervene followed by the personal involvement instruction that may make clear what the relationship of the two are.

Mr. Murphy? You're muted.

14:05 MR. MURPHY: Thank you. I'll look forward to reading that, Judge.

THE COURT: All right. Thank you. Moving on to page 40, the proposed limiting instruction from the defendant.
14:06 Proposed limiting instruction concerning evidence of statute administrative rules and regulations proposed by the defendant. Miss Yuan, do you wish to speak as to this?

MS. YUAN: Actually, I think Attorney Hough might want to speak to this one.

14:06 MS. HOUGH: I -- Your Honor, I think that this one would be -- I actually have nothing to add right now, Your Honor. I apologize.

THE COURT: That's fine. Mr. Murphy, Mr. Kyle, do you wish to be heard on this one?

14:07 MR. KYLE: Yeah, this is Kyle. I guess my only concern is if they're going to talk about their training and their policies, what you've effectively done is you've made expert Larsen now relevant, which he's been excluded.

THE COURT: All right. This is one, let's wait and
14:07 see regarding how the evidence comes in, what folks have to say, whether this even becomes relevant at all; so let's wait and see based on the evidence, we'll revisit this at the zoom instruction conference.

I'm scrolling on the screen now to put up the next
14:07 instruction, which is regarding the particularity, over-breadth

of the search warrant special instruction proposed by plaintiff. Does the defense object to this proposed special instruction?

MS. YUAN: Yes, we do, Judge. I think in looking at this pages 41 to 45, those are all -- they're separate instructions, three separate instructions in there, all proposed by plaintiffs and then the next few pages are instructions proposed by defendants. I think this goes to the same vein, Judge, where, you know, if -- if this is going to the same issue where Attorney Murphy was hopeful that maybe the parties would come together, if this is something that the -- if you, Judge, want to try to see if you could propose something for us to review, but clearly there's competing instructions, I don't know that we're going to agree on our own, but defendants proposed their instructions starting on page 46 to fit the -- I'm sorry -- to 53, and we think those are the appropriate instructions.

THE COURT: Mr. Murphy?

MR. MURPHY: Well, again, I will look forward to reading whatever Your Honor may come up with, but the jury certainly needs some instruction as to particularity and over-breadth, because that's a central issue in the case. While we've pulled out basically from prior briefs, so quotes from Judge Jones and citations that he used, and other case law excerpts, so I think everything we've written here we can

14:09 document and justify, but I understand defendants have things they want to say too.

THE COURT: All right then. So I will put all of this in the category of the substantive instructions that the

14:09 parties are likely not to agree on, but I will propose some language and give it to you as a starter for you to give me feedback on language and also make any record of any objections that you may have with what I propose, so that's what we will do with these substantive instructions.

14:10 MS. YUAN: Thank you, Judge. And one last thing I would just mention. Defendants didn't submit anything additional to consider what the jury instructions given everything that's already been filed in this case, but the draft from the defendants' instructions keep in 17th Street as

14:10 it pertains to damage to 17th Street, so I just wanted to, you know, put on the record that that should be excluded from an instruction regarding -- if the properties are named individually in terms of damage to 17th Street. Thank you.

THE COURT: Thank you. If the parties can skip with

14:11 me to the failure to intervene instruction, although of course a substantive instruction, I see that there are -- there's one being proposed by plaintiff and one being proposed by defendant. If you skip to page 54 and 55, which I'll put on the screen here, just for my benefit, what's the difference

14:11 between the two of you on your proposed instructions?

MR. MURPHY: Murphy here, Judge. Thank you. I think my recollection at least is that we propose that the instruction include unnamed officers where we have -- and/or his subordinates. Under the theory that we didn't necessarily -- we don't necessarily need to identify who is taking actions that contravene the plaintiffs' rights, you have to identify what was being done, circumstantial evidence here, and that Felician or Simmert was there and were conditioned to intervene, so that is the first thing, the subordinates -- unnamed subordinates.

Second, I believe we included where it said for element two that the defendants knew we had a -- or reasonably should have known that the search and/or seizure was unreasonable. But it goes to the two priority differences that I recall. Maybe the defendants can add something to that.

THE COURT: Thank you, Mr. Murphy.

MR. MURPHY: And I would also add that the or reasonably should've known came from a sister circuit pattern instruction as I recall. Because the Seventh Circuit doesn't have that language in their pattern instruction.

THE COURT: And, Mr. Murphy, do you know which circuit were you looking at? Because that helps me to --

MR. MURPHY: I believe it was Ninth.

THE COURT: Okay.

MR. MURPHY: I can check that and make sure, but I'll

say Ninth.

THE COURT: Okay. Thank you. I'll note that and try to check that. Thank you. Miss Yuan?

MS. YUAN: Yes, Judge.

THE COURT: Failure to intervene?

MS. YUAN: Oh, thank you, Judge. And, again, I apologize. 17th Street in this instruction should be taken out. But other than that, you know, I mean, defendants propose this, so we like our instruction, right, I note there's some highlighting at the bottom because of some discussion into damages and I think that can be dealt with simply by putting a period and taking it out and go on to consider the question of damages, so I think that can be resolved.

You know, defendants' position is that the failure to intervene instruction that we're proposing really clearly identifies so that the jury is considering properly each of the defendant officers that are named in this case, that would be the ones that would be found, you know, whether its Simmert or Felician or Simmert and Felician, but it's very, very clear for them to consider one at a time and then what else they're supposed to be considering.

So we think it's more clear, we think that there's less danger for the jury to kind of lump the two of them together, but that they know that they can separate out each of the defendant officers and consider the elements as to that officer

in terms of their opportunity to intervene. I -- We object to plaintiffs' proposal of adding that language or reasonably should've known under number two for plaintiffs' proposed. We did take our failure to intervene instruction from the Seventh Circuit pattern instruction.

THE COURT: Thank you. All right. So we'll look at the Seventh Circuit pattern and one from the Ninth Circuit, I'll compare. Again, on this I'll throw something together and we can -- talk to you.

All right. On page 57 now, if you didn't have anything further on this, the liability of supervisor. Mr. Murphy?

MR. MURPHY: Based on the pattern instruction from the Seventh Circuit, again, I believe or reasonably should've known is added in one of the big -- parts of this case that -- and in plaintiffs' opinion the defendants were reckless in their -- not only the execution of the search warrant, but in their investigation and run-up. So what they may have known, and we can't really say what they knew, because it's in their heads, but I think the circumstances put it out that they should have reasonably known that they're going to deny knowing. So that's the only twist, I believe, is the similar language again about reasonably known and/or subordinates.

THE COURT: Thank you. Mr. Murphy, am I missing something? I don't believe we have a police standing supervisory claim. I may be confused. Help me here.

MR. MURPHY: Lieutenant -- The lieutenant was the supervisor on scene by all accounts. I think that was undisputed.

THE COURT: So is this -- is this falling under the failure to intervene?

MR. MURPHY: I think, Your Honor, or somewhere along the line that it got lumped together. Failure to intervene in a supervisory role I think I remember reading it somewhere.

THE COURT: For the failure to intervene, one need not be a supervisor, that's what the case law says and what the instruction says, but I don't think there's a stand-alone supervisory claim.

MR. MURPHY: Well, they're kind of cousins of each other because -- but that obviously is one of -- the supervisor stands apart from rank and file. So I can see how they can get lumped together, but I think it's a stand-alone claim, and I don't believe that's been specifically even addressed so far. And particularly by way of a court order.

THE COURT: All right. I will take a closer look at this and invite you to do the same. But I just -- my review of the docket and the summary judgment motions that were addressed in this case that we were dealing with a failure to intervene claim, but I'll take a closer look because there's a lot in this case, so I don't want to miss anything.

Miss Yuan or Miss Hough, did you wish to be heard on this?

MS. YUAN: Yes, Judge. We do object to this instruction. We think that the failure to intervene instruction is the only proper instruction here given this Court's ruling on summary judgment regarding the claim that survives as it pertains to the properties and personal property damage. You're raising the same issues with plaintiffs that Attorney Hough and I are kind of looking at, we thought we checked this issue, I mean, it's our memory sitting here today without looking again right now that that wasn't something that was pled because certainly we believe we would've raised this in summary judgment as to this particular claim to -- to also have it kicked if possible. But we can double-check that as well, Judge.

I mean, there's a lot of volume in this case, so I can't sit here and tell you a hundred percent, but we do object to it, in any event. We think that certainly the essence of what plaintiffs are claiming here is covered by the failure to intervene claim, and we think that that is the only instruction that would be necessary for -- for those facts. Thank you.

THE COURT: All right. Go ahead, Mr. Murphy.

MR. MURPHY: The instruction that the Seventh Circuit pattern is the 7.23, and that's where this instruction comes from, and I can tell you a hundred percent that the claim was pleaded if that's what they're trying to say. I think, frankly, the plaintiffs can go at it both ways, I think again

you had Felician as a supervisor and failure to intervene, kind of bleed over each other. The only other element is that he's a supervisor.

THE COURT: All right. Thank you, Mr. Murphy. Again, my recollection is that we had been talking about in terms of failure to intervene and the case law says for failure to intervene one need not be a supervisor, but I can see how being a supervisor can be relevant. I'll take a closer look at this again, because we covered a lot in this case, just to make sure I didn't miss anything. So we'll mark this as to be revisited.

And in scrolling now to page 58, which is currently on the screen for you and highlighted, proposed by plaintiff, title of the proposed instruction is proving police misconduct special instruction. Mr. Murphy?

MR. MURPHY: Thank you. The highlighted portion comes out of the -- I don't have the case cite with me I don't believe, but I'll look it up. It's a case cite, and I think it's kind of common sense compared to what said above it, basically circumstantial evidence, you know, leads to reasonable inferences from that circumstantial evidence.

Earlier in the case I was using the res ipsa loquitur phrase because there's case law out there that says that that could be appropriate in a search warrant case where the defendants have exclusive control of the property, and

basically it's not something that would've happened but for their conduct that's alleged. But we dropped the res ipsa loquitur language and just went with kind of the meaning of it which is reasonable inferences from circumstantial evidence.

THE COURT: Thank you, Mr. Murphy. Miss Yuan?

MS. YUAN: Thank you, Judge. I actually -- I don't know what the legal -- Oh, I'm sorry, I think Attorney Hough wants to address this. Thank you.

MS. HOUGH: Well, Your Honor, the defendants do object to this special instruction. There is all -- already a general instruction about circumstantial evidence, and that we believe would cover this. We had briefed Mr. Murphy's assertion that there is case law applying res ipsa loquitur to 19.83 claims, and we disagreed with that at that -- at that time, so we continue our objection to utilize any language as such in a special instruction that's already covered by a general instruction on substantial evidence.

THE COURT: All right. I will also take a look at this and we can revisit it at the conference. And I'll take a look at our general pattern, circumstantial evidence instruction as well as in relation to this.

MR. MURPHY: I just was able to do a quick search, I briefed this to Judge Jones I know, and basically there's three cases coming out of the Ninth Circuit from the '80's, 2000's, and 2000 about the res ipsa. I don't know if Your Honor wants

me to send you that quote or whether you have enough information, but I just thought I'd mention it.

THE COURT: Thank you, Mr. Murphy. I do recall that being in the brief, but I will return to your -- your brief on that and look at those cases and our prior discussion on this as well.

All right. And then finally as you see on page 60 and 61, I close out with some instructions regarding the durations to the jury. What I did here is I pulled out the language having to do with damages and reserved that for the damages instruction. So that takes care of the liability instructions.

The bulk of the work that remains to be done, and this is mine to start with, that is to take a look at what I'm calling your substantive, your instructions on the merits and see this language to -- to propose some language for the parties to look at so that we can move this forward. And then the other stuff it's wait and see based on the evidence that is developed during the trial.

All right. I will now stop sharing this document and put up on the screen for you the instructions regarding damages. Do we need a five-minute break?

MR. MURPHY: We wouldn't object to it. I could get a water.

THE COURT: Let's take five, you could shake your legs, get water, and be back on the record. Let's do that.

Take five.

MS. YUAN: Thanks, Judge.

(A recess was taken.)

THE COURT: All right. Are we all back?

MS. YUAN: Defendants are, Judge. Thanks.

MR. MURPHY: Plaintiffs are as well.

THE COURT: All right. So we are back on the record in 16-CV-534 for a status conference, and I have on the screen to share with you the jury instruction as to damages, so when we get to part two of the trial, after your closing arguments, they will be instructed -- the jury will be instructed as to the law having to do with damages here. These instructions are not very long. One will be compensatory damages and both sides have proposed some language and one will be punitive damages.

Anyone wish to be heard on this packet of instruction?

(No response.)

THE COURT: Should I take that as a no?

MS. YUAN: Judge, I'll just say that defendants put in the pattern instruction, we think for the damages -- for the both compensatory and punitive, so those are the ones that defendants suggest, those are the ones that we think are appropriate in this case.

One little thing that I did notice in terms of the compensatory instruction proposed by plaintiffs, so that's page four, I mean, while we would ask the Court to put in the

pattern instruction that we suggested on that, we certainly would object to, it's under C., the value of the animals and their progeny. I understand that's one of the arguments that defendants will be making, I understand that's what we plan on presenting evidence on through their expert. While I don't know that that necessarily is something that needs to be coming through in this jury instruction, I think that that's just, you know, I mean, it's damages regarding seizure of these animals, and the evidence will come in as to that, and so we would object to adding the progeny language.

THE COURT: Thank you. Mr. Murphy, Mr. Kyle?

MR. MURPHY: Well, that's one of the comments I had about their damages compensatory on page six. They just have a value of the property damage destroyed whereas the claim is much broader than that. I think Judge Jones laid out the map for the value of the animals and their progeny and he tied that into whether or not it was, at the time of the seizure, whether it was reasonably -- reasonably foreseeable that there would be a permanent deprivation. So there's a way to get there, the jury should be instructed about it, and the jury should be allowed to consider it, assuming we prove that liability aspect.

THE COURT: Thank you, Mr. Murphy. So for this, I will take a look at the pattern instructions as to both, which is generally what I use since we have them from the Seventh

14:38 Circuit, take a look; and I'll also, Mr. Murphy, look back to the language you suggest from Judge Jones's decision, and not far apart, but they'll be reconciled and resubmitted to you.

Anything else on the damages instruction?

14:38 MR. MURPHY: Nope.

MS. YUAN: No, Your Honor. Thank you.

THE COURT: All right. So I will stop sharing this document. We are going to turn to the verdict forms, which we had not looked at together in, and what I sent you was a draft 14:39 to begin the conversation, and separating again -- separating the liability verdict form from the damages liability -- from the liability form, so give me a second to put it up on the screen so that we are all looking at it together. Give me a second here.

14:40 All right. I believe I have on the screen to share with you the verdict form, liability. If we could walk through that. So just as an overview, we would have our liability form and then for the damages form, that's going to take a lot of -- that can take a lot of different variations depending on what 14:41 the jury finds. So it's not something we will be able to prepare in advance, but I prepared one sample for you so that we can kind of just go over the idea and the structure of it.

So this verdict form is separated overall with the two different claims, claim one exceeds scope of warrant, 14:41 unreasonable seizure. That has to do with the seizure, as you

can see the different question goes to the animals, the personal property, it goes to intervene in the seizure; and then claim two, unreasonable search of the properties, and it goes to the properties.

So let's tag it up on the screen for us to go over together, and, Mr. Murphy, do you want to begin here with a reaction of this?

MR. MURPHY: Well, I can start the conversation, thank you. We actually -- Our proposal came right out of the Judge Stadtmueller case locally here in terms of, you know, basically asking was there an unreasonable search, unreasonable seizure against each defendant? In all due respect what's been proposed here is kind of a regurgitation of parts of the jury instructions as to liability. And I'm concerned about that. I think it's a lot cleaner if we just ask the base questions that we've proposed in our proposed verdicts.

And beyond that, there's some questions I think that need to be answered, again in terms of the particularity and over-breadth. Our first one, and whether the property was seized -- personal property unreasonably seized not listed on the warrant, so I'm concerned about the proposed verdicts. I'm happy to submit a short memorandum on that as well if that would help.

THE COURT: Yeah, I -- I don't think this was a question of -- of necessarily memoranda, I see the crafting the

verdict form as it's more in the crafting it, if you will, Mr. Murphy. I don't know if you understand the distinction I'm making, laying it out and seeing whether it covers what it needs to cover, one, and also very importantly whether it covers it in a way that's not confusing to the jury, that is consistent with the instruction, and that's in language that is acceptable to the jury.

I have questions, Mr. Murphy, regarding your proposal asking the jury to make specific findings about over-breadth. My question on that was that the claim is that the seizure was unreasonable because they seized things that were not under a warrant, for example. When we start using language like over-breadth and that particularized, that seems to me as legal questions for a judge and not for a jury. The way it plays out with the jury is in the practical terms. Exceeded the scope because, you know, this was beyond what was authorized or beyond what was reasonable.

And nowhere else in the instruction, I think we are -- we would be introducing new terms for -- for the jury. So we have to kind of be careful of not -- keeping the jury as fact-finders and not making legal analysis, if you will. Although in the Fourth Amendment area, they're so close and so intertwined. So that was my concern with what you had proposed.

MR. MURPHY: Thank you, Judge. In terms of, for

example, number one, the concern is that, first of all, did any of the following defendant officers act unreasonably when, quote, all the animals. All right. I think that that is too broad. I think it would -- when animals were seized, when any animals were seized. I don't think we have to prove that they were acting unreasonably each and every and all of the animals. We need to be able to break that up.

And in light of the circumstances facing the defendant, again, that goes back to we believe we can prove and we'll allege at least by circumstantial evidence that the defendant officers acted recklessly in their rush to get a warrant and in the terms of the warrant and in the execution of the warrant. So in light of the circumstances facing the officers, those circumstances were what those officers made -- made them to be, not really what the objective circumstances are, and that's -- the objectivity is the critical issue here.

THE COURT: So you think question number one is too broad to be helpful to the jury?

MR. MURPHY: I think that's a fair statement of what I'm trying to say.

THE COURT: Thank you. Thank you, Mr. Murphy. Does the defense wish to --

MR. MURPHY: Beyond -- I guess it's beyond just broad, I think it's dealing some with a claim with -- I would suggest if we're going to stay along these lines, did any of

14:47 the following defendant officers act unreasonably when animals were seized at 13th and 17th Street, I think that your instructions would tell the jury to consider the circumstances or what they should've done, et cetera.

14:48 THE COURT: Thank you, Mr. Murphy. But isn't this question -- is this question going to all the animals? Because there were animals that were properly seized because they were proffering the warrant but there were animals that were not only the warrant that were seized, there were animals that, you

14:48 know, there was -- there was -- it was overbroad to have them in the warrant and be seized, so we want to say all the animals, the animals are in different categories is what I'm saying.

MR. MURPHY: I'm saying let's strike "all the" to say

14:48 when animals were seized.

THE COURT: Any other feedback on question one?

MR. MURPHY: Or perhaps any animals were seized. A combination of those, right?

THE COURT: What about question number two,

14:49 Mr. Murphy, on this?

MR. MURPHY: In terms of in light of the circumstances facing the defendants, I have the same objection. The circumstances are what they made it. We allege that they recklessly put together this search warrant with overbroad

14:49 language, trying to get into the house and wreak havoc. The

circumstances facing the defendants is really unfair because they made their own bed and now they're lying in it trying to say the circumstances that they faced were recklessly put together by them.

THE COURT: And your recommended edit to that -- to taking that out would be what, Mr. Murphy?

MR. MURPHY: To be in light of the circumstances facing the defendant officers, I think it reads that could be done with --

THE REPORTER: I'm sorry. Could be done with --

MR. MURPHY: I'm sorry. In light of the circumstances facing the defendant officers, those words we would ask to be deleted.

THE COURT: I caught that, Mr. Murphy, but is there anything else that you would suggest in its place? Or are you just suggesting deleting it?

MR. MURPHY: Besides what we proposed, I can look at, that would be my comment as to your instruction.

THE COURT: Thank you. And, again, does it -- the same would apply for the remainder, Mr. Murphy, taking out all the in light of the circumstances?

MR. MURPHY: Correct. Correct. On number three, right, the -- it's in six -- yeah, throughout the verdict, that would be my comment whenever that comes up.

THE COURT: Any other feedback you want me to take a

closer look at on this verdict form on liability?

MR. MURPHY: Please. Same number two, unreasonable search of properties, for example, question four and I believe six and eight and 10, the personally and intentionally. First of all, I'm really concerned that that would confuse the jury because we don't have to prove that the defendants intentionally violated constitutional rights here. What the case law suggests, what I understand, is that when we see that intentionally, it really aims -- meaning not an accident, like, boy, I accidentally put my elbow through the window when I was carrying something out. Now, whenever I see intentionally, I think it needs to be removed because we do have it in the instructions for the qualified by parentheses, meaning not accidentally.

THE COURT: I think that language was going to personal involvement, but we can -- I can take a closer look at that and make sure we select the language of that instruction.

MR. MURPHY: Thank you.

THE COURT: All right. Thank you, Mr. Murphy. And, Miss Yuan, you unmuted. What's the feedback on the verdict form?

MS. YUAN: Oh, thank you. I think this was taken from the defendants' verdict form, which we submitted, I want to say, late October. And that would've been prior to your rulings on summary judgment in this case, Judge. So actually

defendants' position is questions number two, three, four, six, eight, 10, and 11 are no longer appropriate because this Court has dismissed any direct claim against Felician or Simmert as to them personally causing property damage at any of the properties at issue in this case or personally taking personal property.

I think the issue remaining against Simmert and Felician is merely the failure to intervene as to the property damage at the three different properties in this case and the personal property. So that was drafted again, I apologize we didn't submit a revised version, so we would argue those questions need to be taken out.

What I tried to do when we were drafting this verdict, I do think it's helpful to try to mirror some of the language in the substantive jury instruction as to what the law is, and so in terms of using that language that is being objected to, personally and intentionally act, if you look, this goes back to the instruction that, Judge, you were going to try to see if you could combine or come up with an instruction as a starting place because defendants had submitted theirs as to the actual constitutional violations, very different than what plaintiffs have submitted. But I try to use that kind of language because I do think that's important in terms of in our opinion obviously it's whether a reasonable officer acted reasonably in this case, or if this was reasonable from the reasonable

officer's standard.

And so we believe what the officers faced when they were executing the search warrant in terms of informing their decision as to seizing all the animals, that's all relevant and that's why we want to make sure the jury considers that. That language is in there, we drafted that assuming that that would, you know, be flowing from our instruction, but we do think whatever verdict ends up being the one submitted should follow the language of the jury instruction on the substantive law.

THE COURT: Thank you. Mr. Murphy, do you agree that -- that the direct action, for lack of a better word, on Felician and Simmert was disposed of and the only remaining claim is the failure to intervene as we had discussed when we discussed the summary judgment?

MR. MURPHY: I think that the plaintiffs do not have direct property damage claims against the defendants. I think that's a start. I think we're agreed there. The property damage claims are the indirect liability, the failing to intervene, and the failing to supervise. Whereas the claims for the animals are both.

THE COURT: All right. I will update this accordingly and have it for you to take a look at.

MR. MURPHY: Thank you.

THE COURT: So I will stop sharing this document and give me a second to put up the sample damage verdict form.

There will be more work to be done based on what the verdict is on liability, but this could kind of give you an idea. Just a moment. I put up the same document again.

All right. I believe I have the document. Again, we are going to have to make this up in real-time based on the verdict in the liability section, so an example would be you answer yes as to liability on the unreasonable seizure and then ask them to insert --

(There was a discussion off the record.)

THE COURT: Sorry about that. I -- With all the clicking I muted myself and I gave a whole speech that you missed.

This is mostly an example for you to see because we will need to see this in real-time depending on how the jury comes out on liability, and then we will need to structure the damage verdict form to give to them after the damage presentation. This gives you an example, you've answered yes as to question 1(b) regarding the liability and, you know, now you answer these questions. So I'm sharing this with you as an example for your thoughts. Mr. Murphy?

MR. MURPHY: Sorry. That was -- I think it's clear that we proposed more of a special verdict in terms of things that were damaged. Your Honor has proposed more of a general verdict. I'm not sure there's much I can do in that regard if Your Honor thinks that's a more appropriate route. I was just

trying to think beyond what we have listed here, and I may need a moment.

But, for example, I want to make sure that when we're listing Dragonwood, Cullen, or Pleguar, that they're all listed where they need to be listed because there's some proposals that have two of the three, and others that have just one of the three.

So, for example, at 17th Street, even though we waived the damage to the property, the real property itself, I think Mr. Cullen had property -- personal property there that may have been damaged, and I want to make sure we don't miss out on something like that, and I could probably put my thoughts together on that in a moment.

THE COURT: No, I appreciate that, and it's not -- that is not intended to be the final, Mr. Murphy, it's intended to give the parties a view of what this would -- how this would play out in a bifurcated trial, and also again we will need to make it up when the verdict comes back. And, secondly, you are correct that we will need to be very careful as to the plaintiffs and the defendants being properly identified in any verdict form.

While Mr. Murphy's taking a closer look at this, Miss Yuan, did you wish to weigh in?

MS. YUAN: Oh, sure, Judge. In reviewing the damages verdict form, I don't -- I like it, you know, I think it makes

sense. I think it clearly identifies and articulates for the jury as to each of the questions that they may be asked to answer once we know what happens with the liability phase.

The only thing I will note is the questions that the defendants had raised that need to be taken out now with the change. That just needs to be tracked with this form. So, you know, I mentioned questions two, three, four, six, eight, 10, and 11, so all the times those are mentioned in the damages verdict form, you know, let's reference that to the liability verdict form, I think they just need to be taken out. But, again, I understand that this is a work in progress, you know, and this is a draft. I don't think we have any issues with -- with the language.

THE COURT: All right. So let's also table this as work to be done, further revise dates on the verdict form, but with special attention being paid so that the proper claims are on and proper plaintiffs and proper defendants are on.

The last item I have -- Do you have anything else on the verdict form before I turn to what I believe is our last item for the agenda?

MR. KYLE: Your Honor, this is Kyle. One of the theories that we had and we tried to address, we have multiple plaintiffs, and you have different types of property. You could have a duplicative verdict. And that's confusing for the jury and that raised an issue. We tried to break it down as

specific as possible so the jury wouldn't have any questions.

There's a fear, and I guess it's -- should be the more fear on the defense side that they will award double damages for different things, like failure to intervene, they'll award certain damages then also for the seizure they'll award damages too. That would be duplicate. And that's something they shouldn't do, and, of course, that could blow up an award and make us really question how the jury addressed it.

So we tried to break it down to try to be as specific as possible, and we'll even admit we struggled doing so. So, you know, if -- it wasn't easy. That was our biggest fear. You know, you've got three plaintiffs, we've got a lot of different things that were taken, and we didn't want to have the jury considering one and then put that number in another, and now you've got double, and we all put our hands up and say, how did the jury come up with number X.? It just doesn't make sense.

THE COURT: Thank you, Mr. Kyle. I will take again a closer look at how you broke it down and try to incorporate in light of that concern. Thank you.

MR. KYLE: Thank you.

THE COURT: Okay. So thank you all for your discussion regarding the instructions and the verdict forms. So let's turn to our last agenda item, which is a letter dated docket number 186 submitted by the plaintiffs, one requesting clarification regarding motion in limine six, which concerns

15:04 the blood stain and bullet holes on 13th Street, and number two, regarding the dog shooting police entry video.

So, Mr. Murphy, your electronic signature's on this, so I'll let you go first.

15:05 MR. MURPHY: Thank you, Judge. I tried to be concise. There's enough paper in this case, but plaintiffs' property damage claims is specifically $3,650 to redo the hardwood floor, and that's not just a damage proof, that's a liability proof as well, and it shows how and why the floor was 15:05 damaged, which is relevant to the liability and unreasonableness of the property damage. So I'm sorry that it was blood that wrecked the floor, and I'm sorry that there's bullet holes, but those two items need to come in, otherwise the jury may be prevented from making a claim for this line 15:05 item.

THE COURT: Okay. Mr. Murphy, we, of course, took this up in great detail during our discussions regarding motion in limine, I believe the distinction you're highlighting or emphasizing in this letter is that it's not only about damages, 15:06 it's about liability. My question for you under liability, what is, I guess, your proffer or theory that these two defendants are liable for the blood stain and bullet holes on the hardwood floor?

MR. MURPHY: The blood stain and the bullet holes, if 15:06 meaningful interference, which is a seizure, the seizure was

unreasonable because they should've had a dog snare at a minimum or somebody else to control the dogs. They knew dogs -- They knew four large dogs were going to be in the house, they had advanced notice and the luxury to plan. They made no plan whatsoever, and defendant Simmert specifically testified the plan was to breach the door and see how the dogs reacted.

And they reacted actually very well as evidenced by the video for several minutes, then the video goes dark, and we're told that a dog attacked and the dogs attacked -- Had they had a proper plan for the execution of the warrant, those bullet holes never would've happened and the blood never would've happened.

I think a cautionary instruction or a limiting instruction would be appropriate, but we didn't pick how the floor got damaged, and this is all reasonably foreseeable stuff from the very minute they're going to kick the door and see how the dogs react without a plan to control them. So that's why I -- we understand that the video of the dead dogs and the video of the floor perhaps is excludable, but we need to be able to claim how these -- how the floor is damaged. Thank you.

THE COURT: Thank you, Mr. Murphy. And the last part of your statement you understand regarding the videos so when you say we needed to be able to claim that is -- I'm understanding is you want to be able to ask the defendants

about the floors? You want to be able to ask about the bullet holes? Can you be specific what you are requesting, the clarification that you're requesting?

MR. MURPHY: Well, at a minimum we have to establish what the damage was, which are the bullet holes. And the hardwood floor got soaked with blood. So it got ruined and why it got damaged? Because the dogs were shot. Why were the dogs shot? Because there was no plan to control them, kind of working backwards.

Obviously we're subject to Your Honor's rulings as to exactly what we can do and say, but if we can't prove those two items of basically the damage to the floor, one item of damage, but the floor blood and the bullet holes, we can't prove the damage to the floor. We have to -- Unfortunately, the jury needs to hear it. Does that answer your question?

THE COURT: You did. Thank you. I don't know if it was Miss Yuan or Miss Hough who was unmuting to respond.

MS. YUAN: Judge, I can -- Can I respond? Attorney Hough, if you want to add anything to what I've done.

Judge, I guess we really do believe that all the issues raised by plaintiffs in this docket 186 was previously briefed before this Court. In your decision, docket 178 that addressed and excluded the video and dogs, you specifically reference, this is on page two of that docket 178, that plaintiffs are arguing that this information is directly relevant to the fact

that this was an unreasonable search and seizure, they had literally no plan upon entry knowing that there was four large dogs there.

This argument's been raised. This Court found that argument to be unpersuasive, and we think rightfully so. The dogs are not at issue, this Court knows that. The dogs were at issue in a prior federal case that is now resolved. The officers that shot the dogs are not named defendants in this case. They could have been named, they were not named. The two remaining officers are going to be severely prejudiced if this information is allowed to come in in terms of whether it's the video or the dogs, and that's why we believe this Court made the right decision excluding that information.

As -- As you know, at a hearing when we argued this, Attorney Hough had stated and plaintiffs did note that in their latest filing on docket 186 that defendants have agreed to stipulate to the damage amount, and this Court, I think you -- you addressed that and you -- you heard that from us, and that's still the case.

But, frankly, it just -- it's not -- it wouldn't be right to allow that evidence in against these two officers. It's been litigated, these aren't the ones that actually caused that damage, and what plaintiffs are seeking to do as you can hear from even Attorney Murphy's argument is to litigate this side issue when the real issue at -- you know, for the jury to

decide was was it unreasonable for these two officers when these animals were seized from the property, and then what, if any, damage occurred where they had an opportunity to intervene if they witnessed it occurring.

Attorney Hough, did you have anything else?

MS. HOUGH: I believe you covered everything, thank you.

MR. MURPHY: Your Honor, if I may in response. Your order actually -- you are unclear whether or not we were making a specific claim for the floors, and that's why I pointed you to the volumes of things we have, I pointed to the two lines that identify the floor damage.

In terms of Lieutenant Felician, we have to remember, I believe it's undisputed in this case that on the way over to execute the warrants, a call was made to Jane Flint who lived there to see if she could come home and control the dogs. He said, I'm on my way. She called actually a coworker who showed up before her, the dogs were already shot, because Felician gave the order to go. He wasn't going to wait.

And there's no exigency at all, they breached the door and the dogs were there. No one was home and nothing was happening. The stipulation does not satisfy what we need this evidence for. And, again, I wish, you know, they would've -- they could've damaged the floor some other way, I'd be asking for that. The fact that they did what they did and it ended up

reasonably foreseeable, the consequences, I don't think they can escape that just because it's not good for them. That's why we have cautionary instructions. Thank you.

THE COURT: Thank you. This is feeling like deja vu, I guess. Under Rule 43, items of evidence that are, even if relevant, if inflammatory, are confusing to the jury, as I indicated in the written order, can be kept out. So I will stand by the order to not allow video of dogs being shot, blood -- blood on the floor, especially when there is no proffer that these defendants were the ones who either shot the dogs, directed the shooting of the dogs here.

I think, you know, again, if you want to ask them about what plans they had, that's, you know, that's part of -- a reasonable planning for the execution, that is fair game, but I will not allow evidence regarding the shooting of the dogs in this case. I do think it's too inflammatory under Rule 43 in light of what truly is at issue in this case.

As to the police report -- the police video, I understand now you're asking to edit out the dog portion. Mr. Murphy, is that what you are renewing -- or asking for reconsideration of?

MR. MURPHY: Right. Thank you, Judge. The police video could actually be very neatly excised to take out everything that has to do with the dogs and the blood. But what's important is when they come in, there is a moment where the video shows the kitchen, and once you take out the dog

situation, there's a moment where it shows the living room and there's other things that this video shows that I think contradicts what the police are saying, specifically that the house was uninhabitable.

Also the police photos, which are going to be part of the record, do not match with the entry video, so it shows that things were moved and they don't -- they're moved to, I think, prejudice my clients because they -- for example, the counter when you come in, when the police entered the counter was -- had some things on it, but it didn't have stacks of Tupperware with animals -- with reptiles in it. The police photos, however, have stacks of Tupperware with reptiles in it, and they have a bedroom that has reptile stuff in there, that wasn't there. Basically the video contradicts the -- as a secondary reason.

MS. HOUGH: Your Honor, if I may.

THE COURT: You may. If -- If -- Excuse me, Miss Hough. You may if Mr. Murphy is done. I wasn't 100 percent clear if he was.

MR. MURPHY: And I was just going to add, it's not really clear what we're talking about. I should probably edit the video and propose it so you can see what I'm talking about. But I didn't want to go ahead and make assumptions here that may offend the Court.

THE COURT: This Court is not easily offended,

Mr. Murphy. I know you can't see through the video, but my skin is really tough.

Miss Hough, you wanted to be heard?

MS. HOUGH: I just wanted to suggest if Attorney Murphy wants stills from the video to be utilized as evidence, and present those stills from the video to us and we can discuss whether or not we would stipulate to having those entered without foundation, it would be a consideration that the parties could certainly make without a court ruling, depending on what those stills look like. So I don't think it's necessary for a video to roll based upon what he intends to use the video for, but I do think it might serve us all wisely if we could take a look and perhaps come to some agreement on that prior to bringing that issue forward to the Court.

THE COURT: Mr. Murphy? Or Mr. Kyle?

MR. KYLE: This is Attorney Kyle. I have to imagine that defense counsel's not trying to suggest how we determine how we present our evidence in our case, but I appreciate the idea about looking at the evidence we tend to -- plan to present, but that's our decision. I mean, we have -- we have the burden here, remember, and we have to decide what evidence is best for us to make our case. So I -- I don't think that Attorney Hough was suggesting that, but I was kind of reading into it that way.

THE COURT: Thank you, Mr. Kyle. As to the video, my ruling was regarding the dog shooting portion of the video, so that remains. If you want to otherwise use the other parts of the video that's not in violation of that ruling, I -- and it's otherwise admissible, I will not prohibit that. However, I want no surprises before the jury, so I'm ordering that the video be shared with the defense ahead of time and if there are objections on other grounds that be raised to me before trial. But, again, the ruling regarding the dogs and that will not be revisited.

Those were the items that I had listed on the -- on my agenda. Mr. Murphy, did we cover everything on your agenda for today?

MR. MURPHY: Thank you. Yes.

MR. KYLE: I had a couple things, if I may. When looking at the pre-trial report, defense witnesses are listed on here and there are probably 20 of them say may be contacted through defense counsel. We weren't doing this before, client -- the defense only has two clients, and that's Felician and Simmert. So I think it's only fair that we have the contact information for every single witness they plan on calling but for their own clients. Because there is no attorney-client relationship there.

THE COURT: Thank you, Mr. Kyle. Miss Yuan, is this a concern, a problem? What's going on with that?

MS. YUAN: Yes, Judge. And I, you know, it's not really anything, it hasn't really been an issue for our officers in the past, but certainly we worked cooperatively with plaintiffs' counsel in the past to produce witnesses if they want to subpoena witnesses, you know, in fact, often some of our individuals may be retired, but even if they're not retired from the city, they may not want to be served personally and have that address published in a public forum.

And so we worked in the past with plaintiffs' counsel. If the issue is about getting service on these witnesses, we plan on -- we may even work to accept service if the witness agrees to that, and frankly most of them probably will rather than being served with a subpoena, and that would go the same even with witnesses that are on plaintiffs' list.

But they were pointing out on defendants' witness list, so I think that would address any city employee, former or current, that's on plaintiffs' list as well. So I guess that's -- that's the concern. Sometimes city employees do have that concern with having their addresses, you know, because once a subpoena's out, I guess, having it out there. But certainly we're willing to work with them. I don't really -- I'm not hearing something that an issue being raised by plaintiffs that we couldn't work out.

THE COURT: Mr. Kyle, is that something you and defense counsel can work off-line on, or is there concern?

MR. KYLE: It sure can, Your Honor, as long as the record requesting to have the attorney-client privilege with two of the witnesses and that's it, and that's Felician and Simmert. Now, nothing stops me from calling Perry Bertoni, who is on their witness list if I had his contact information, say, Mr. Bertoni, I understand you're going to be testifying and I want to talk to you about that. There's nothing ethically or in any rule to stop me from doing that, and then again turnabout's fair play as well. They have our contact information for our witnesses, besides Mr. Cullen, they are free to contact any of them as well.

And this bootstraps, Your Honor, to an earlier discussion we had where I've always been fearful of we don't have enough time even if the case is bifurcated. I asked let's get on the phone and let's get some stipulations in regards to simple, simple facts: When 13th Street was entered, what time or what date that the search was done, the seizure was done just to move things forward and at least to have a narrative. We're not going to argue about details that nobody is going to dispute. We don't need to try that stuff.

So I reached out in our last telephone conference and I still want to do that and hopefully, Judge, you can order it, that's -- that's one thing I want to do, and I guess I want the contact information from these people. If they don't plan on calling them, I don't need the contact information. It's as

simple as that.

THE COURT: Thank you. I -- I will order that the parties confer and cooperate as to both contact for witnesses and any possible stipulations.

MR. MURPHY: We do have one stipulation, Your Honor, on the bad acts document. I don't know if you wanted us to file that in advance.

THE COURT: Yes, if you have stipulations, you should file them in advance.

MR. MURPHY: I'll do that.

THE COURT: Thank you. We are -- Before I turn to defense, let me just finish with the plaintiffs' agenda items. I want to -- Mr. Kyle, Mr. Murphy, anything else?

MR. KYLE: One last thing, Your Honor, I wanted to bring up. We are taking the videotape deposition of Steve Glynn to be used at trial next week, and I think it's probably important to speak with defense counsel in regards to that testimony. Because we're going to be walking a tightrope.

Number one, you bifurcated the trial so we have to have one part of it in regards to liability, a second part of it as far as damages which I think is pretty easy to handle. The other part of it we have to tiptoe around, he was the criminal lawyer and we don't want to come out why he was -- Steve Glynn -- why he was Terry Cullen's criminal lawyer, so I at least wanted to reach out ahead of time and say, this is coming

up on next Tuesday, and I just don't want there to be unnecessary objections or us to be violating Your Honor's order. I'm going to be extremely careful, I'm telling defense counsel I plan on being careful, and I certainly don't want anything to come in that would, you know, I guess up serve his testimony.

THE COURT: Thank you, Mr. Kyle. Anything else?

MR. MURPHY: No, thank you.

MR. KYLE: Nope.

THE COURT: All right. Hearing none, the defense, your agenda items and any response you have regarding the deposition of Mr. Glynn next week.

MS. YUAN: Heather, did you have something you needed to add? I mean, I don't -- Judge, you covered all of our agenda items for today. Right. And, you know, defense counsel will continue to try to work with plaintiffs on reaching stipulations. I mean, it feels petty, but I do want to mention because Attorney Kyle felt it necessary to mention it's not that we don't want to reach stipulations on certain facts, certainly in regards to when properties were entered, but what I explained to plaintiffs' counsel was when we have a witness on the stand explaining what happened during execution of the search warrant, we are going to logically go into the date that they were there.

Reaching a stipulation as to that, I -- I didn't see how

that would shortcut anything because that is still going to be a question I ask, and if they get confused it's very easily refreshed in terms of their recollection, and that's part of the preparation for those witnesses. So it's not that -- I don't want the Court to be left with this impression that defense counsel is always trying to refuse to agree with plaintiffs because that's not the case, but we will still try and consider any other stipulations that are proposed by plaintiffs.

But other than that, I don't think I have anything else. I don't know, Attorney Hough, if you do.

MS. HOUGH: I had just wanted to interject and I think you covered it that I wanted the record to reflect that we were willing and, in fact, initiated a conferral with opposing counsel to reach some agreements, but as Jenny explained to the Court, that was how we felt the information that was proposed to stipulate to would be handled at trial. But if there are other ideas and other requests, they -- we certainly would voluntarily consider those.

THE COURT: Thank you, Miss Hough. I -- Mr. Kyle, I see your hand up.

MR. KYLE: Yeah, I got -- I have a good idea. How about we share witnesses? Who we're going to call, who you're going to call? How about we do that? That will make things -- Because you've got about 27 witnesses here that we don't have

any contact information for or don't know who they really are. We assume that you're going to be calling some of them, we don't know others, so we can really streamline this thing at least in regards to the liability aspect versus the damage aspect, and I'm not asking you to do anything that I'm not willing to do. So there's the olive branch.

THE COURT: Well, there shouldn't be any surprises in this trial. So, again, I'll order the parties to confer on the witnesses -- the list of witnesses that will testify at trial so that there are no surprises, to confer and cooperate regarding contact information for witnesses, and to confer regarding any potential stipulations.

MR. MURPHY: Judge, if I may, could the Court order the parties to comply with the local rules regarding the pre-trial reports and the witness disclosures?

THE COURT: Yes.

MR. MURPHY: Thank you.

MR. KYLE: Thank you, Judge.

THE COURT: All right. If there is nothing else, the last thing I'll remind the parties is that my courtroom deputy's available to you if you wish to come and take a look at Room 190 where we are going to do the jury selection. They will also be available to you if you want to come and take a look at the courtroom just to see the lay of the land and where you're going to sit, the technology, or any other questions

that could be had, especially as it relates to any I.T. needs. Please do that ahead of time so that your presentation can go smoothly so that you are not surprised that the Court doesn't have something that you need to make your presentation.

15:29 So with that, I will see you all in May, but expect from me before trial some proposed revisions as we had discussed and then we'll talk them up at our conference.

Thank you, everyone. Have a great afternoon, and thank you for the labor you put into this afternoon. I appreciate it.

MS. YUAN: Thanks, Judge.

MR. MURPHY: Thank you.

(At 3:30 p.m. the hearing ended.)

C E R T I F I C A T E

I, THOMAS A. MALKIEWICZ, RPR, RMR, CRR, an Official Court Reporter for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing is a true and correct transcript of all the proceedings had and testimony taken in the above-entitled matter as the same are contained in my original machine shorthand notes on the said trial or proceeding.

Dated this 6th day of May, 2021.

Milwaukee, Wisconsin.

Thomas A. Malkiewicz, RPR, RMR, CRR
United States Official Court Reporter
517 East Wisconsin Avenue, Room 236
Milwaukee, WI 53202

Thomas_Malkiewicz@wied.uscourts.gov

ELECTRONICALLY SIGNED BY THOMAS A. MALKIEWICZ
Official U.S. Reporter, RPR, RMR, CRR